

**FILED IN OFFICE**

OCT - 5 2012

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| JEFFREY PHILLIPS, ) | |
| ) | |
| On Behalf of Himself and All Other Persons in ) | |
| the State of Georgia Who are Similarly ) | CIVIL ACTION FILE NO.: |
| Situated, ) | 2010CV193422 |
| ) | |
| Plaintiff, ) | Jury Trial Demanded |
| ) | |
| vs. ) | |
| ) | |
| OCWEN LOAN SERVICING, LLC; OCWEN ) | |
| FINANCIAL CORPORATION; and BANK OF ) | |
| AMERICA, NATIONAL ASSOCIATION, AS ) | |
| SUCCESSOR BY MERGER TO LASALLE ) | |
| BANK NATIONAL ASSOCIATION, AS ) | |
| TRUSTEE FOR THE REGISTERED ) | |
| HOLDERS OF CREDIT SUISSE SEASONED ) | |
| LOAN TRUST 2006-1, HOME EQUITY ) | |
| PASS-THROUGH CERTIFICATES, SERIES ) | |
| 2006-1, ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

### FIRST AMENDED AND RESTATED COMPLAINT

**COMES NOW** JEFFREY PHILLIPS (hereinafter referred to as "Plaintiff"), and submits

this, his First Amended and Restated Complaint, by amending and restating his "Petition to

Remove Cloud from Title," filed *pro se*, and substituting for such Petition, in its entirety, the

following Complaint against the Defendants, OCWEN LOAN SERVICING, LLC; OCWEN

FINANCIAL CORPORATION; and BANK OF AMERICA, NATIONAL ASSOCIATION, AS

SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS

TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE SEASONED LOAN TRUST 2006-1, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1, on his own behalf and on behalf of all other persons in the State of Georgia who are similarly situated.

## PARTIES

1.

Plaintiff has for over twenty-four (24) years, since August 1988, been the owner of residential real property in the West End Community of Atlanta, Fulton County, Georgia, located at 728 Kennolia Drive, Atlanta, Georgia 30310 (the "Home") and which is more particularly described as:

> ALL THAT TRACT or parcel of land lying and being in Land Lot 171 of the 14th District of Fulton County, Georgia, being Lot 53 and Part of Lot 52, Property of R.M. Kenney, as per plat recorded in Plat Book 20, Page 33, Fulton County, Georgia Records, and being more particularly described as follows:

> BEGINNING at a point on the East side of Kennolia Drive, 469.4 feet North from the corner formed by the intersection of the East side of Kennolia Drive with the North side of Beecher Street; running thence North along the East side of Kennolia Drive 60 feet to a point and Lot 54 of said subdivision; running thence East along the South line of said Lot 54, 240 feet to a point; running thence South 60 feet to a point; running thence West 240 feet to a point on the East side of Kennolia Drive and the POINT OF BEGINNING; said property being known as 728 Kennolia Drive, Atlanta, Georgia 30319, according to the present system of numbering in Fulton County, Georgia.

2.

Plaintiff is employed as a Systems/Application support engineer for DGfastchannel/Pathfire, Inc.

3.

Ocwen Loan Servicing, LLC is a Delaware limited liability company having its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. Ocwen Loan Servicing, LLC is a corporate subsidiary of Ocwen Financial Corporation, a Florida

corporation, which was formerly known as "Ocwen Federal Bank, FSB," prior to relinquishing its federal bank charter. Ocwen Financial Corporation's principal place of business is 2002 Summit Boulevard, 6th Floor, Atlanta, Fulton County, Georgia 30319. (Ocwen Loan Servicing, LLC and Ocwen Financial Corporation are referred to herein, collectively, as "Ocwen.") Ocwen Loan Servicing, LLC was served with Plaintiff's original Petition. Ocwen Financial Corporation may be served through its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

4.

Upon information and belief, Bank of America, National Association, as Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of Credit Suisse Seasoned Loan Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1 (hereinafter referred to as "BoA") is the owner of the "Loan", as defined in Paragraph 20 of this First Amended and Restated Complaint. BoA maintains its principal place of business at 101 South Tryon Street, Charlotte, North Carolina 28202. Said Defendant may be served by serving any management person at said office.

5.

Ocwen services residential mortgage loans. Ocwen has publicly described itself as "a leading provider of residential and commercial loan servicing, special servicing and asset management services." Mortgage servicers are the "middlemen" between homeowners and the investors that often hold the homeowners' mortgages, collecting the homeowners' payments and remitting payment for principal, interest, property taxes, and hazard insurance. Mortgage servicers, including Ocwen, have often been cited for badgering, manipulating, and lying to their customers, imposing fraudulent fees, and improperly foreclosing.

- 3 -

6.

Ocwen has further publicly stated that it is "one of the largest non-prime mortgage servicers in the" United States. Upon information and belief, Defendant Ocwen is also one of the largest non-prime mortgage servicers in the State of Georgia. Ocwen now services more than eight hundred thousand (800,000) mortgages, many of which are secured by residential real property located in the State of Georgia, such properties being the principal residences of middle and low income homeowners in Georgia.

7.

Ocwen publicly claims that it has gained a "national reputation as a servicer specializing in the management of sub-performing and non-performing assets, including severely-delinquent and labor-intensive mortgage loans" and "REO assets" (bank-owned properties constituting "Real Estate Owned"), requiring a "hands-on" approach. A recent on-line survey of customer satisfaction with various mortgage servicers found that eighty-five (85%) percent of the respondents gave Ocwen the lowest possible rating.

8.

As a mortgage servicer, Ocwen's financial interests are enhanced through the maximization of fee and expense-based income derived from the persons paying the monthly principal and interest due on the serviced mortgages. According to its press release of August 2, 2012, Ocwen reported net income of $44,800,000.00 for the second quarter of 2012. This compared with net income of $26,400,000.00 for the second quarter of 2011. Revenue for the second quarter of 2012 was a "record-setting" $211,400,000.00, up one hundred (100%) percent from the second quarter of 2011. Income from operations was a record at $125,500,000.00 for the second quarter of 2012, as compared to $63,600,000.00 for the second quarter of 2011, an

increase of ninety-seven (97%) percent. Upon information and belief, much of Ocwen's "record-setting" revenue and net income was derived from improper fees and expenses imposed by Ocwen on sub-prime borrowers, contrary to the settlement terms of a class action, styled *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* M.D.L. No. 1604, N.D. Ill. No. 04-cv-2714, U.S. District Court, Northern District of Illinois, as more particularly described below.

9.

In addition to acting as a mortgage servicing company, Ocwen has, over the past decade, acquired and managed more than $4,500,000,000.00 in distressed real estate debt on its own behalf. Ocwen received more than $200,000,000.00 in cash payments from the United States Treasury under the Troubled Asset Relief Program (TARP). Ocwen is also a participant in the Treasury Department's Making Home Affordable Program (HAMP), which is designed to help homeowners facing foreclosure by providing financial incentives to parties such as Ocwen. Upon information and belief, Ocwen has received such financial incentives.

10.

Ocwen is a publicly-held diversified financial corporation with a current market capitalization of at least $3,790,000,000.00. Ocwen is now the largest servicer of sub-prime mortgages in the United States, according to its chief executive officer, having recently acquired Litton Loan Servicing from Goldman Sachs, which serviced many Georgia mortgages. Previously, Ocwen acquired the portfolio of HomEq from Barclays Capital. In April 2012, Ocwen closed the purchase of approximately $22,000,000,000.00 of mortgage servicing rights from Saxon Mortgage Services, a unit of Morgan Stanley. In June 2012, Ocwen completed its purchase of Aurora Bank's commercial servicing rights portfolio. On October 3, 2012, Ocwen announced its acquisition of Homeward Residential Holdings, Inc. from WL Ross & Co. LLC, a

private equity firm, for $750,000,000.00 cash and other consideration. According to Ocwen's press release, this acquisition of servicing rights brings to Ocwen of approximately 422,000 mortgages.

## JURISDICTION AND VENUE

11.

This Complaint seeks equitable redress from Ocwen's mishandling, over many years, of the servicing of Plaintiff's residential mortgage loan and Ocwen's refusal to address serious errors in Ocwen's record of Plaintiff's loan payments, including, but not limited to, the late postings of payments, resulting in the improper assessment of late fees and the misapplication of such payments. Plaintiff's Complaint also seeks monetary damages.

12.

Ocwen Loan Servicing, LLC was properly served with Plaintiff's original "Petition to Remove Cloud from Title."

13.

Venue is proper in this Court.

14.

The Defendants are subject to the personal jurisdiction of this Court.

15.

This Court has subject matter jurisdiction over the Plaintiff's action.

## BACKGROUND OF PLAINTIFF'S RELATIONSHIP WITH OCWEN

16.

On or about December 7, 1998, Plaintiff executed and delivered to HomeAmerican Credit, Inc., d/b/a Upland Mortgage ("Upland Mortgage"), that certain secured promissory note in the original principal amount of $86,400.00 (hereinafter referred to as the "Note").

17.

A true and correct copy of the first page of the Note is attached hereto as Exhibit "A."

18.

Concurrently with the execution of the Note, Plaintiff executed and delivered to Upland that certain Deed to Secure Debt (hereinafter referred to as the "Security Deed") for the purpose of securing the Note with the Home. The Security Deed is recorded at Deed Book 25899, Page 259, Fulton County, Georgia Records.

19.

A true and correct copy of the Security Deed is attached hereto as Exhibit "B."

20.

The Note and Security Deed are hereinafter jointly referred to as the "Loan." Upland Mortgage's internal loan identification number was 1045423.

21.

On or about April 20, 2005, Plaintiff received a letter from Upland Mortgage stating that the new servicer of Plaintiff's Loan would be Defendant Ocwen.

22.

On May 11, 2005, Plaintiff received a letter from Ocwen introducing itself as the new servicer for the Loan.

23.

During May 2005, Plaintiff learned that Upland Mortgage had filed a Chapter 7 bankruptcy proceeding and was no longer an active corporation.

24.

On or about May 5, 2005, Upland Mortgage executed a Limited Power of Attorney (hereinafter referred to as "POA") appointing Ocwen as its attorney-in-fact for several matters, including, but not limited to, note endorsements and assignments of mortgages. The POA, a genuine copy of which is attached hereto as Exhibit "C," is recorded at Deed Book 41467, Page 343, Fulton County, Georgia Records.

25.

By instrument stating that it was entered into as of November 30, 2006, but was not executed or notarized until March 10, 2010, Upland assigned its interest in the Loan to Bank of America, National Association, as Successor by Merger to LaSalle Bank National Association, as Trustee for the "Registered Holders of Credit Suisse Seasoned Loan Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1." The assignment, a genuine copy of which is attached hereto as Exhibit "D," is recorded at Deed Book 48876, Page 503, Fulton County, Georgia Records.

26.

Plaintiff experienced multiple problems during Upland's servicing of the Loan. Such problems included cashing post-dated checks (which Upland had requested) before the date shown on the check, resulting in a series of returned checks and the accrual of substantial insufficient funds fees, and harassment of Plaintiff when his installment was not paid on the

fifteenth (15th) day of each month. Plaintiff did not, in fact, realize the full extent of his problems with Upland's servicing of the Loan until after Ocwen became the loan servicer.

27.

At the time that Plaintiff executed the Note, he clearly and unequivocally understood that the Loan was amortized over thirty (30) years, with interest being calculated on a monthly basis, which was, and is, the traditional method for amortizing the principal and interest of residential mortgages. Upon information and belief, Upland Mortgage converted the Loan to a "Simple Interest Loan" that accrued interest from the last date that interest was paid through the date that the next payment was received.

28.

This amortization technique, which is known as a "daily interest rate" computation, reduces the application of the payment to principal, unless a payment is received on the exact due date set forth in the Note.

29.

Plaintiff was not advised of, nor did he agree to, this change in the amortization method.

30.

Upon information and belief, and subject to confirmation through discovery, Ocwen maintained the "daily interest rate" computation, after the servicing rights for the Loan were acquired by Ocwen.

31.

Ocwen failed to correct the Upland mortgage account errors. Therefore, Plaintiff's mortgage loan account has been incorrect throughout the time that the Loan has been held by Ocwen. After its acquisition of the Loan, Ocwen compounded Upland's errors by committing

numerous errors and making numerous false entries, as more particularly described below, to Plaintiff's mortgage loan account.

## OPERATIVE FACTS COMMON TO CLASS MEMBERS

### 32.

During his relationship with Ocwen, Plaintiff has been subjected to a variety of pernicious practices and policies that are common to all members of the putative Class. Ocwen utilized accounting techniques, loan processing procedures, and administrative processes to defraud Plaintiff and other members of the Class. Ocwen committed repeated "errors" in the servicing of Plaintiff's account which were, in fact, intentional actions taken in order to increase the profits of Ocwen. Plaintiff's account statements from Defendant Ocwen, commencing with the statement of May 6, 2005 ("May Statement") a genuine copy of which is attached hereto as Exhibit "E," demonstrate such errors;

(a) Inaccurate Amortization. Although Plaintiff had made payments on the Loan for approximately seven (7) years, the May Statement showed a principal balance of $85,463.72, only $936.28 less than the original principal balance when Plaintiff executed the Note in 1998. With one exception, no part of Plaintiff's monthly installments was applied to principal.

(b) Fictitious Escrow Advances. The May Statement shows an "escrow advance" of $2,633.73, although no escrow account had ever been established with Upland (see the Escrow Waiver executed by Plaintiff on December 7, 1998, a true and correct copy of which is attached hereto as Exhibit "F"), and Plaintiff had paid all of the taxes and insurance on the Home.

(c)    Fictitious "Past Due" Amounts.  The May Statement shows a "past due amount" of $815.64, although Plaintiff was current at the time of the transfer of the servicing rights to Ocwen.

(d)    False Expenses.  The May Statement shows a "Prior Servicer Expense" of $1,802.11 that was never explained to Plaintiff by either Upland or Ocwen.

33.

In addition to the errors exemplified in the May Statement, Ocwen repeatedly engaged in other wrongful actions, including but not limited to the following:

(a)    Duplicate Insurance Premiums.  Property insurance was "force placed" by Ocwen when, in fact, Plaintiff had personally maintained proper insurance coverage.

(b)    False Late Charges.  Late charges were assessed for virtually every monthly installment, despite Plaintiff's explanation – and proof – that he was current on the Loan.

(c)    Duplicate Payment of Property Taxes.  Ocwen paid property taxes in August 2006, when Plaintiff was not delinquent and had no escrow established with Ocwen, and even though he later paid the taxes because he did not know that Ocwen had improperly paid such taxes.  Plaintiff did not receive a refund of the double payment, and does not know whether the Tax Commissioner refunded such payment to Ocwen.

(d)    Fictitious Legal/Collection Expenses.  Ocwen assessed "legal/collection expenses" when, to Plaintiff's best knowledge and belief, Ocwen had not incurred any "legal/collection" expenses with respect to Plaintiff's mortgage loan account.

34.

In response to Plaintiff's subsequent inquiries and complaints, both by telephone and in writing, Ocwen forwarded to Plaintiff "payment histories" such as the documents collectively attached hereto as Exhibit "E," which demonstrate:

(a)    Fictional escrow advances; and

(b)    Improper application of interest charges

## CLASS ACTION ALLEGATIONS

35.

The Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to O.C.G.A. § 9-11-23(a). The Class, as proposed by Plaintiff, consists of all persons:

(a)    Who are the owners of real property located in the State of Georgia and securing a mortgage loan serviced by Ocwen; and

(b)    Who, after June 10, 2010, incurred or were assessed any charges not authorized by their loan terms, and which have not subsequently been canceled or forgiven, including, but not limited to, late fees that have not been canceled or forgiven or bankruptcy or collection fees that were not properly charged; or

(c)    Who, after June 10, 2010, had hazard insurance improperly force-placed on their property, the premiums for such insurance having not been subsequently reversed; or

(d)    Who, after June 10, 2010 had mortgage loans serviced by Ocwen which were either in default or were treated as being in default by Ocwen.

Excluded from the Class are the Defendants and any of their corporate parents, subsidiaries, affiliates, partners, officers, directors, predecessors, or successors; or any entity which any

Defendant or other excluded entity has a controlling interest; or any judge or judicial official assigned to this matter and his or her immediate family; and the legal representatives, successors or assigns of any such excluded persons or entities.

36.

The Class is limited to those persons who own residential real property in Georgia and whose property secures a mortgage loan serviced by Ocwen. A state-by-state remediation of Ocwen's corporate behavior is mandated by several factors: (1) The number of members of the putative Class in Georgia is substantial, but such number is far more manageable than the number of putative members of a nationwide class action. (2) One of the principal remedies sought by Plaintiff on his own behalf, and on behalf of other members of the putative Class, is the correction, after the conduct of an Accounting, of the individual mortgage loan accounts maintained by Ocwen, including the fraudulent accounts that it inherited as a legacy from servicers such as Upland. The equitable powers of this Court are sufficient and are, indeed, more appropriate than federal judicial power, to supervise such an effort. (3) The majority of the claims asserted by the Plaintiff on his own behalf, and on behalf of other members of the Class, arise under Georgia, not federal, law. (4) The maintenance of a headquarters by Ocwen in Atlanta, Fulton County, Georgia will facilitate implementation of the remedies sought by Plaintiff. (5) Ocwen is unable to remove this action to federal court.

37.

O.C.G.A. § 9-11-23(a)(l) provides that, prior to certification, the Court must find that: "The class is so numerous that joinder of all members is impracticable." There are several thousand persons within the putative Class. This group is so large that each person cannot practically represent himself or herself, either by joinder in one action or in separate actions.

- 13 -

*Ford Motor Co. v. London*, 175 Ga. App. 33, 36, 332 S.E. 2d 345 (1985); *Stevens v. Thomas*, 257 Ga. 645(2), 361 S.E.2d 800 (1987).

38.

O.C.G.A. § 9-11-23(a)(2) requires that, prior to certification, the Court must find that: "There are questions of law or fact common to the class." Certain aspects of M.D.L. 1604, described below, are binding legal authority in this action. These questions of law apply to the claims of all members of the putative Class. Moreover, the wrongful actions of Ocwen, described herein, were taken pursuant to standardized practices, procedures, and policies. *State Farm Mutual Automobile Insurance Company v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001).

39.

O.C.G.A. § 9-11-23(a)(3) states that, prior to certification, the Court must find that: "The claims or defenses of the representative parties are typical of the claims or defenses of the class." The members of the Class, as defined above, assert essentially the same claims; therefore, the claims of the Plaintiff are typical of the claims of the proposed Class. Ocwen's scheme for the imposition of fraudulent charges and expenses has been carried out by means of a standardized, centrally-controlled set of practices, procedures, and policies, and such scheme is executed through the uses of form documents, form notices, and uniform accounting protocols, including proprietary (albeit deeply flawed) mortgage servicing software.

40.

O.C.G.A. § 9-11-23(a)(4) requires that: "The representative parties will fairly and adequately protect the interests of the class." Plaintiff and his counsel will fairly and adequately protect all the claims of the Class members. No conflicts of interests have appeared, or are likely to appear, among the Class members at any level. The Plaintiff will fairly and adequately

represent the interest of all members of the proposed Class because he seeks relief on behalf of the Class as a whole and has no interests antagonistic to other members of the Class. The Plaintiff is also represented by counsel who, collectively, have experience in unfair lending claims, loan servicing, consumer fraud, and class action litigation. Finally, Defendants have acted and will act on grounds generally applicable to the Class in regard to the servicing of home loans in Georgia, thereby making appropriate final injunctive relief with respect to the Class as a whole.

41.

O.C.G.A. § 9-11-23(b)(1) favors the certification of a Class when: "The prosecution of separate actions by or against individual members of the class would create a risk of: (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ... ." If independent actions are brought by different Class members, varying interpretations of the relevant documents and the applicable statutes, unequal results, and inconsistent interpretations of such documents and statutes may result.

42.

O.C.G.A. § 9-11-23(b)(1) favors the certification of a Class when: "The prosecution of separate actions by or against individual members of the class would create a risk of: (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ... ." The prosecution of numerous separate actions against Ocwen, including numerous *pro se* actions, both for damages

and as foreclosure injunction actions, could impair or impede the ability of other Ocwen customers to protect their interests.

43.

O.C.G.A. § 9-11-23(b)(3) provides that as a precondition for certification of a class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest in the members of the class in individually controlling the prosecution or defense of separate actions." In the case at bar, the interests of individual members of the class in controlling the prosecution of separate actions are less significant than the need to enforce broadly remedial measures against the practices of Ocwen.

44.

O.C.G.A. § 9-11-23(b)(3) further provides that as a precondition for certification of a Class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: ...  (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class ... ."  As set forth below, there are numerous pending federal actions against Ocwen.  Upon information and belief, there are numerous, similar actions pending in the Superior Courts of Georgia.  Many of such actions have been filed *pro se*, and the homeowners-plaintiffs would benefit from the proposed class action.

- 16 -

45.

At least nineteen (19) actions against Ocwen are pending in the United States District Courts in Georgia. As reflected in the PACER system, the following actions are pending: *Mahmoud Abdul-Rauf v. The Bank of New York Melton, Ocwen Loan Servicing, LLC, McCalla Raymer, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-01071-JEC, (Carnes, D.J.) (pro se); *Charlotte Abdullah v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Middle District of Georgia (Macon Division), Civil Action File No.: 5:12-CV-00369-CAR (Royal, D.J.) (pro se); *Angela Clyde v. Wells Fargo Bank, N.A., Ocwen Financial Corporation, Scott B. Kuperberg,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-03608-CAP-AJB (Pannell, D.J.) (pro se); *Lisa DeSouza v. Federal Home Mortgage Corp. d/b/a also known as Freddie Mae, J.P. Morgan Chase Bank, N.A., Ocwen Loan Servicing, LLC,* U.S. District Court for the Southern District of Georgia (Augusta Division), Civil Action File No.: 1:10-CV-00130-JRH-WLB (Hall, D.J.) (pro se); *Stevie Dorsey v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:10-CV-03330-AT (Totenberg, D.J.); *Lena Felix and Meshack Felix v. Federal Housing Finance Agency, Ocwen Loan Servicing, Federal Home Loan Mortgage Corporation,* U.S. District Court Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00934-CAP (Pannell, D.J.) (pro se); *Ronald Gaylord v. Ocwen Loan Servicing, LLC, Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., Central Loan Administration & Reporting, FSB,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 2:12-CV-00087-WCO (O'Kelley, D.J.) (pro se); *Melody Gold and Michael J. Gold v. Ocwen Loan Servicing, LLC,* U.S. District Court for the

Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-03056-JEC-LTW (Carnes, D.J.); *Tyrone D. Gorham v. Wells Fargo Bank, N.A., Inc., ABFC 2004-OPT5 Trust, Ocwen Loan Servicing, LLP, Mortgage Electronic Registration Systems, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00377-TCB-LTW (Batten, D.J.) (pro se); *Clara Y. Grubbs and Celeste Grubbs v. HSBC Bank USA, N.A., Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00457-AT, (Totenberg, D.J.) (pro se); *Carline Rose Joseph v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-04176-CC (Cooper, D.J.) (pro se); *Johnny L. Lewis v. U.S. Bank National Association, Ocwen Loan Servicing, LLC, Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-04600-AT-JFK (Totenberg, D.J.) (pro se); *Moses Matamoros v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-02789-SCJ (Jones, D.J.) (pro se); *Shakoor Mintu v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-02917-TCB (Batten, D.J.) (pro se); *Michael L. Morgan v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:10-CV-03555-AT (Totenberg, D.J.) (pro se); *Lina Rodriguez v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division)

Civil Action File No.: 1:112-CV-01463-CAP (Pannell, D.J.); *Dianne Staten v. Litton Loan Servicing, LP, John Doe Corporation,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-03382-WBH (Hunt, D.J.) (pro se); *Jennifer Toussaint v. Ace Homes, LLC, Home America Mortgage, Inc., Ocwen Loan Servicing, LLC, Federal Home Loan Mortgage Corporation,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-01700-CAP (Pannell, D.J.); *Anne Elizabeth Wright v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., Bank of America, N.A., Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00903-SCJ (Jones, D.J.) (pro se).

46.

O.C.G.A. § 9-11-23(b)(3) provides that as a precondition for certification of a Class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: ... (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum ... . " Fulton County is the location of certain headquarters offices of Ocwen where information necessary for the correction of the mortgage loan accounts of Class members and for the calculation of the damages suffered by the Class members is available. Therefore, this Court is a desirable forum for the concentration of the litigation of the Class claims.

47.

O.C.G.A. § 9-11-23(b)(3) provides that as a precondition for certification of a Class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and  that  a class action  is superior  to other  available  methods  for  the  fair  and  efficient adjudication of the controversy. The matters pertinent to the findings include: ... (D) The difficulties likely to be encountered in the management of a class action." A class action is appropriate here because the identity of the Class members is readily available in the records of Ocwen together with the data needed to make corrections to its mortgage loan accounts and to make calculations of damages. Notification will be easier than in other class actions because the addresses of many Class members are known by Ocwen by reason of the nature of Ocwen's business.

48.

The questions of law and fact  common  to  the  members  of  the  Class  predominate over  any questions  affecting  only individual members.

49.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**PRIOR JUDICIAL TREATMENT OF OCWEN'S IMPROPER AND FRAUDULENT PRACTICES**

50.

In one of the earliest judicial assessments of Ocwen's behavior, *Guzman v Ocwen*, No. 03-61011-2, in the state court of Nueces County, Texas (Corpus Christi), in 2005, sworn testimony at such trial by a former employee in Ocwen's collections and loan resolution departments from 1996 until 2003, indicated that:  (i) Ocwen intentionally foreclosed on homes

with substantial equity even when the payment histories did not justify the foreclosures, in order to realize the value of the equity; (ii) Ocwen provided financial incentives, including cash "bumps" of $200.00 to $500.00, to employees who were able to force foreclosure on homes with substantial equity; (iii) Ocwen fabricated the amount of attorneys' fees and interest and added such amounts to the balance of the mortgage loans; (iv) Ocwen employees used profane and threatening language to intimidate customers; (v) Customer checks were routinely held from deposit, in order to cause late fees to accrue; (vi) Payoff figures were not provided to customers in order to discourage refinancing; (vii) Ocwen employees altered and forged mortgage loan documents; and (viii) Ocwen foreclosed on homes that were not properly subject to foreclosure. The jury returned a verdict of more than $3,000,000.00 against Ocwen.

51.

In *Davis v. Ocwen*, filed in Texas' 212th Judicial District (Galveston), a home equity loan borrower was, on November 29, 2005, awarded $11,500,000.00 by the jury on a fraud claim against Ocwen. The jury awarded $10,000,000.00 in actual damages and approximately $1,5000,000.00 for mental anguish and economic damages. The jury found that Ocwen made fraudulent, deceptive, and misleading representations after the plaintiff missed a payment while hospitalized in 2003. On January 17, 2006, the trial judge reduced the judgment to $1,800,000.00. The evidence at the trial was that Ocwen falsely classified timely payments as "late" and then, improperly, commenced foreclosure proceedings. On appeal, the Court granted the parties' Agreed Motion to Dismiss the Appeal and Remand to the Trial Court for entry of an agreed final judgment. Similarly, in a Texas bankruptcy case, the judge censured Ocwen after it attempted to pass the cost of a $1,000.00 sanction imposed on Ocwen onto the customer that it

mistreated. The judge found: "Ocwen's course of conduct in this proceeding bordered on the outrageous." Ocwen was fined an additional $27,500.00.

52.

On January 12, 2011, the United States District Court for the Northern District of Illinois, Eastern Division, entered its Order approving the settlement of sixteen (16) class actions and numerous individual actions, in Multi-District Litigation No. 1604, styled *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*. M.D.L. 1604 was composed of sub-classes of actions from jurisdictions throughout the United States, including Arizona, California, Minnesota, New Mexico, Pennsylvania, Texas, Washington State, Illinois, and Indiana. *See Third Amended Consolidated Class Action Complaint*. Upon information and belief, at the time of M.D.L. 1604, Ocwen was defending more than 330 civil actions, throughout the United States, challenging its servicing practices. After six years of litigation, and while continuing to deny liability, Ocwen settled M.D.L.1604 by, *inter alia*, the payment of $7,000,000.00 cash, certain non-cash consideration, and the commitment to certain remedial measures. The M.D.L. did not seek to correct the inaccurate mortgage loan accounts of the plaintiff or any other Class members. Plaintiff received notice of M.D.L. 1604, and was either a Full Participant or Limited Participant in the settlement fund of M.D.L. 1604, but did not, in fact, seek to participate in the settlement fund.

53.

Ocwen argued in M.D.L. 1604 that the Home Owners Loan Act, 12 U.S.C. §§ 1461 et seq. ("HOLA"), and HOLA regulations promulgated by the Office of Thrift Supervision, particularly 12 C.F.R. § 560.2, preempted certain state law claims. The district court in M.D.L. 1604 held that two dozen state-law claims that arose from a disregard of loan terms, including

claims predicated on the unfair business practices statutes of a number of states, as well as common-law contract and fraud claims, were not preempted by § 560.2. The Seventh Circuit affirmed. *In re: Ocwen Loan Servicing, LLC Mortgage Servicing Litigation,* 491 F.3d 638 (7th Cir. 2007). Ocwen is bound by this holding in the present litigation.

54.

In March, 2011, the Federal Trade Commission opened a broad investigation into the operations and foreclosure practices of Ocwen. The FTC requested documents and information concerning Ocwen's servicing activities.  Ocwen has acknowledged the FTC investigation in a filing with the Securities and Exchange Commission. This investigation is ongoing.

55.

On November 7, 2011, Ocwen received a civil investigatory demand from the Massachusetts Attorney General, requesting documents and information regarding foreclosures executed in that state.  This investigation is ongoing.

56.

By instrument dated September 1, 2011, the State of New York State Banking Department entered into an Agreement on Mortgage Servicing Practices with Ocwen Financial Corporation, and others, wherein the parties agreed to adhere to the proper servicing practices outlined in the Agreement. On January 18, 2012, Ocwen Financial Corporation received a subpoena from the New York Department of Financial Services, requesting documents regarding Ocwen's policies, procedures, and practices regarding "force-placed" insurance. That investigation is ongoing.

## OCWEN'S CONTINUATION OF FRUADULENT PRACTICES AFTER JUNE 10, 2010—THE FINAL DATE OF CONDUCT GOVERNED BY M.D.L. 1604.

57.

From and after June 10, 2010, Ocwen falsely charged Plaintiff's mortgage account for late charges.

58.

From and after June 10, 2010, Ocwen falsely charged Plaintiff's mortgage account for "force-placed" homeowner's insurance.

59.

From and after June 10, 2010, Ocwen falsely charged Plaintiff's mortgage account for legal and other collection expenses.

60.

Pursuant to the settlement terms of M.D.L. 1604, Ocwen agreed, for a three (3) year period, to abide by certain "best practices" in mortgage servicing, to implement certain "practice changes," to appoint an ombudsman to represent the interests of its customers, and to apply all customer payments promptly and otherwise in a proper manner.   Notwithstanding such commitments to the Court in M.D.L. 1604, Ocwen has continued to pursue a business strategy of predation and victimization of  its customers with the fraudulent practices described herein, because Ocwen profits from false late fees, force-placed insurance, and other fictitious expenses and, for this reason, has, upon information and belief, continued to implement policies of charging for such fees when customers are not, in fact, late, or have not, in fact, failed to provide hazard insurance, and have not, in fact, failed to make other payments required by the terms of such customers' mortgage loan documents.

61.

Prior to June 10, 2010, and thereafter, Ocwen misstated and intentionally miscalculated the amount of customers' obligation to make payments of principal and interest under the terms of such customers' mortgage documents.

62.

Prior to June 10, 2010, and thereafter, Ocwen misstated and intentionally miscalculated the amount of customers' obligation to make payments of property taxes and hazard insurance payable from customers' escrow accounts and otherwise.

63.

By reason of the aforesaid continuing misstatements and miscalculations, the mortgage account balances maintained by Ocwen for Plaintiff and other customers are inaccurate, incorrect, and false.

64.

Notwithstanding the inaccuracy, incorrectness, and falsity of Plaintiff's mortgage account balance, Ocwen has continued, as recently as August 29, 2012, to threaten Plaintiff with foreclosure on the basis of such inaccurate, incorrect, and false information.

**COUNT ONE**
**(Fraud and Deceit)**
**(O.C.G.A. § 51-6-1--2)**

65.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 64 above, as if fully set forth verbatim in this Count One.

66.

Pursuant to O.C.G.A. § 9-11-9(b), Plaintiff shows, with particularity, that the actions of Ocwen constituted fraud, at all times relevant herein, under the laws of the State of Georgia, *inter alia*, in the following respects:

(a) After execution of the Loan, Ocwen implicitly represented to Plaintiff, and to other members of the putative Class, that it would maintain true and correct records and accounts of the Loan;

(b) Ocwen represented to Plaintiff, and to other members of the putative Class, that it would abide by the terms of the Loan when, in fact, Ocwen had no such intent;

(c) Ocwen represented to Plaintiff, and to other members of the putative Class, that it would correct errors made by Ocwen in the processing and administration of the Loan and would apply payments in the manner required by the terms of the Loan; and

(d) Ocwen made the "errors" in the Plaintiff's Loan account, and the accounts of other members of the putative Class, as part of a systemic national effort to defraud its customers, such effort being, since June 10, 2010, in violation of the commitments made by Ocwen in M.D.L. 1604.

67.

Ocwen intentionally made each of the foregoing false statements of material fact, prior to and after June 10, 2010.

68.

Ocwen made each of the foregoing false statements with malice and scienter, prior to and after June 10, 2010.

69.

Ocwen, through its officers and agents, made each of the foregoing statements with knowledge of such falsity, prior to and after June 10, 2010.

70.

Plaintiff, and other members of the putative Class, upon information and belief, reasonably relied on each of the foregoing misrepresentations, and Plaintiff and such other members have suffered injury and damages, as a direct and proximate result of such reasonable reliance, in an amount to be shown at the trial of this matter.

## COUNT TWO
### (Negligence)

71.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 70 above as if fully set forth verbatim in this Count Two.

72.

Ocwen owed duties of reasonable care to Plaintiff and to all members of the putative Class in the servicing of mortgage loans in Georgia.

73.

Ocwen breached its duties of reasonable care in the servicing of mortgage loans in Georgia by the imposition of fictitious and false mortgage loan account charges, and otherwise, as described in this First Amended and Restated Complaint.

74.

Plaintiff and members of the putative Class have been damaged as a proximate result of Ocwen's negligence.

## COUNT THREE
### (Mutual Departure)
### (O.G.G.A. § 13-4-4)

75.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 74 above as if fully set forth verbatim in this Count Three.

76.

From time to time, Ocwen and Plaintiff and other members of the putative Class have mutually departed from the terms of their respective mortgage loan documents.

77.

O.C.G.A. § 13-4-4 requires, in the case of mutual contractual departures, that a party seeking compliance with the initial terms of the contract must give reasonable notice of such party's intent.

78.

By reason of Ocwen's failure to provide notice, as required by Georgia statutory law, Ocwen is unable to enforce the original terms of Plaintiff's mortgage loan documents or the similar terms of any loan documents between Ocwen and other members of the putative Class.

## COUNT FOUR
### (Equitable Accounting)

79.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 78 above as if fully set forth verbatim in this Count Four.

80.

Ocwen services thousands of mortgages in Georgia that were acquired from other parties, including, but not limited to, failed banks and mortgage companies, and other predatory lenders, and originators such as Upland Mortgage. Many of the mortgage loan accounts acquired by Ocwen were, and are, inaccurate, and Ocwen has failed to correct such errors.

81.

Ocwen was not required by the settlement terms of M.D.L. 1604 to correct the mortgage loan accounts in its portfolio that were inaccurate. From and after June 10, 2010, Ocwen has continued to commit errors and make false entries in the mortgage loan account of Plaintiff and in the accounts of other members of the putative Class.

82.

Plaintiff, and the other members of the putative Class, are entitled to an accounting of their respective mortgage loan accounts, in order to correct such accounts and expunge all false and fictitious account entries made by Ocwen or any of Ocwen's predecessors in title. "Equity has jurisdiction over matters of account growing out of privity of contract or where a multiplicity of suits will render a trial difficult, expensive, and unsatisfactory at law." *West View Corporation v. Thunderbolt Yacht Basin Inc.*, 208 Ga. 93, 65 S.E.2.d 167 (1951), citing *United Cigar Stores Company v. McKenzie*, 140 Ga. 270, 78 S.E. 1006 (1913 ); *Smith v. Hancock*, 163 Ga. 222, 136 S.E. 52 (1926); *Gibson v. Smith*, 187 Ga. 532, 1 S. E. 2d 43 ( 1939).

## COUNT FIVE
### (Breach of Fiduciary Duty)

83.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 82 above as if fully set forth verbatim in this Count Five.

84.

Mortgage loan servicers, such as Ocwen, have fiduciary duties and special duties of trust and fidelity to their customers.

85.

Pursuant to the fiduciary duties and special duties of trust and fidelity imposed on mortgage servicers, such servicers are required to maintain true and accurate books of account, including, but not limited to, true and correct balances of each customer's mortgage loan account.

86.

Ocwen violated its fiduciary duties to Plaintiff and other members of the putative Class by failing and refusing to correct errors that were inherited from predecessors in title and by affirmatively committing errors in the maintenance of customers' mortgage loan accounts, including affirmative errors committed after June 10, 2010.

## COUNT SIX
### (Fair Debt Collection Practices Act)

87.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 86 above as if fully set forth verbatim in this Count Six.

88.

This Court has concurrent jurisdiction, with the federal courts, of claims under the Fair Debt Collection Practices Act, including claims that Ocwen has attempted to collect alleged indebtedness through the use of false and inaccurate statements of account and false and inaccurate amortization schedules.

89.

Ocwen has attempted, as recently as August 29, 2012, to collect alleged indebtedness from Plaintiff on the basis of false and inaccurate statements of account and false and inaccurate loan amortization schedules. Upon information and belief, Ocwen has made similar attempts with respect to other members of the putative Class.

90.

Plaintiff, and other members of the putative Class, have been damaged as a proximate result of Ocwen's violation of the Fair Debt Collection Practices Act and, subject to the limitations of M.D.L. 1604, are entitled to statutory damages and actual damages.

**COUNT SEVEN**
**(Promissory Estoppel)**
**(O.C.G.A. § 13-3-44)**

91.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 90 above as if fully set forth verbatim in this Count Seven.

92.

Ocwen made promises to the Plaintiff, both explicitly and implicitly, and, upon information and belief, to other members of the putative Class, that were clear and definite, including, but not limited to, the promise that it would abide by the terms of the Loan, that it

would maintain true and accurate records of his mortgage loan account, and that it would not foreclose on the Home, so long as Plaintiff complied with the terms of the Loan.

93.

Ocwen knew, or should reasonably has expected, at the time that it made promises to Plaintiff, that such promises would induce the Plaintiff and other members of the putative Class to act in the manner set forth in this Complaint.

94.

Under the circumstances, it was reasonable for Plaintiff and other members of the Class to rely upon the promises made by Ocwen, and the Plaintiff, and other members of the putative Class, took actions in reasonable reliance on the promises of Ocwen, all to their detriment.

95.

The Plaintiff, and other members of the putative Class, were damaged, in an amount to be shown at trial, as a result of their reliance upon the promises of Ocwen.

## COUNT EIGHT
### (Wrongful Attempted Foreclosure)

96.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 95 above, as if fully set forth verbatim in this Count Eight.

97.

Under Georgia law, "[i]n order to maintain a claim for an attempted wrongful foreclosure, a plaintiff must show that a creditor (1) knowingly and intentionally published 'untrue and derogatory information concerning the debtor's financial condition,' and that (2) 'damages were sustained as a direct result of this publication.' *Aetna Fin. Co. v. Culpepper*, 171

Ga. App. 315, 319, 320 S.E.2d 228, 232 (1984)." *Hauf v. HomEq Servicing Corporation.*, 2007 U.S. Dist. LEXIS 9439, at 18-19 (M.D. Ga. 2007) (Land, D.J.).

98.

During the month of March 2010, Ocwen knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan. Similar publications were made, upon information and belief, with respect to other members of the putative Class.

99.

Plaintiff and other members of the putative Class have been damaged, in an amount to be shown at the trial of this matter, as a result of Ocwen's publication of such untrue and derogatory information.

### COUNT NINE
### (Libel of Title to Land)
### (O.C.G.A. § 51-9-11)

100.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 99 above as if fully set forth verbatim in this Count Nine.

101.

During the month of March 2010, Ocwen knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan. Upon information and belief, similar publications were made with respect to other members of the putative Class.

102.

The written advertisements of Ocwen's notice of its intent to exercise its alleged power of sale stated that Plaintiff was in default under the Loan and, thus, contained false statements. Such false statements constituted slander of title, which caused injury and damages to the Plaintiff, and other members of the putative Class, in an amount to be shown at the trial of this matter, as determined by the enlightened conscience of a fair and impartial jury.

103.

The actions of Ocwen falsely and maliciously impugned the Plaintiff's title to the Home, and Plaintiff and other members of the putative Class suffered injury and damages therefrom, in an amount to be shown at the trial of this matter, as determined by the enlightened conscience of a fair and impartial jury.

## COUNT TEN
### (False Light Invasion of Privacy)

104.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 103 above as if fully set forth verbatim in this Count Ten.

105.

During March 2010, Ocwen knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan. Upon information and belief, similar publications were made with respect to other members of the putative Class.

106.

The written advertisements of Ocwen's notice of its intent to exercise its alleged power of sale, stating that Plaintiff was in default under the Loan, placed Plaintiff in a false light, all of which caused injury and damages to the Plaintiff, in an amount to be shown at the trial of this matter, as determined by the enlightened conscience of a fair and impartial jury.

## COUNT ELEVEN
### (Intentional Infliction of Emotional Distress)

107.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 106 above, as if fully set forth verbatim in this Count Eleven.

108.

As a result of Ocwen's wrongful actions and wanton disregard for the consequences of its actions, so as to give rise to a presumption of willfulness, Ocwen has caused the Plaintiff, and other members of the putative Class, to lose their right to quiet enjoyment in their homes, and has caused Plaintiff, and other members of the putative Class, substantial and irreparable financial, physical, and emotional distress, anxiety, and mental anguish.

## COUNT TWELVE
### (Punitive Damages)

109.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 108 above, as if fully set forth verbatim in this Count Twelve.

110.

Ocwen is one of the largest residential mortgage holders in the United States, servicing and holding residential mortgages on homes throughout Georgia and the United States. Yet, the actions of Ocwen toward the Plaintiff, and other members of the putative Class, exhibit incompetence, bad faith, gross negligence, and an unwillingness or inability to conform to the requirements of the laws of the State of Georgia and the United States.

111.

Ocwen should be held to a standard of honesty and compliance with Georgia law in its business affairs and dealings with its borrowers, including Plaintiff and the members of the putative Class.

112.

Ocwen's misconduct, as described in this Complaint, was taken with reckless, conscious, and intentional disregard of Plaintiff's rights under Georgia law, and deprived Plaintiff of his property and his personal dignity. Upon information and belief, similar misconduct was directed toward other members of the putative Class.

113.

The misconduct of Ocwen, including the fraud and deceit alleged herein, entitles Plaintiff and the putative Class to an award of punitive damages in an amount to be established by the enlightened conscience of a fair and impartial jury, sufficient to punish Ocwen and to discourage and deter such systemic misconduct by Ocwen in the future.

114.

The punitive damages to be awarded to the Plaintiff should be computed in light of the worldly circumstances of Ocwen and in light of the commitments made by Ocwen in the settlement of M.D.L. 1604.

## COUNT THIRTEEN
### (Expenses of Litigation)

115.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 114 above, as if fully set forth verbatim in this Count Thirteen.

116.

Ocwen has acted in bad faith by, *inter alia*, attempting wrongfully to foreclose on the Home.  Ocwen has been stubbornly litigious, has committed intentional torts, and has caused Plaintiff and the members of the putative Class unnecessary trouble and expense.

117.

As a result of such conduct, Plaintiff and the other members of the putative Class are entitled to recover reasonable attorneys' fees and other expenses of litigation from Ocwen.

## COUNT FOURTEEN
### (Preliminary and Permanent Injunctive Relief)

118.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 117 above as if fully set forth verbatim in this Count Fourteen.

119.

Plaintiff respectfully requests that this Court exercise its equitable powers, both preliminarily and permanently, to issue:

(a)     A mandatory injunction requiring correction of the Plaintiff's mortgage loan account and the accounts of all other members of the putative Class;

(b)     A prohibitory injunction preventing any foreclosure or attempted foreclosure with respect to the Loan or the Home or any other property secured by a mortgage serviced by Ocwen until Ocwen's mortgage loan accounts are corrected;

(c)     A prospective injunction, enforced by the contempt powers of this Court, preventing Ocwen from engaging in the forms of predatory mortgage servicing described in this First Amended and Restated Complaint.

120.

Pursuant to O.C.G.A. § 9-11-65(a)(2), Plaintiff moves that the determination of all equitable issues in this matter be advanced until the time of hearing on the Plaintiff's Motion for Preliminary Injunction.

121.

Plaintiff shows to the Court that he is likely to succeed on the merits of the issues raised in his First Amended and Restated Complaint; that the Plaintiff will suffer irreparable harm unless the equitable powers of this Court are exercised; that the harm to be suffered by the Plaintiff outweighs any burden to be imposed upon the Defendants; and that the grant of the injunctive relief requested is in the public interest. Pursuant to the express settlement terms of M.D.L. 1604, the Plaintiff "preserve[d] [his] ability to defend against foreclosure actions, a right all Settlement Class Members preserve[d]." *Class Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Final Approval of Settlement of Class Claims* at 3. Plaintiff further shows that the resolution of M.D.L. 1604 did not require that the mortgage loan accounts of Ocwen be corrected and otherwise rationalized, in order to expunge the fictitious and false

entries made by Ocwen or its predecessors in title. Finally, Plaintiff shows that he is not required to tender any amount prior to the issuance of this Court's injunction, because Ocwen is threatening to commence a void foreclosure action.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a)     That the Class described herein be certified pursuant to O.C.G.A. § 9-11-23 and that this action proceed as a Class Action;

(b)     That an Accounting be conducted, pursuant to the equitable powers of this Court, pursuant to which the proper balance of Plaintiff's mortgage loan account is computed, and that, after certification of the Class, such an Accounting be conducted with respect to each member of the Class;

(c)     That Plaintiff have judgment against Ocwen for damages as shown by the evidence upon the trial of this case pursuant to Counts One, Two, Five, Six, Seven, Eight, Nine, Ten, and Eleven;

(d)     That Plaintiff have judgment against Ocwen for his expenses of litigation, including reasonable attorneys' fees, pursuant to Count Thirteen;

(e)     That Plaintiff have judgment against Ocwen for punitive damages, pursuant to Count Twelve, but such punitive damages, together with the Plaintiff's compensatory damages and expenses of litigation;

(f)     That Plaintiff be granted the injunctive relief sought in Count Fourteen, including, but not limited to, a preliminary and permanent injunction of any further foreclosures in Georgia by Ocwen, until after completion of the Accounting pursuant to Count Four,

including, but not limited to, foreclosures against customers which have been a party to mutual departures described in Count Three;

       (g)     That all issues triable by a jury be tried before a jury;

       (h)     That all costs of this action be cast against Ocwen; and

       (i)     That the Plaintiff be granted such other and further relief as this Court may deem just and proper.

This 5 day of October, 2012.

Respectfully submitted,

FEDERAL & HASSON, LLP

R. Keegan Federal, Jr.
Georgia Bar No. 257200

Keith S. Hasson
Georgia Bar No. 336383

Janet Litt
Georgia Bar No. 454075
*Counsel for Plaintiff*

Two Ravinia Drive
Suite 1776
Atlanta, Georgia 30346
Tel.: 678-443-4044
Fax: 678-443-4081
keegan@federalhasson.com
keith@federalhasson.com
janet@federalhasson.com