IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, On Behalf of Himself and All Other Persons in the State of Georgia who are Similarly Situated, | : : : : : | CIVIL ACTION NO. 1:12-CV-3861-WSD-JSA |
| Plaintiff, | : : | |
| v. | : : | |
| OCWEN LOAN SERVICING, LLC, *et al.*, | : : : | **NON-FINAL REPORT AND RECOMMENDATION ON A MOTION TO DISMISS** |
| Defendants. | : : | |

Plaintiff Jeffrey Phillips filed the original Complaint initiating this action in the Superior Court of Fulton County, Georgia, on November 16, 2010. *See* Notice of Removal [1] at ¶ 1. In the original Complaint, Plaintiff named Ocwen Loan Servicing, LLC ("OLS") as the only Defendant. *See* Compl., attached to Notice of Removal. On October 5, 2012, Plaintiff filed the First Amended and Restated Complaint [4] to bring a putative class action and to add new claims, including a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. In the First Amended and Restated Complaint, Plaintiff again named OLS as a Defendant, and also added claims against the additional Defendants Ocwen Financial Corporation ("OFC") (the parent company of OLS) and Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for the Registered

Shareholders of Credit Suisse Seasoned Loan Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1 (the "Trustee"). Thereafter, on November 2, 2012, Defendant OLS removed the action to this Court with the consent of the other Defendants. *See* Notice of Removal at ¶ 25.

The action is now before the Court on the Motion to Dismiss [12] filed by Defendants OFC and the Trustee, and the Motion to Dismiss [13] filed by Defendant OLS. For the reasons discussed below, **IT IS RECOMMENDED** that the Motion to Dismiss [12] filed by Defendants OFC and the Trustee be **GRANTED** in its entirety. The Court concludes that, as a matter of law, Plaintiff fails to allege sufficient facts to state a plausible claim for relief against OFC or the Trustee under any of the legal theories presented in the First Amended and Restated Complaint.

**IT IS RECOMMENDED** that the Motion to Dismiss [13] filed by Defendant OLS be **GRANTED IN PART, DENIED IN PART**. The Court concludes that Plaintiff has alleged sufficient facts to state a plausible claim against OLS for wrongful attempted foreclosure, libel of title to land, and false light invasion of privacy. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Plaintiff's substantive claims in Counts Eight, Nine, and Ten, and **DENIED** as to Plaintiff's claims of relief in Counts Twelve, Thirteen, and Fourteen, to the extent that Plaintiff is entitled to that relief on his

2

substantive claims. The undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **GRANTED** as to Plaintiff's remaining claims in Counts One, Two, Three, Four, Five, Six, Seven, and Eleven, and that those claims be **DISMISSED**.

## I.    BACKGROUND

The allegations set forth below are taken from the Plaintiff's First Amended and Restated Complaint [4] ("Amended Complaint" or "Am. Comp."). Plaintiff alleges that, on or about December 7, 1998, he obtained and executed a loan (the "Loan") from HomeAmerican Credit, Inc. d/b/a Upland Mortgage ("Upland") in the amount of $86,400.00, which was secured by a Deed to Secure Debt (the "Security Deed") on the Plaintiff's residence located at 728 Kennolia Drive, Atlanta, Georgia 30310 (the "Property"). Am. Comp. [4] at ¶¶ 1, 16, 18. Plaintiff executed both a promissory note ("Note") as well as the Security Deed at the closing of the Loan. *Id.* at ¶¶ 16-19, Ex. A and B. The Security Deed is recorded at Deed Book 25899, Page 259, in Fulton County, Georgia. *Id.* at ¶ 18.

Plaintiff alleges that in May of 2005, he learned that Upland had filed bankruptcy and was no longer an active corporation. *Id.* at ¶ 23. On or about May 5, 2005, Upland executed a limited Power of Attorney ("POA") appointing "Ocwen" as its attorney-in-fact for several matters, including, but not limited to, note

endorsements and assignment of mortgages. *Id.* at ¶ 24, Ex. C. In the Amended Complaint, Plaintiff defines "Ocwen" to refer collectively to both OLS and OFC. *Id.* at ¶ 3. OLS is a corporate subsidiary of OFC. *Id.* at ¶ 3. Although Plaintiff does not allege which "Ocwen" entity was appointed attorney-in-fact for Upland, the POA attached as Exhibit C to Plaintiff's Amended Complaint indicates that Upland appointed OLS to be its attorney-in-fact. *Id.*, Ex. C.

On or about April 20, 2005, Plaintiff received a letter from Upland stating that the new servicer of the Loan would be "Ocwen." *Id.* at ¶ 21. On May 11, 2005, Plaintiff received a letter from "Ocwen" introducing itself as the new servicer for the Loan. *Id.* at ¶ 22. Plaintiff does not allege which specific "Ocwen" entity sent the letter to him identifying itself as the new servicer of the Loan. *Id.* at ¶ 22. Plaintiff received an account statement from "Ocwen" dated May 6, 2005 (the "May 2005 Statement"), and that May 2005 Statement, which is attached as Exhibit E to Plaintiff's Amended Complaint, indicates that OLS is the servicer of the Plaintiff's Loan. *Id.* at ¶ 32, Ex. E.

Plaintiff alleges that, during the time that Upland serviced the Loan, he experienced "multiple problems" with Upland but "did not realize the full extent of his problems with Upland's servicing of the Loan until after 'Ocwen' became the loan servicer." *Id.* at ¶ 26. According to Plaintiff, at the time he executed the Note, he

4

understood that the Loan was to be amortized over thirty years, with interest calculated on a monthly basis. *Id.* at ¶ 27. He alleges that, without obtaining his consent or notifying him, Upland converted the Loan to a "Simple Interest Loan" that accrued interest from the last date that interest was paid through the date the next payment was received. *Id.* at ¶¶ 27, 29. This amortization technique, which is known as a "daily interest rate" computation, reduces the application of the payment to principal unless a payment is received on the exact due date set forth in the Note. *Id.* at ¶ 28. Plaintiff alleges that "Ocwen" maintained the "daily interest rate" computation and failed to correct the Upland mortgage account errors after it began servicing the Loan. *Id.* at ¶¶ 30-31. He alleges further that "Ocwen" "compounded Upland's errors by committing numerous errors and making numerous false entries" on Plaintiff's Loan account. *Id.* at ¶ 31.

Plaintiff alleges that the May 2005 Statement he received from OLS demonstrates the "errors" on his Loan account. *Id.* at ¶ 32, Ex. E. The May 2005 Statement showed a principal balance of $85,463.72, only $936.28 less than the original principal balance when Plaintiff executed the Note in 1998. *Id.* at ¶ 32(a), Ex. E. Plaintiff alleges that, "[w]ith one exception, no part of Plaintiff's monthly installments was applied to principal." *Id.* at ¶ 32(a). The May 2005 Statement also shows an "escrow advance" of $2,633.73, although no escrow account had been

established with Upland. *Id.* at ¶ 32(b), Ex. E, F. The May 2005 Statement shows a "past due amount" of $815.64, although Plaintiff was current at the time of the transfer of the servicing rights to "Ocwen." *Id.* at ¶ 32(c), Ex. E. The May 2005 Statement also shows a "Prior Servicer Expense" of $1,802.11 that was never explained to Plaintiff by either Upland or "Ocwen." *Id.* at ¶ 32(a), Ex. E.

The May 2005 Statement further states under the heading "Important Message": "Please note that you have a Simple Interest Loan that accrues interest from the last date that interest was paid through the date your next payment is received." *Id.*, Ex. E.

Plaintiff alleges that "Ocwen" also "repeatedly engaged in other wrongful actions," including the assessment of duplicate insurance premiums, false late charges, duplicate payments of property taxes with no refund to Plaintiff of the double payment, and fictitious legal/collection expenses. *Id.* at ¶ 33. He claims that "Ocwen" also sent him his "payment histories" on the Loan, which demonstrated fictional escrow advances and improper application of interest charges. *Id.* at ¶ 34. Plaintiff alleges that, from and after June 10, 2010, "Ocwen" falsely charged late charges to his account, falsely charged his account for "force-placed" homeowner's insurance, and falsely charged his account for legal and other collection expenses. *Id.* at ¶¶ 57-59.

Plaintiff further alleges that, both prior to June 10, 2010, and thereafter, "Ocwen" intentionally miscalculated the amount of its customers' obligations to make payments of principal and interest under the terms of their loans, and their obligations to make payments of property taxes and hazard insurance. *Id.* at ¶¶ 61-62. He alleges that the mortgage account balances maintained by "Ocwen" for both himself and other customers are "inaccurate, incorrect, and false." *Id.* at ¶ 63. He also alleges that "Ocwen" has threatened him with foreclosure as recently as August 29, 2012, on the basis of the "inaccurate, incorrect, and false information" on his account. *Id.* at ¶ 64.

According to Plaintiff, on January 12, 2011, the United States District Court for the Northern District of Illinois, entered an Order approving a settlement of sixteen class actions and numerous individual actions involving "Ocwen," in Multi-District Litigation No. 1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation* ("MDL 1604"). *Id.* at ¶ 52. Plaintiff alleges that he received notice of the settlement in MDL 1604, and was either a "Full Participant" or "Limited Participant" in the settlement fund of MDL 1604, but he did not actually participate in the settlement fund. *Id.* at ¶ 52. He further alleges that the final date of the conduct covered by MDL 1604 was June 10, 2010. *Id.* at ¶ 57.

Plaintiff alleges that, by an "instrument stating that it was entered into as of November 30, 2006, but was not executed or notarized until March 10, 2010," Upland

assigned its interest in the Loan to Bank of America, as the Trustee. *Id.* at ¶ 25, Ex. D (the "Assignment"). He alleges that the Trustee is thus the owner of the Loan. *Id.* at ¶ 4.

Plaintiff has brought claims against the Defendants on behalf of himself and a purported class made up of owners of real property located in the State of Georgia and secured by a mortgage loan serviced by "Ocwen" who, after June 10, 2010: (1) were assessed any charges not authorized by their loan terms, (2) had hazard insurance "force-placed" on their property, or (3) had loans which were in default or treated as being in default by "Ocwen," and who were not affiliated with the Defendants or a judge or judicial official assigned to the matter. *Id.* at ¶ 35.

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Defendants have filed Motions to Dismiss, arguing that all the claims asserted against them in the Amended Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. Defendants OFC and the Trustee also seek to dismiss the Complaint on the ground that Plaintiff failed to effect proper service of process against them.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-

movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has

referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation

omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiff has referred to the Note and Security Deed throughout the Amended Complaint, and he attached copies of those documents to the Amended Complaint. *See* Am. Comp. [4], Ex. A and B. Plaintiff also attached copies of the POA, the Assignment from Upland to the Trustee, and the May 2005 Statement. *Id.*, Ex. C-E. Because Plaintiff attached those documents to the Amended Complaint, they are considered part of the Complaint for all purposes. FED. R. CIV. P. 10(c).

In addition, Defendants also submitted exhibits in connection with their Motions to Dismiss, including a copy of the Settlement Agreement in MDL 1604. *See* McBride Decl., Ex. A [13-2]. When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the

authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Because the documents submitted by Defendants are central to the Plaintiff's claims, and he has not challenged the authenticity of the documents, they may be considered as part of the pleadings in this case in resolving the Motions to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

B.      *Service of Process Against OFC and the Trustee*

Defendants OFC and the Trustee have moved to dismiss the claims asserted against them pursuant to Rule 12(b)(2), (4), and (5), on the ground that Plaintiff has failed to effect proper service of process of the summons and Complaint. As noted above, Plaintiff filed the Amended Complaint naming OFC and the Trustee as Defendants on October 5, 2012. Thereafter, on November 2, 2012, Defendant OLS removed the action to this Court with the consent of the other Defendants. *See* Notice of Removal at ¶ 25. The Amended Complaint was thus filed in this Court and docketed in this action on November 2, 2012.

After a case is removed from a state court to this Court, the Federal Rules of Civil Procedure govern service of process. *See* Fed. R. Civ. P. 81(c)(1). Further, Rule 4(m) of the Federal Rules of Civil Procedure and Local Rule 41.2B require service of the summons and complaint upon the defendant to be made within 120 days after the filing of the Complaint. Fed. R. Civ. P. 4(m); LR 41.2B, NDGa; *see also* 28 U.S.C.

§ 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, . . . such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."). The person effecting service is then required to file proof of service with the Court. Fed. R. Civ. P. 4(*l*)(1) ("Unless service is waived, proof of service must be made to the court.").

If service is not made within 120 days of filing the Complaint, the Court may dismiss the action without prejudice as to the defendant who has not been served. *See* FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

In this case, Plaintiff admits that he has not served OFC and the Trustee. *See* Pl. Br. [41] at 2. According to Plaintiff, the Motion to Dismiss filed by OFC and the Trustee is "premature" because they are not yet parties to the litigation. *Id.* at 2-3. He has filed a separate Motion for Leave to Add Party Defendants [39] requesting that he

be allowed to add OFC and the Trustee as parties to the action.[1] He contends that,
"[a]ssuming that Motion is granted, Plaintiff will then, for the first time, be in a
position to serve these Defendants. To have served them before having been granted
leave to add them as parties would have been to put the cart before the horse." *Id.* at
2-3.

"Service of process is a jurisdictional requirement: a court lacks jurisdiction
over the person of a defendant when the defendant has not been served." *Pardazi v.
Cullman Med. Ctr.*, 896 F.3d 1313, 1317 (11th Cir. 1990). In their Reply Brief,
Defendants OFC and the Trustee state in a footnote that they have now waived service
and consent to personal jurisdiction in this Court, despite the Plaintiff's admitted
failure to serve them. Defs. Reply Br. [43] at 3 n.1. Accordingly, the Court finds that,
because they have waived service, the Court has personal jurisdiction over them and
may address the merits of their Motion to Dismiss under Rule 12(b)(6).

C.    *Plaintiff's Claims*

Plaintiff has asserted ten substantive claims in the Amended Complaint. In
Count One, he asserts a claim for "Fraud and Deceit" under O.C.G.A. § 51-6-1-2. Am.
Comp. at ¶¶ 65-70. In Count Two, he asserts a claim for "Negligence." *Id.* at ¶¶ 71-74.

---

[1] The Plaintiff's Motion for Leave to Add Party Defendants [39], filed on July
16, 2013, over eight months after the case was removed to this Court, is not yet ripe
and has not been submitted to the undersigned for resolution.

In Count Three, he asserts a claim for "Mutual Departure" pursuant to O.C.G.A. § 13-4-4. *Id.* at ¶¶ 75-78. In Count Five, he asserts a claim for breach of fiduciary duty. *Id.* at ¶¶ 83-86. In Count Six, he asserts a federal claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq. Id.* at ¶¶ 87-90. In Count Seven, he asserts a claim for "Promissory Estoppel" under O.C.G.A. § 13-3-44. *Id.* at ¶¶ 91-95. In Count Eight, he asserts a claim for "Wrongful Attempted Foreclosure." *Id.* at ¶¶ 96-99. In Count Nine, he asserts a claim for "Libel of Title to Land." *Id.* at ¶¶ 100-103. In Count Ten, he asserts a claim for "False Light Invasion of Privacy." *Id.* at ¶¶ 104-106. In Count Eleven, he asserts a claim for "Intentional Infliction of Emotional Distress." *Id.* at ¶¶ 107-108.

In addition, Plaintiff asserts four counts requesting specific remedies under Georgia law. In Count Four, he requests an equitable accounting. *Id.* at ¶¶ 79-82. In Count Twelve, he requests punitive damages. *Id.* at ¶¶ 109-114. In Count Thirteen, he requests expenses of litigation. *Id.* at ¶¶ 115-117. Finally, in Count Fourteen, he requests both preliminary and permanent injunctive relief. *Id.* at ¶¶ 118-121.

The Court will first address Plaintiff's federal claim under the FDCPA, and will then address Plaintiff's remaining state law claims.

### 1.   Plaintiff's FDCPA Claim

Plaintiff has asserted a claim under the FDCPA in Count Six of the Amended Complaint. Plaintiff alleges that "Ocwen" (which he defines to include both OLS and OFC) "has attempted to collect alleged indebtedness through the use of false and inaccurate statements of account and false and inaccurate amortization schedules." *Id.* at ¶ 88. Plaintiff alleges that, "as recently as August 29, 2012," "Ocwen" has attempted to collect "alleged indebtedness from Plaintiff on the basis of false and inaccurate statements of account and false and inaccurate loan amortization schedules." *Id.* at ¶ 89. Plaintiff alleges that "Ocwen" has also made similar attempts with respect to other members of the putative class. *Id.*

This issue deserves little discussion, as, in his response to Defendant OLS's Motion to Dismiss, Plaintiff admits that his FDCPA claim should be dismissed. Pl. Br. [40] at 21 ("Plaintiff concedes that its [sic] Fair Debt Collection Practices Act ('FDCPA') claim should be dismissed.").

This claim should therefore be dismissed because the motion is unopposed on this point and the claim has been, essentially, abandoned. Nevertheless, the Court will briefly comment on the standards for pleading FDCPA claims and why Plaintiff's allegations fail.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Specifically, it "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 Fed. App'x 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f).

In order to state a claim under the FDCPA, a plaintiff must allege sufficient facts to assert a plausible claim that a defendant is a debt collector as that term is defined in the statute and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on a consumer debt. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

In this case, Plaintiff asserted a claim under the FDCPA against Defendant OLS, which he alleges in the Amended Complaint was the servicer of his Loan. Am.

Comp. at ¶¶ 21-22, Ex. E. He also asserted claims against OFC and the Trustee. But Plaintiff alleges no facts that would state a plausible claim that OLS, OFC, or the Trustee would be considered a debt collector under the FDCPA. Plaintiff alleges no facts whatsoever about OFC and the Trustee, including any facts suggesting that these entities have engaged in any collection activity at all. As for OLS, Plaintiff does not allege that OLS acquired the Loan for servicing purposes only after the Loan was in default and therefore, as a matter of law, OLS's activity did not fall under the scope of the FDCPA. As Plaintiff now acknowledges, his claim fails.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Six, Plaintiff's FDCPA claim, for failure to state a claim.

### 2.     Fraud and Deceit

In Count One of the Amended Complaint, Plaintiff asserts a claim against OLS for "Fraud and Deceit" under O.C.G.A. § 51-6-1-2. Am. Comp. at ¶¶ 65-70. Plaintiff alleges that "Ocwen" committed fraud by representing that it would: (1) maintain true and correct records and accounts of the Loan; (2) abide by the terms of the Loan; and (3) apply payments in the manner required by the terms of the Loan and correct errors made in the processing of the Loan. *Id.* at ¶ 66. Plaintiff alleges that "Ocwen" made the errors in Plaintiff's account "as part of a systemic national effort to defraud its

customers, such effort being, since June 10, 2010, in violation of the commitments made by Ocwen in M.D.L. 1604." *Id.* at ¶ 66(d). Plaintiff alleges that "Ocwen" made the alleged false statements, with scienter and knowledge of the falsity, both prior to and after June 10, 2010. *Id.* at ¶¶ 67-69.

Under Georgia law, to be actionable as fraud, misrepresentations must be acted upon by the person allegedly defrauded. O.C.G.A. § 23-2-52. The elements of civil fraud are: (1) a false representation by defendants; (2) scienter, (3) an intention to induce plaintiff to act or refrain from acting in reliance upon the representations; (4) plaintiff's justifiable reliance on the false statements; and (5) damages resulting from such reliance. *See Hicks v. Sumter Bank & Trust Co.*, 604 S.E.2d 594, 596 (Ga. Ct. App. 2004).

Moreover, a plaintiff must plead fraud with particularity. *See* O.C.G.A. § 9-11-9; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The particularity rule alerts defendants to "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time,

place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Industries, Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Furthermore, a claim of fraud must generally be premised on false representations related to existing facts or past acts, not to future acts or promises. However, "[w]hile fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the future event will not take place." *Hayes v. Hallmark Apartments, Inc.*, 207 S.E.2d 197, 199 (Ga. 1974) (citations omitted); *see also Perimeter Realty v. GAPI, Inc.*, 533 S.E.2d 136, 147 (Ga. Ct. App. 2000) (a false promise made to induce one to enter into a contract is an exception to the rule that fraud cannot be premised on future promises).

In this case, Plaintiff fails to allege the required elements of fraud with sufficient particularity. Plaintiff alleges that "Ocwen" made various errors in servicing his mortgage, including "falsely charg[ing]" for late fees, insurance payments and other expenses, and tax escrow payments. *See, e.g.,* Am. Compl. [40] at ¶¶ 57-62.

Plaintiff also alleges that "Ocwen" had "implicitly" represented that it would "abide by the terms of the Loan and correct errors." *Id.* ¶¶ 66(b)-(c). But alleging that "Ocwen" made mistakes or failed to correct a prior servicer's mistakes is not enough to allege fraud under Rule 9(b).

Plaintiff does not state the specific date or time or otherwise specifically identify any particular alleged misrepresentation. Nor does Plaintiff ever identify the person or even the entity who allegedly made the purported statement that he claims was false. Indeed, Plaintiff continually refers generally to "Ocwen," notwithstanding that he has sued two Ocwen entities, without ever specifically identifying what each Defendant did to commit fraud.

Plaintiff also does not allege sufficient facts to state a plausible claim that the unidentified speaker(s) knew that the statements were false at the time they were made. Plaintiff also fails to allege facts supporting a reasonable reliance on the alleged false statements, that is, what actions he took to his detriment in reliance on the supposed false statements. In other words, while Plaintiff complains that various errors were made in servicing his account, he does not claim that he believed those statements to be true, and he does not state what actions he took or declined to take in reliance on his belief in the truth of the statements.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count One, Plaintiff's claim of fraud and deceit, for failure to state a claim.

3.     Negligence

In Count Two of the Amended Complaint, Plaintiff asserts a claim for "Negligence." Am. Comp. at ¶¶ 71-74. Plaintiff alleges that "Ocwen" owed duties of reasonable care to Plaintiff and to all members of the putative class and breached that duty "by the imposition of fictitious and false mortgage loan account charges, and otherwise." *Id.* at ¶¶ 72-73.

To state a claim for negligence under Georgia law, Plaintiff must allege sufficient facts to establish: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the duty. *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982); *see also Coote v. Branch Banking & Trust Co.*, 664 S.E.2d 554, 557 (Ga. Ct. App. 2008).

Defendants argue that Plaintiff has failed to state a plausible claim of negligence because he has failed to allege sufficient facts to establish that they owed

him any legal duty outside the Loan contract. In general, a breach of a contractual duty gives rise to a breach of contract claim, not a tort. *See USF Corp. v. Securitas Sec. Servs. USA Inc.*, 699 S.E.2d 554, 558 (Ga. Ct. App. 2010). The Georgia Court of Appeals has held that a bank's alleged negligence in its performance of its obligations under a loan contract with a borrower is not generally subject to a tort claim in the absence of a specific legal duty arising outside the terms of the contract:

> So far as the record reflects, the only relationship between Buford and the bank was that which arose out of the note and security deed. In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relationship, the breach must be shown to have been a breach of duty imposed by law and not merely the breach of a duty imposed by the contract itself. *Mauldin v. Sheffer*, 113 Ga.App. 874, 878, 150 S.E.2d 150. If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained.

*Commercial Bank & Trust Co. v. Buford*, 243 S.E.2d 637, 638-39 (Ga. Ct. App. 1978); *see also S & A Indus. v. Bank Atlanta*, 543 S.E.2d 743, 748 (Ga. Ct. App. 2000) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.") (*quoting Traina Enterprises v. RaceTrac Petroleum*, 525 S.E.2d 712 (Ga. Ct. App. 1999)); *Wallace v. State Farm Fire Co.*, 539

24

S.E.2d 509, 512 (Ga. Ct. App. 2000) ("Absent a legal duty beyond the contract, no

action in tort may lie upon an alleged breach of contractual duty.").

More recently, the Georgia Court of Appeals reiterated that principle when it

rejected an argument by a borrower that a bank owed him a general duty of care

beyond the terms of the loan contract. *Fielbon Dev. Co., LLC v. Colony Bank of*

*Houston County*, 660 S.E.2d 801, 856 (Ga. Ct. App. 2008).

> The negligent actions or inactions that Fielbon asserts against Colony
> Bank all arise out of the bank's administration of its construction loan,
> and the damages it claims flow directly therefrom. While evidence
> existed that the bank may have been negligent in managing and
> monitoring the loan, any duty the bank owed Fielbon in connection with
> the loan arose solely out of the parties' contractual relationship. And
> Fielbon failed to establish that the bank owed the company any duty
> independent of that contract in connection with the loan.

*Id.*

In reliance on that principle, judges in this Court have dismissed tort claims

brought by borrowers based on "negligence" or "negligent servicing" when the

plaintiff has asserted that a bank negligently performed its duties in servicing a

mortgage loan. *See, e.g.*, *Greaves v. Bank of America, N.A.*, No.

1:12-CV-02828-RWS, 2013 WL 1147531, *4 (N.D.Ga. Mar 19, 2013) (Story, J.)

("Plaintiff has not alleged any duty owed her by Defendants outside of the Security

Deed. Under Georgia law, Plaintiff may not assert a tort claim based on an alleged

breach of contract."); *Fenello v. Bank of America, N.A.*, No. 1:11-CV-4139-WSD;

2013 WL 598395, *9 (N.D.Ga. Feb 15, 2013) (Duffey, J.) ("Plaintiffs do not allege any specific duty owed to them by Defendants, or how Defendants purportedly breached this duty").

At the outset, as with all of Plaintiff's claims, the allegations include no facts as to any conduct by OFS or the Trustee. By definition, the Amended Complaint therefore fails to state any claim against these entities, for negligence or otherwise, on this basis alone.

As for OLS, Plaintiff alleges that this entity was the servicer of his Loan account, and that the terms of that Loan agreement were set out in the Note and the Security Deed. *See* Am. Comp. at ¶¶ 21-22, Ex. A-E. Plaintiff does not allege sufficient facts to establish that OLS owed him any legal duty beyond the terms of that Loan contract. In response to Defendants' arguments, he argues that Georgia law establishes a duty of "reasonable care" upon banks in the servicing of loans. Pl. Br. [40] at 11-12. In support of that argument, he cites to *Eason Publications v. NationsBank of Ga.*, 458 S.E.2d 899 (Ga. Ct. App. 1995), which, he argues, held that a bank could be subject to a tort claim of negligence if it fails to exercise "ordinary care." *Id.* at 12. But *Eason* involved a claim by a bank customer that the bank failed to meet its obligation of "ordinary care" that was specifically required under a Georgia statute that governs the responsibilities of a bank in handling a forged check. *See*

26

*Eason*, 458 S.E.2d at 901-02. Plaintiff in this case has not identified any specific statutory duty that the Defendants allegedly breached.

Plaintiff argues that his mortgage contract is not with OLS, which as the servicer is the agent of the mortgagee. This is beside the point. Regardless of whether Plaintiff himself is in contractual privity with OLS, the allegations make clear that OLS acted as agent for the mortgagee as part of the mortgagee's performance of its contractual obligations. It remains, therefore, that Plaintiff's rights are governed by the mortgage contract and OLS, as agent for the mortgagee, owes Plaintiff no additional duties beyond those set out in the contractual relationship.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Two, Plaintiff's claim of negligence, for failure to state a claim.

### 4.   Mutual Departure

In Count Three of the Amended Complaint, Plaintiff asserts a claim for "Mutual Departure" pursuant to O.C.G.A. § 13-4-4. Am. Comp. at ¶¶ 75-78. Plaintiff alleges that "[f]rom time to time, Ocwen and Plaintiff and other members of the putative Class have mutually departed from the terms of their respective mortgage loan documents." *Id.* at ¶ 76. Plaintiff contends that: "By reason of Ocwen's failure to provide notice, as required by Georgia statutory law, Ocwen is unable to enforce the

original terms of Plaintiff's mortgage loan documents or the similar terms of any loan documents between Ocwen and other members of the putative Class." *Id.* at ¶ 78.

Plaintiff has brought his claim of "mutual departure" under O.C.G.A. § 13-4-4, which provides:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

O.C.G.A. § 13-4-4.

The Georgia Supreme Court has held that any departure from the terms of the contract must be both "mutual and intended" in order to invoke the requirement to provide notice to the other party before insisting upon compliance with the contract. *Duncan v. Lagunas*, 316 S.E.2d 747, 748 (Ga. 1984) ("For a departure from the terms of a contract to be sufficient to require notice by one of the parties of his or her intention to insist upon strict compliance with the contract, the departure must be mutual and intended, such that the parties have essentially a new agreement concerning the requirements of the original contract.").

The undersigned finds that, although Plaintiff has stated in a conclusory fashion in the Amended Complaint that both he and "Ocwen" "mutually departed from the terms of their respective mortgage loan documents," he has failed to allege sufficient

facts to state a plausible claim that both parties made a "mutual and intended" departure from the Loan contract. In his response brief, he contends that he has alleged sufficient facts to show that "Plaintiff and Defendant formed a quasi-new agreement departing from the terms of the original written contracts." Pl. Br. [40] at 10. But Plaintiff does not cite to any specific factual allegations in the Amended Complaint in support of that argument.

Indeed, the gist of Plaintiff's factual allegations if anything refute his legal claim of "mutual departure." The entire theory of Plaintiff's fraud, FDCPA, and negligence claims is that "Ocwen" falsely applied Plaintiff's payments to his account, in violation of the original terms of his mortgage.

Plaintiff also argues that, through discovery, he plans to obtain "documentation of Defendant's acceptance of payments less than the full amount due, which are in Defendant's possession." *Id.* at 10-11. But he fails to allege sufficient facts in the Amended Complaint which would establish that OLS (or any other Defendant, as Plaintiff fails to allege which "Defendant" he is contending is in possession of these documents) accepted partial payments such that it formed a "quasi-new agreement" with Plaintiff regarding the Loan.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Three, Plaintiff's claim of mutual departure, for failure to state a claim.

### 5.    Breach of Fiduciary Duty

In Count Five of the Amended Complaint, Plaintiff asserts a claim for breach of fiduciary duty. Am. Comp. at ¶¶ 83-86. Plaintiff alleges that "[m]ortgage loan servicers, such as Ocwen, have fiduciary duties and special duties of trust and fidelity to their customers." *Id.* at ¶ 84. He further alleges that, pursuant to those "fiduciary duties and special duties of trust and fidelity," mortgage servicers "are required to maintain true and accurate books of account, including, but not limited to, true and correct balances of each customer's mortgage loan account." *Id.* at ¶ 85. He alleges that "Ocwen" "violated its fiduciary duties to Plaintiff and other members of the putative Class by failing and refusing to correct errors that were inherited from predecessors in title and by affirmatively committing errors in the maintenance of customers' mortgage loan accounts, including affirmative errors committed after June 10, 2010." *Id.* at ¶ 86.

It is well settled under Georgia law that there is no fiduciary relationship between a borrower and a lender or its agent. *Jean v. Am. Home Mortg. Servicing, Inc.*, No. 1:11-CV-1101-WSD, 2012 WL 111090, at *4 (N.D. Ga. Mar. 30, 2012)

(Duffey, J.); *see also Habib v. Bank of Am. Corp.*, No. 1:10-CV-4079-TWT-RGV, 2011 WL 5239723, at *5 (N.D.Ga. Sept.29, 2011), *adopted by* 2011 WL 5239713 (N.D.Ga. Oct.28, 2011) (Thrash, J.) (*citing In re Telfair*, 224 B.R. 243, 250 (Bankr. S.D. Ga. 1998); *May v. Citizens & S. Nat'l Bank*, 413 S.E.2d 780, 782 (Ga. Ct. App. 1991); *Pardue v. Bankers First Fed. Sav. & Loan Ass'n*, 334 S.E.2d 926, 926-27 (Ga. Ct. App. 1985)). In his response, Plaintiff argues that a mortgage servicer should be considered to have a "confidential relationship" with a borrower, but he cites no authority contradicting the general principle that no fiduciary relationship exists. *See* Pl. Br. [40] at 14-19. To the contrary, this is a prototypical arms length relationship warranting no special fiduciary duties.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Five, Plaintiff's claim of breach of fiduciary duty, for failure to state a claim.

6.  Promissory Estoppel

In Count Seven of the Amended Complaint, Plaintiff asserts a claim for "Promissory Estoppel" under O.C.G.A. § 13-3-44. Am. Comp. at ¶¶ 91-95. Plaintiff alleges that "Ocwen made promises to the Plaintiff, explicitly and implicitly, and, upon information and belief, to other members of the putative Class, that were clear and definite, including, but not limited to, the promise that it would abide by the terms

of the Loan, that it would maintain true and accurate records of his mortgage loan account, and that it would not foreclose on the Home, so long as Plaintiff complied with the terms of the Loan." *Id.* at ¶ 92. He further alleges that "Ocwen knew, or should reasonably has [sic] expected, at the time it made promises to Plaintiff, that such promises would induce the Plaintiff and other members of the putative Class to act in the manner set forth in this Complaint." *Id.* at ¶ 93. He further alleges that it was "reasonable" for him to rely on these promises made by Ocwen, and that he was "damaged" as a result of his reliance upon the promises of Ocwen. *Id.* at ¶¶ 94-95.

Plaintiff has brought this claim of promissory estoppel pursuant to O.C.G.A. § 13-3-44, which provides in relevant part:

> **§ 13-3-44. Promise reasonably inducing action or forbearance**
>
> (a) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. . . .

O.C.G.A. § 13-3-44(a).

Thus, under Georgia law, promissory estoppel requires that a promissor make a promise which induces reliance to a promisee's detriment, such that injustice can be avoided only by enforcement of the promise. *Id.* To state a claim for promissory estoppel, a plaintiff must allege sufficient facts to establish a plausible claim that

(1) the defendant made certain promises; (2) the defendant should have expected that plaintiff would rely on such promises; (3) the plaintiff did in fact rely on such promises to his detriment; and (4) injustice can be avoided only by enforcement of the promise because the plaintiff surrendered or rendered a valuable right. *See Brown v. Rader*, 683 S.E.2d 16, 21 (Ga. Ct. App. 2009) (even when a promise is unenforceable as a valid contract, a promisee may recover under a theory of promissory estoppel if the promisee establishes the required elements of a promise, reasonable reliance on the promise, and injury); *see also Everts v. Century Supply Corp.*, 590 S.E.2d 199, 202 (Ga. Ct. App. 2003).

The doctrine of promissory estoppel acts to supply the necessary consideration, which would otherwise be lacking, by the reliance of the promisee on the promise of another. *Am. Casual Dining, L.P. v. Moe's Southwest Grill, LLC*, 426 F.Supp.2d 1356 (N.D. Ga. 2006) (Thrash, J.); *see also Everts*, 590 S.E.2d at 202. When there is a definite contract, however, in which consideration is present and the terms are bargained for, promissory estoppel is not available as a remedy. See *Am. Casual Dining,* 426 F.Supp.2d at 1371; *see also Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005) (*citing Bank of Dade v. Reeves*, 354 S.E.2d 131 (Ga. 1987)).

Plaintiff has failed to allege any facts showing that OLS, or any of the other Defendants, made any "promises" to him beyond what was contained in the terms of the Note and the Security Deed. Plaintiff alleges that "Ocwen" made promises to him "that it would abide by the terms of the Loan, that it would maintain true and accurate records of his mortgage loan account, and that it would not foreclose on the Home, so long as Plaintiff complied with the terms of the Loan." Am. Comp. ¶ 92. But he fails to allege who, acting on behalf of OLS or the other Defendants, made this alleged "promise" or when this alleged promise was made to him. Instead, the facts as alleged in the Amended Complaint indicate that Plaintiff is inferring this "promise" based solely on the terms of his Loan contract, as set forth in the Note and the Security Deed. He does not allege that anyone at "Ocwen" ever made any promise to him that was in addition to, or different from, the terms set forth in those documents.[2]

Plaintiff also fails to allege sufficient facts to identify the specific terms of any alleged "promise" that anyone at "Ocwen" made to him regarding the servicing of his Loan. Georgia courts have consistently held that plaintiffs may not enforce vague or

---

[2] Again, that Plaintiff's mortgage contract was not with OLS is of no moment. A servicer's implicit promise that it would service a mortgage consistently with the terms of the mortgage document, as the mortgagee's agent, does not create any additional rights beyond the contract terms themselves. The Plaintiff's rights, remedies and obligations are still defined by the contract itself, not any separate promise that his lender or its agent would "abide" by the contract.

indefinite promises under the promissory estoppel doctrine. In *Georgia Investments International, Inc. v. Branch Banking and Trust Co.*, 700 S.E.2d 662, 664 (Ga. Ct. App. 2010), the Georgia Court of Appeals found that a promise to make a loan for a certain duration was unenforceable because the promise did not contain other material terms such as the interest rate. *Georgia Inv. Internat'l*, 700 S.E.2d at 664 ("Promissory estoppel does not, however, apply to vague or indefinite promises, or promises of uncertain duration.") (citing *Mariner Healthcare v. Foster*, 634 S.E.2d 162 (Ga. Ct. App. 2006)); *see also Mooney v. Mooney*, 538 S.E.2d 864, 868 (Ga. Ct. App. 2000) (promissory estoppel does not apply to "vague, indefinite promises"); *Bridges v. Reliance Trust Co.*, 422 S.E.2d 277, 279 (Ga. Ct. App. 1992) (affirming summary judgment on promissory estoppel claim because defendant's promise to make loan with no specification of interest rate or maturity date was "unenforceably vague").

Moreover, even if the Plaintiff had alleged facts indicating that someone employed by "Ocwen" made some "promise" to him that it would maintain accurate records and not foreclose on his home, he has failed to allege any facts sufficient to establish that he relied on these alleged "promises" to his detriment and was damaged as a result.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Seven, Plaintiff's claim of promissory estoppel, for failure to state a claim.

### 7.    Wrongful Attempted Foreclosure

In Count Eight of the Amended Complaint, Plaintiff asserts a claim for "Wrongful Attempted Foreclosure." Am. Comp. at ¶¶ 96-99. Plaintiff alleges that "[d]uring the month of March 2010, Ocwen knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." *Id.* at ¶ 98. Plaintiff alleges that similar publications were made with respect to other members of the class, and that he and other members of the class were damaged by this "publication of such untrue and derogatory information." *Id.* at ¶¶ 98-99.

To state a claim for wrongful attempted foreclosure under Georgia law, a plaintiff must allege sufficient facts to state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that he or she incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D.

Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)).

The undersigned finds that Plaintiff has failed to allege sufficient facts in the Amended Complaint to state a plausible claim for wrongful attempted foreclosure against either OFC or the Trustee. Although he alleges that "Ocwen" was the entity that "knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition," the documents Plaintiff attached to the Amended Complaint, which are considered part of the pleadings in this case, establish that OLS was the servicer of his Loan, not OFC. *See* Am. Comp. [4], Ex. C, E. Indeed, in Plaintiff's response to the Motion to Dismiss filed by OFC and the Trustee, he concedes that his allegations of the Complaint are based on the conduct of OLS, not the other Defendants. *See* Pl. Br. [41] at 3 ("Plaintiff's belief is that the conduct described in the Complaint was committed by employees of Ocwen Loan Servicing, LLC, and Defendants' position appears consistent with that belief.").

Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [12] filed by Defendants OFC and the Trustee be **GRANTED** as to Count Eight, Plaintiff's claim of wrongful attempted foreclosure, for failure to state a claim.

The undersigned finds, however, that Plaintiff has alleged sufficient facts to state a plausible claim for wrongful attempted foreclosure against OLS. Defendant

OLS argues that this claim must fail because it is "predicated on the failed fraud claim." Def. Br. [13-1] at 21-22. The undersigned rejects that argument. The Plaintiff's factual allegations underlying his claim of wrongful attempted foreclosure are not the same allegations supporting his claim of fraud and deceit and are not required to be pleaded with the same level of particularity. Instead, Plaintiff bases his claim of wrongful attempted foreclosure on his allegation that in March of 2010, OLS "knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." Am. Comp. at ¶ 98. Plaintiff's fraud claim is not premised on this alleged publication by OLS in March of 2010 stating that he was in default on the Loan.[3]

Defendant OLS argues further that Plaintiff's claim of wrongful attempted foreclosure must fail because "nowhere in Plaintiff's lengthy [Amended Complaint] does Plaintiff affirmatively state that he has made all payments as required under the terms of the Loan." Def. Br. [13-1] at 22. But Plaintiff does allege in the Amended

---

[3] Even if Plaintiff had attempted to base his fraud claim on this alleged publication in March of 2010, that claim would fail for the reasons discussed above, *supra*. Plaintiff fails to allege any facts that he reasonably relied on the alleged publication stating that he was in default on the Loan; to the contrary, he argues that the publication was false at the time it was made, that he knew that it was false, and that he was damaged by that false publication. A claim of wrongful attempted foreclosure, however, requires no allegation that the Plaintiff relied on the false statement to his detriment.

Complaint that he was current on his Loan. Am. Comp. at ¶ 33(b) ("Late charges were assessed for virtually every monthly installment, despite Plaintiff's explanation – and proof – that he was current on the Loan.").[4] Thus, Plaintiff alleges that he was current on his Loan, and that OLS published "untrue and derogatory information" that he was in default on the Loan. Am. Comp. at ¶ 98. He also alleges sufficient facts in the Amended Complaint that OLS was aware that he was not in default on the Loan at the time it made this statement, and thus, that it was "knowing and intentional." He also alleges that he was damaged as a result of the publication. Although he does not specify how he was damaged in any detail, the undersigned finds that he has alleged sufficient facts to meet the minimum standard set forth in *Twombly* and *Iqbal*.

Plaintiff has thus stated a plausible claim against OLS for wrongful attempted foreclosure under Georgia law. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Count Eight, Plaintiff's claim of wrongful attempted foreclosure.

---

[4] The undersigned notes that this allegation is undermined by Plaintiff's statement in his response brief that OLS accepted payments on the Loan from him that were "less than the full amount due." Pl. Br. [40] at 10-11. It may be that Plaintiff is ultimately unable to prove that he made all the payments on the Loan and was not in default. But for the purpose of resolving the Defendants' Motions to Dismiss, the Court must take the Plaintiff's allegations in the Amended Complaint as true, and the Plaintiff alleges that he was "current on the Loan." Am. Compl. [4] at ¶ 33(b).

8.      Libel of Title to Land

In Count Nine of the Amended Complaint, Plaintiff asserts a claim for "Libel of Title to Land" under O.C.G.A. § 51-9-11. Am. Comp. at ¶¶ 100-103. He alleges that, "[d]uring the month of March 2010, Ocwen knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." *Id.* at ¶ 101. Plaintiff alleges that these "false statements" indicating that he was in default on the Loan constituted "slander of title, which caused injury and damages to the Plaintiff." *Id.* at ¶ 102. Plaintiff also alleges that other members of the putative Class were treated similarly, and they were all damaged as a result. *Id.* at ¶¶ 102-103.

Plaintiff has brought this claim under O.C.G.A. § 51-9-11, which provides as follows:

**§ 51-9-11. Slander of title**

The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom.

O.C.G.A. § 51-9-11.

Plaintiff has not alleged any facts in the Amended Complaint indicating that either OFC or the Trustee engaged in conduct that would constitute slander of title.

As discussed above in connection with Plaintiff's claim of wrongful attempted foreclosure, the Plaintiff's allegations in the Amended Complaint indicate that OLS was the servicer of his Loan, and that OLS committed the actions he attributes collectively to "Ocwen." Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [12] filed by Defendants OFC and the Trustee be **GRANTED** as to Count Nine, Plaintiff's claim of libel of title to land, for failure to state a claim.

The undersigned finds, however, that Plaintiff has alleged sufficient facts to state a plausible claim against OLS. Taking all of the Plaintiff's factual allegations in the Amended Complaint as true, as it must in resolving a defendant's motion to dismiss, the Court finds that Plaintiff's allegations meet the minimum standard set forth in *Twombly* and *Iqbal*. He alleges that he was current in his payments on the Loan, but, in March of 2010, OLS "knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." Am. Comp. at ¶¶ 33(b), 101. Plaintiff also alleges that these "false statements" caused him "injury and damages." *Id.* at ¶ 102.

41

Plaintiff has thus stated a plausible claim against OLS for slander of title. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Count Nine, Plaintiff's claim of libel of title to land.

### 9.   False Light Invasion of Privacy

In Count Ten of the Amended Complaint, Plaintiff asserts a claim for "False Light Invasion of Privacy." Am. Comp. at ¶¶ 104-106. He alleges that, "[d]uring March 2010, Ocwen knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." *Id.* at ¶ 105. Plaintiff alleges that these "written advertisements" "placed Plaintiff in a false light, all of which caused injury and damages to the Plaintiff." *Id.* at ¶ 106. Plaintiff also alleges that other members of the putative Class were treated similarly, and they were damaged as a result. *Id.* at ¶¶ 105-106.

Under Georgia law, a claim based on invasion of privacy can be based on one of four types:

> (1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation for the defendant's advantage, of the plaintiff's name or likeness.

42

*Yarbray v. Southern Bell Telephone & Telegraph Co.*, 409 S.E.2d 835, 836 (Ga. 1991). Plaintiff in this case contends that the Defendants engaged in "publicity which places the plaintiff in a false light in the public eye." In order to sustain a false light invasion of privacy claim, a plaintiff must allege sufficient facts to establish a plausible claim that a defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652E; *see also Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008).

The undersigned finds that Plaintiff has failed to allege sufficient facts in the Amended Complaint to state a plausible claim for invasion of privacy against either OFC or the Trustee. As discussed above in connection with Plaintiff's wrongful attempted foreclosure claim, the Plaintiff's allegations in the Amended Complaint indicate that OLS was the servicer of his Loan, and that OLS committed the actions he attributes collectively to "Ocwen." He does not allege that either OFC or the Trustee engaged in any acts that cast him in a "false light." Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [12] filed by Defendants OFC and the Trustee be **GRANTED** as to Count Ten, Plaintiff's claim of false light invasion of privacy, for failure to state a claim.

The undersigned finds, however, that Plaintiff has alleged sufficient facts to state a plausible claim against OLS. He alleges that, in March of 2010, OLS "knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan." Am. Comp. at ¶ 105. Thus, Plaintiff alleges facts in the Amended Complaint stating that he was current on his Loan, that OLS was aware that he was current on his Loan, that OLS published information in the "written advertisements" stating that he was in default on the Loan, that OLS did so knowingly or recklessly, and that he was damaged as a result of that publication. Furthermore, the undersigned finds that Plaintiff's allegation that OLS falsely stated that he was in default on his Loan could be construed as "highly offensive to a reasonable person," if that person was actually current on his Loan and not in default.

Plaintiff has thus stated a plausible claim against OLS for false light invasion of privacy. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Count Ten, Plaintiff's claim of false light invasion of privacy.

10.    Intentional Infliction of Emotional Distress

In Count Eleven of the Amended Complaint, Plaintiff asserts a claim for "Intentional Infliction of Emotional Distress." Am. Comp. at ¶¶ 107-108. Plaintiff alleges that, "[a]s a result of Ocwen's wrongful actions and wanton disregard for the consequences of its actions, so as to give rise to a presumption of willfulness, Ocwen has caused the Plaintiff, and other members of the putative Class, to lose their right to quiet enjoyment in their homes, and has caused Plaintiff, and other members of the putative Class, substantial and irreparable financial, physical, and emotional distress, anxiety, and mental anguish." *Id.* at ¶ 108.

The Georgia Supreme Court has recognized the tort of intentional infliction of emotional distress by stating:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Yarbray v. Southern Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 837 (Ga. 1991) (quoting The Restatement (Second) of Torts § 46(1) (1965)); *see also Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445, 447 (Ga. Ct. App. 1985).

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts to establish the following elements: (1) the conduct in question must be intentional or reckless; (2) the conduct must be extreme

45

and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *See Hendrix v. Phillips*, 428 S.E.2d 91, 93 (Ga. Ct. App. 1993); *Bridges*, 335 S.E.2d at 447-48; *see also Gaston v. Southern Bell Tel. & Tel. Co.*, 674 F. Supp. 347, 352 (N.D. Ga. 1987). The burden that a plaintiff must meet in order to prevail on this claim is a stringent one. *Bridges*, 335 S.E.2d at 447.

In order to sustain a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff. *Cornelius v. Auto Analyst, Inc.*, 476 S.E.2d 9, 11 (Ga. Ct. App. 1996) ("The conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (citation and internal quotation marks omitted); *see also Moses v. Prudential Ins. Co. of America*, 369 S.E.2d 541, 542-43 (Ga. Ct. App. 1988); *Sossenko v. Michelin Tire Corp.*, 324 S.E.2d 593, 594 (Ga. Ct. App. 1984); Comment d § 46(1) of the Restatement (Second) of Torts ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!'").

In this case, the undersigned finds that Plaintiff has failed to allege sufficient facts to establish a plausible claim for intentional infliction of emotional distress under

Georgia law against any of the Defendants, because he has not alleged the kind of "extreme and outrageous" conduct that goes "beyond all possible bounds of decency" and would be "utterly intolerable in a civilized community." *Canziani v. Visiting Nurse Health Sys., Inc.*, 610 S.E.2d 660, 662 (Ga. Ct. App. 2005).

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Eleven, Plaintiff's claim of intentional infliction of emotional distress, for failure to state a claim.

### 11. Equitable Accounting

In Count Four of the Amended Complaint, Plaintiff requests an equitable accounting. Am. Comp. at ¶¶ 79-82. He alleges that Ocwen services thousands of mortgages in Georgia that it acquired from other parties, that such accounts were inaccurate, and that Ocwen failed to correct the errors. *Id.* at ¶ 80. He further alleges that, from and after June 10, 2010, Ocwen has continued to commit errors and make false entries in his mortgage Loan account and in the accounts of other members of the putative Class. *Id.* at ¶ 81. He alleges that he, and the other members of the putative Class, are entitled to an accounting of their respective accounts in order to correct the errors "and expunge all false and fictitious account entries made by Ocwen or any of Ocwen's predecessors in title." *Id.* at ¶ 82.

Defendants argue that Plaintiff has failed to allege sufficient facts to state a claim for equitable accounting. The undersigned agrees. The Georgia Supreme Court has held that, when a plaintiff has an adequate remedy at law to enforce the terms of a contract, an action for accounting will not stand merely to ascertain the amount due under the contract. *Ins. Ctr., Inc. v. Hamilton*, 129 S.E.2d 801, 804 (Ga. 1963).

> A cause of action for accounting is not stated. The petition does not show that the accounts are complicated. An accounting may be had at law. 'The mere necessity of accounting to ascertain the amount due on a contract is wholly insufficient to give equity jurisdiction to order an accounting.' *Burress v. Montgomery*, 148 Ga. 548(3), 97 S.E. 538.

*Id.* at 804.

In this case, the undersigned finds Plaintiff has not pled sufficient facts, nor has he established through his arguments in his brief, that he has no adequate remedy at law to ascertain the amount due on his Loan contract. He has thus not shown that he is entitled to an equitable accounting against OLS, or the other Defendants. Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [12][13] be **GRANTED** as to Count Four, Plaintiff's claim of equitable accounting.

### 12.    Plaintiff's Remaining Claims

Finally, Plaintiff has asserted three claims requesting specific remedies under Georgia law. Plaintiff asserts a claim for punitive damages in Count Twelve of the

Amended Complaint. Am. Comp. at ¶¶ 109-114. In Count Thirteen, he requests expenses of litigation and in Count Fourteen, he requests both preliminary and permanent injunctive relief. *Id.* at ¶¶ 115-121.

The undersigned finds that, after consideration of the Plaintiff's substantive claims discussed above, Plaintiff has failed to allege sufficient facts to establish that he is entitled to relief from OFC or the Trustee on any of the theories in the Amended Complaint. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [12] filed by OFC and the Trustee be **GRANTED** as to Counts Twelve, Thirteen, and Fourteen.

The undersigned finds, however, that Plaintiff has alleged sufficient facts to state a plausible claim against OLS in Counts Eight, Nine, and Ten. Thus, to the extent that Plaintiff seeks punitive damages, expenses of litigation, or injunctive relief on those claims, those claims may proceed against Defendant OLS. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Counts Twelve, Thirteen, and Fourteen.

## III.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Motion to Dismiss [12] filed by Defendants OFC and the Trustee be **GRANTED** in its entirety,

and that all claims asserted against those Defendants be **DISMISSED** for failure to state a claim.

**IT IS FURTHER RECOMMENDED** that Motion to Dismiss [13] filed by Defendant OLS be **GRANTED IN PART, DENIED IN PART**.

**IT IS RECOMMENDED** that the Motion to Dismiss [13] filed by OLS be **GRANTED** as to Plaintiff's claims in Counts One, Two, Three, Four, Five, Six, Seven, and Eleven, and that those claims be **DISMISSED**.

**IT IS RECOMMENDED** that the Motion to Dismiss [13] filed by OLS be **DENIED** as to Plaintiff's claims in Counts Eight, Nine, Ten, Twelve, Thirteen, and Fourteen. In the event that these recommendations are adopted in full by the District Court, this action will go forward on Plaintiff's claims of wrongful attempted foreclosure, libel to title of land, and false light invasion of privacy solely against Defendant OLS.

**IT IS SO RECOMMENDED** this 1st day of August, 2013.

_____

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE