IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, On Behalf of Himself and All Other Persons in the State of Georgia who are Similarly Siutated, | | |
| **Plaintiff,** | | |
| v. | | 1:12-cv-3861-WSD |
| OCWEN LOAN SERVICING, LLC, OCWEN FINANCIAL CORPORATION, and BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE SEASONED LOAN TRUST 2006-1, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1, | | |
| **Defendants.** | | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Jeffrey Phillips's ("Plaintiff" or "Phillips") Objections [49] to Magistrate Judge Justin S. Anand's Non-Final Report and Recommendation ("R&R") [47]. The R&R recommends that Bank of America, National Association, as Successor by Merger to LaSalle Bank National

Association, as Trustee for the Registered Holders of Credit Suisse Seasoned Loan Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1 (the "Trustee") and Ocwen Financial Corporation's ("OFC") Motion to Dismiss [12] Plaintiff's First Amended Complaint ("FAC") [4] be granted, and that Ocwen Loan Servicing, LLC's ("OLS") Motion to Dismiss [13] Plaintiff's FAC be granted in part and denied in part.

## I.    BACKGROUND[1]

On December 7, 1998, Plaintiff obtained a loan from HomeAmerican Credit, Inc., d/b/a/ Upland Mortgage ("Upland") and executed in favor of Upland a promissory note in the amount of $86,400 (the "Note").  Repayment of Plaintiff's loan obligations was secured by a deed (the "Security Deed") to real property located at 728 Kennolia Drive, Atlanta, Georgia (the "Property").  The Security Deed was executed in favor of Upland.  (FAC ¶¶ 16-19 & Exs. A, B).

Plaintiff alleges that he experienced problems during Upland's servicing of his loan and that Upland, without Plaintiff's consent, converted his loan into a "Simple Interest Loan."  (Id. ¶¶ 27-28).

---

[1]    The facts are more thoroughly discussed in the R&R.  The parties do not object to the facts set out in the R&R, and finding no plain error in the Magistrate Judge's findings, the Court adopts the facts in the R&R.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir.1993).  The Court briefly summarizes the relevant facts here.

In April 2005, OLS[2] became the servicer of Plaintiff's loan.  (Id. ¶¶ 21-22).

Plaintiff asserts that Upland's servicing errors continued after OLS began servicing

his loan.  Plaintiff asserts that his account statements from OLS, including his May

6, 2005, statement, show: "inaccurate amortization;" "fictitious escrow advances;"

"fictitious 'past due' amounts;" and "false expenses."  (Id. ¶ 32).

On March 10, 2010, Upland assigned its rights under the Note and Security

Deed to the Trustee.  (Id. ¶ 25 & Ex. D).[3]

On November 16, 2010, Plaintiff, proceeding *pro se*, filed his original

complaint [1.1 at 2-7] against OLS in the Superior Court of Fulton County,

Georgia.[4]  Plaintiff sought to remove the "cloud" on his title caused by his

mortgage, to recover all loan payments he made after Upland filed for bankruptcy

protection in 2005, and to recover damages for alleged fraud and

misrepresentation.

On January 12, 2011, the United States District Court for the Northern

District of Illinois approved a settlement of sixteen class actions and numerous

---

[2]     Plaintiff refers generally to "Ocwen" throughout his FAC and does not
distinguish between OLS and OFC.  In his Objections, Plaintiff concedes that he
does not allege sufficient facts to state a claim against OFC, including because he
does not allege any specific conduct by OFC.  It appears that Plaintiff intended to
refer to OLS, the servicer of his loan, in his FAC.

[3]     The Assignment states that it was entered into on November 30, 2006, but it
is dated March 10, 2010.

[4]     No. 2012CV193422.

individual actions involving OLS in <u>In re Ocwen Fed. Bank FSB Mortg. Serv.</u> <u>Litigation</u>, M.D.L. No. 1604 ("MDL 1604").  (FAC ¶ 52).  Plaintiff asserts that he received notice of the settlement in MDL 1604 and that he either was a "Full Participant" or "Limited Participant" in the settlement, claiming he did not actually participate in the settlement fund.  (Id.).

On October 5, 2012, after retaining counsel, Plaintiff filed his FAC, asserting new claims and adding OFC and the Trustee as defendants in this action. Plaintiff seeks to bring a putative class action and asserts claims for: fraud and deceit (Count 1); negligence (Count 2); mutual departure (Count 3); equitable accounting (Count 4); breach of fiduciary duty (Count 5); violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 <u>et seq.</u> ("FDCPA") (Count 6); promissory estoppel (Count 7); wrongful attempted foreclosure (Count 8); libel of title to land (Count 9); false light invasion of privacy (Count 10); intentional infliction of emotional distress ("IIED") (Count 11); punitive damages (Count 12); expenses of litigation (Count 13); and injunctive relief (Count 14).[5]

---

[5]    The FAC has substantial characteristics of a shotgun pleading which has the effect of depleting judicial resources and depriving other litigants of timely access to the Court.  The time and effort to consider Plaintiff's undisciplined litany of claims illustrates this impact.

On November 2, 2012, OLS removed the Fulton County action to this Court based on federal question jurisdiction and the Class Action Fairness Act.  (Notice of Removal [1]).[6]

On December 12, 2012, OLS moved to dismiss Plaintiff's FAC for failure to state a claim [13].  Also on December 12, 2012, OFC and the Trustee filed their Motion to Dismiss [12].[7]

On August 1, 2013, Magistrate Judge Anand issued his R&R.  The R&R recommends dismissal of all of Plaintiff's claims against OFC and the Trustee because Plaintiff fails to allege any facts regarding conduct by OFC or the Trustee. The R&R also recommends that Plaintiff's claims against OLS in Counts 1-7 and Count 11 be dismissed, but that his claims for wrongful attempted foreclosure (Count 8), libel to title of land (Count 9), and false light invasion of privacy (Count 10), be allowed to proceed.  The R&R also recommends that Plaintiff's claims for punitive damages (Count 12), attorney's fees and costs (Count 13), and injunctive relief (Count 14), to the extent Plaintiff seeks these remedies in connection with Counts 8-10, be allowed to proceed.

---

[6]     The Trustee and OFC consented to removal [1.5], [1.6].

[7]     OFC and the Trustee assert that Plaintiff fails to allege any facts to support wrongdoing by OFC and the Trustee.  They also moved to dismiss Plaintiff's FAC for insufficient service of process.  In their Reply, OFC and the Trustee waived service and consented to the Court's exercise of personal jurisdiction.  (Reply of OFC and the Trustee [43] at 3 n.1).

On August 19, 2013, Plaintiff filed his Objections to the R&R.  Plaintiff objects to the Magistrate Judge's conclusion that he fails to state a claim against OLS in Counts 1-5, 7 and 11.  Plaintiff does not object to the Magistrate Judge's recommendation that his claims against OFC and the Trustee be dismissed and that his FDCPA claim be dismissed.

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    *Review of a Magistrate Judge's Report and Recommendation*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1) (Supp. V 2011); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

2.    *Motion to Dismiss*

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)). The Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than

the "mere possibility of misconduct."  <u>Am. Dental</u>, 605 F.3d at 1290 (quoting

<u>Iqbal</u>, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  <u>Id.</u> at 1289 (quoting <u>Twombly</u>, 550

U.S. at 570).

  B. <u>Ocwen Financial Corporation and the Trustee</u>

  Plaintiff does not object to the Magistrate Judge's recommendation that

Plaintiff's claims against OFC and the Trustee be dismissed.  The Magistrate Judge

found that Plaintiff fails to allege any conduct by OFC or the Trustee, and the

Court notes that the only facts Plaintiff alleges against them is that OLS is a

"corporate subsidiary" of OFC, and that the Trustee is the "owner of the 'loan'" by

assignment from Upland.  (FAC. ¶¶ 3-4, 25).  The Court does not find any error in

the Magistrate Judge's conclusion that Plaintiff fails to allege facts sufficient to

state any claim for relief against OFC or the Trustee, and Plaintiff's claims against

them are required to be dismissed.

  C. <u>Ocwen Loan Servicing, LLC</u>

  Plaintiff objects to the Magistrate Judge's conclusion that he fails to state a

claim against OLS in Counts 1-5, 7 and 11.  The Court conducts a *de novo* review

of these claims and reviews for plain error the Magistrate Judge's

recommendations on Plaintiff's remaining claims in Counts 6, 8-10, and 12-14.

*1.     Fraud and Deceit*

The Magistrate Judge found that Plaintiff failed to allege the elements of fraud with sufficient particularity, including because Plaintiff did not assert that OLS knew the statements were false at the time they were made, that he believed the statements were true, or that he relied to his detriment on an allegedly false statement.  In his objection, Plaintiff reiterates the conclusory statements asserted in his FAC.

In Georgia, plaintiffs alleging fraud must establish five (5) elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Baxter v. Fairfield Fin. Servs., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010) (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure further requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The Eleventh Circuit has consistently held:

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Thomas v. Pentagon Fed. Credit Union, 393 Fed. App'x 635, 638 (11th Cir. 2010) (mortgagor failed to allege facts with sufficient particularity to state fraud claim against mortgagee where he did not identify any specific statements made by mortgagee and failed to identify time and place of an omission, person responsible for making an omission, and what mortgagee obtained as a consequence of fraud); see also Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).

Plaintiff asserts that OLS: (a) "implicitly represented to Plaintiff . . . that it would maintain true and correct records and accounts of the Loan;" (b) "represented to Plaintiff . . .that it would abide by the terms of the Loan when, in fact, [it] had no such intent;" (c) "represented to Plaintiff . . . that it would correct errors made by Ocwen in the processing and administration of the Loan and would apply payments in the manner required by the terms of the Loan;" and (d) "made the 'errors' in the Plaintiff's Loan account . . . as part of a systemic national effort to defraud its customers, such effort being, since June 10, 2010, in violation of the commitments made by Ocwen in M.D.L. 1604."  (FAC. ¶ 66).

Plaintiff does not allege any false statement made by OLS, when this statement was made or who made it.  Plaintiff fails also to allege what OLS gained by allegedly making a false statement.  Plaintiff's vague allegations are insufficient to satisfy the special pleading requirement under Rule 9(b) of the Federal Rules of

Civil Procedure for pleading fraud claims with specificity and otherwise fails to allege the required elements of a claim of fraud.  See Fed. R. Civ. P. 9(b).

Plaintiff further fails to allege facts sufficient to support a claim of fraud under Georgia law.  Plaintiff does not allege any action he took, or refrained from taking, in response to an allegedly false representation by OLS.  Plaintiff also does not allege that he relied upon a false representation, or that such reliance was justifiable.  Plaintiff fails to allege facts sufficient to support his fraud claim. Plaintiff's objection is overruled, and this claim is required to be dismissed.

### 2.    Negligence

The Magistrate Judge found that Plaintiff failed to state a claim for negligence because he did not assert that OLS owed him a legal duty beyond the terms of the Note.  Plaintiff asserts that OLS "owed duties of reasonable care to Plaintiff . . . in the servicing of mortgage loans" and that it breached that duty "by the imposition of fictitious and false mortgage loan account charges."  (FAC ¶¶ 72-73).  Plaintiff argues that OLS was required, under O.C.G.A. § 11-4-103, to exercise ordinary care in managing Plaintiff's account.  (Obj. at 12-13).

To support a claim for negligence in Georgia, a plaintiff must allege:

(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or

damage flowing to the plaintiff's legally protected interest as a result
of the alleged breach of the duty.

Burch v. Chase Manhattan Mortg. Corp., No. 1:07-cv-0121-JOF, 2008 WL

4265180, at *15 (N.D. Ga. Sept. 15, 2008) (quoting Bradley Ctr., Inc. v. Wessner,

296 S.E.2d 693, 695 (1982)).  However, "[a] defendant's mere negligent

performance of a contractual duty does not create a tort cause of action; rather, a

defendant's breach of a contract may give rise to a tort cause of action only if the

defendant has also breached an independent duty created by statute or common

law." Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808

(Ga. Ct. App. 2008).  Georgia law is clear that "[a]bsent a legal duty beyond the

contract, no action in tort may lie upon an alleged breach of [a] contractual duty."

Id. (quoting Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct.

App. 2000)).

Plaintiff asserts that OLS "owed duties of reasonable care to Plaintiff . . . in

the servicing of mortgage loans" and that it breached that duty "by the imposition

of fictitious and false mortgage loan account charges."  (FAC ¶¶ 72-73).  Plaintiff

relies on Eason Publ'n v. NationsBank of Ga., 458 S.E.2d 899 (Ga. Ct. App. 1995),

to support that banks owe a general duty of "reasonable care" to customers.  The

Court agrees with the Magistrate Judge's finding that Plaintiff's reliance on Eason

is misplaced because Eason involved a claim by a customer that the bank failed to

12

act with "ordinary care," as specifically required under a Georgia statute that governs the responsibilities of a bank in handling a forged check.

Here, the duties OLS owed to Plaintiff in the servicing of his loan are duties that arise from the Note and Security Deed Plaintiff entered into with Upland, and which duties OLS assumed when OLS became Plaintiff's loan servicer.[8] The negligent actions alleged by Plaintiff against OLS all arise from the duties created by Plaintiff's loan.  Because Plaintiff fails to show that OLS breached an

---

[8]     To the extent Plaintiff relies on O.C.G.A. § 11-4-103 to support that OLS owed him an independent duty to exercise ordinary care in servicing his loan, Section 103 simply provides the degree of responsibility a bank must exercise in performing its duties under other sections of Georgia's Uniform Commercial Code. Section 103 states:

> (a) The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.  However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.
> . . .
> (c) Action or nonaction approved by this article or pursuant to federal reserve regulations or operating circulars is the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearing-house rules and the like or with a general banking usage not disapproved by this article, is prima facie the exercise of ordinary care.

O.C.G.A. § 11-4-103.  Section 103 prohibits parties from agreeing that a bank will not be responsible for actions not taken in good faith or for not exercising ordinary care.  Section 103, standing alone, does not impose on OLS an independent duty to act or refrain from acting.

independent duty it owed to Plaintiff, Plaintiff cannot state a claim for negligence against OLS.  Plaintiff's objection is overruled and this claim is dismissed.

### 3.   *Mutual Departure*

The Magistrate Judge found that Plaintiff failed to state a claim for mutual departure, pursuant to O.C.G.A. § 13-4-4, because Plaintiff failed to allege facts sufficient to support that he and OLS made a "mutual and intended" departure from the terms of his loan.  Plaintiff asserts that he and OLS formed a quasi-new agreement departing from the terms of the original loan and that he should be given the opportunity to present additional facts, "including documentation of acceptance of payments less than the full amount due . . . through discovery," to support this claim.  (Obj. at 10).

Under Georgia law,

[w]here parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

O.C.G.A. § 13-4-4.  The creation of a quasi-new agreement requires more than breach on the part of one of the parties; there must be a mutual departure from the terms of the contract.  Crawford v. First Nat. Bank of Rome, 223 S.E.2d 488, 490 (Ga. Ct. App. 1976) (internal citations omitted).

14

Plaintiff fails to allege any facts to support his conclusory assertion that there was a mutual departure from the terms of the Note or Security Deed.[9]  Even if a quasi-new agreement was formed, all that would be required to enforce OLS's right to foreclose on the Property would be reasonable notice, which was given to Plaintiff in March 2010 when OLS informed Plaintiff that he had defaulted on his loan obligations.  Plaintiff fails to state a claim for mutual departure.  Plaintiff's objection is overruled and this claim is required to be dismissed.

### 4.   Equitable Accounting

The Magistrate Judge found that Plaintiff is not entitled to an equitable accounting because he fails to allege facts sufficient to show that he lacks an

---

[9]     To the extent Plaintiff, for the first time in his Response, asserts that a quasi-new agreement was formed when OLS accepted payments less than the full amount due, this allegation is not properly before the Court and the Court is not required to consider it.  See Huls v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint); Jiles v. PNC Bank Nat. Ass'n, No. 5:10-cv-180-CAR, 2012 WL 3241927, at *5 (M.D. Ga. Aug. 7, 2012) (court not required to consider new allegation raised it for the first time in response to defendant's motion to dismiss and not raised in complaint or amended complaint).

Even if properly before the Court, Plaintiff's new allegation is precluded by the plain language of the Security Deed and Note. The Security Deed and Note expressly state that "[i]f Plaintiff do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default," that "Lender shall not be required to . . . modify amortization of the sums secured by the Security Instrument by reason of any demand made by [Plaintiff]," and that "[a]ny forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy."  (Note at 1; Security Deed at 3).

adequate remedy at law to ascertain the amount due on his Loan.  Plaintiff asserts

that OLS "is in sole possession of the amortization schedules, insurance premium

documents, and the escrow account statements required [to] analyze [OLS's]

sophisticated scheme to defraud."  (Obj. at 13).

Under Georgia law, a party may seek an equitable accounting in "[c]ases

where accounts are complicated and intricate."  O.C.G.A. § 23-2-70.  An

accounting is generally unnecessary in a breach of contract action where a party

may utilize the discovery process and, where necessary, orders of the court to

enforce compliance with discovery obligations to determine the full amounts owed

under the contract.  See, e.g., Gifford v. Jackson, 154 S.E.2d 224, 225-26 (Ga.

1967) (valid breach of contract action and availability of discovery precludes resort

to use of equitable accounting to determine potential damages); Ins. Ctr., Inc. v.

Hamilton, 129 S.E.2d 801, 804 (Ga. 1963) (mere necessity of accounting to

determine damages for breach of contract insufficient to warrant equitable

accounting); Heath v. Sims, 531 S.E.2d 115, 117 (Ga. Ct. App. 2000).

Here, Plaintiff alleges that OLS incorrectly calculated amounts due under the

terms of Plaintiff's loan and misapplied his mortgage payments, resulting in an

allegedly incorrect determination that Plaintiff had defaulted on his loan

obligations.  While Plaintiff does not assert a claim for breach of contract,

Plaintiff's claims arise from contracts commonly used by homeowners and which do not present the type of "complicated and intricate" issue which can only be ascertained with an accounting.  Plaintiff may utilize the discovery process to determine the correct amount owed under his loan.  Plaintiff fails to show that he is entitled to an equitable accounting.  Plaintiff's objection is overruled and this claim is required to be dismissed.

     *5.    Breach of Fiduciary Duty*

The Magistrate Judge found that Plaintiff failed to state a claim for breach of fiduciary duty because there is no fiduciary relationship between a borrower and a lender or its agent.  Plaintiff argues, without citation, that "mortgage loan servicers, such as [OLS], have, by virtue of their activities in the national mortgage servicing market, fiduciary duties and special duties of trust and fidelity to their customers." (Obj. at 14).

It is well-settled under Georgia law that no fiduciary relationship exists between a borrower and a lender or its agent.  See, e.g., White v. Am. Serv. Co., 461 F. App'x 841, 843 (11th Cir. 2012) (no confidential relationship between lender and borrower) (citing Moore v. Bank of Fitzgerald, 483 S.E.2d 135 (1997)); Jean v. Am. Home Mortg. Serv., Inc., No. 1:11-cv-1101-WSD, 2012 WL 1110090, at *4 (N.D. Ga. Mar. 30, 2012) (collecting cases); May v. Citizens & S. Nat'l

Bank, 413 S.E.2d 780, 782 (Ga. Ct. App. 1991); Pardue v. Bankers First Fed. Sav.

& Loan Ass'n, 334 S.E.2d 926, 926–27 (Ga. Ct. App. 1985)).  Plaintiff has not,

and cannot, state a claim against OLS for breach of fiduciary duty.  Plaintiff's

objection is overruled and this claim is required to be dismissed.[10]

6.    *Fair Debt Collection Practices Act*

In his Response, Plaintiff "concede[d] that its [sic] Fair Debt Collection

Practices Act [] claim should be dismissed."  (Pl's Resp. [40] at 21).  The Court

agrees with the Magistrate Judge's conclusion that Plaintiff has abandoned his

claim for violation of the FDCPA, and this claim is required to be dismissed.[11]

---

[10]     Plaintiff's reliance on Ogburn v. Branch Banking & Trust Co.,
No. 1:11-cv-3460-TWT-AJB, 2012 U.S. Dist. LEXIS 84017 (N.D. Ga. May 4,
2012), is misplaced.  Ogburn does not hold that a fiduciary relationship exists
between a mortgagor and a bank, or loan servicer.  Rather, the court found that the
plaintiffs had alleged facts sufficient to support their fraud claim, including
because plaintiffs specifically alleged the time, place, and substance of the alleged
misrepresentations.  Id. at 23.  In a footnote, the court rejected the defendant's
argument that it did not owe the plaintiffs a duty to disclose that its records showed
that they were in arrears on their loan.  Id. at *23 n.9.  The court stated that "a bank
has at least the duty to make truthful disclosures upon inquiry . . . and exercise
ordinary care in managing customers' accounts."  Id.
[11]     The Court also agrees with the Magistrate Judge's conclusion that, even if
Plaintiff did not abandon this claim, Plaintiff fails to state a claim under the
FDCPA because Plaintiff has not alleged facts to support that OLS qualifies as a
"debt collector" under the FDCPA.

### 7.     *Promissory Estoppel*

The Magistrate Judge found that Plaintiff did not state a claim for promissory estoppel because Plaintiff failed to allege facts to support that OLS made any promises to Plaintiff beyond the promises made in the Note and Security Deed, when the alleged promise was made or who made it, or that Plaintiff relied on the alleged promise to his detriment.  Plaintiff argues that OLS made certain promises to Plaintiff pursuant to the MDL 1604 Settlement, and that the existence of a written contract does not preclude a claim for promissory estoppel based on such promises.  (Obj. at 18).

Under Georgia law, a claim for promissory estoppel "requires a showing that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiffs would rely on such promises, and (3) the plaintiff did in fact rely on such promises to their detriment."  Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005); O.C.G.A. § 13-3-44(a).  "Importantly, where a plaintiff seeks to enforce an underlying contract which is reduced to writing, promissory estoppel is not available as a remedy."  Adkins, 411 F.3d at 1326.

Plaintiff asserts that OLS made promises to Plaintiff "that were clear and definite, including, but not limited to, the promise that it would abide by the terms of the Loan, that it would maintain true and accurate records of his mortgage loan

account, and that it would not foreclose on the [Property], so long as Plaintiff complied with the terms of the Loan." (FAC ¶ 92). Plaintiff asserts also that OLS made additional promises to Plaintiff pursuant to the MDL 1604 Settlement. (Obj. at 18). It is clear that the "promises" which Plaintiff seeks to enforce arise from the underlying contracts—the Note, Security Deed and the MDL 1604 settlement agreement. Promissory estoppel simply does not apply here. See, e.g., Bank of Dade v. Reeves, 354 S.E.2d 131 (Ga. 1987) (finding no promissory estoppel, but simply the possibility of a breach of contract, where "[t]hese parties entered into a contract the consideration of which was a mutual exchange of promises. The promises exchanged were bargained for. Promissory estoppel is not present."); Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C., 426 F.Supp.2d 1356, 1371 (N.D. Ga. 2006) ("Where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy."); Bouboulis v. Scottsdale Ins. Co., No. 1:10-cv-2972-JEC, 2012 WL 917844, at *10-*11 (N.D. Ga. Mar. 16, 2012) ("Georgia law bars a claim for promissory estoppel in the face of an enforceable contract."). Plaintiff fails to allege a claim for promissory estoppel. Plaintiff's objection is overruled, and this claim is required to be dismissed.

### 8. *Wrongful Attempted Foreclosure*

The parties did not object to the Magistrate Judge's conclusion that Plaintiff alleged facts sufficient to support a claim for wrongful attempted foreclosure against OLS.  After careful review, the Court finds no plain error in the Magistrate Judge's recommendation that this claim be allowed to proceed.  Plaintiff alleges that, in March 2010, OLS "knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan," and that Plaintiff suffered damages as a result the false statements.  (FAC ¶¶ 98-99).  Plaintiff has alleged sufficient—albeit scant—facts to support a viable claim for wrongful attempted foreclosure.  See, e.g., Jenkins v. McCalla Raymer, LLC, No. 11-14483, 2012 WL 5259018, at *4 (11th Cir. Oct. 25, 2012) (To state a claim for attempted wrongful foreclosure under Georgia law, "a plaintiff must allege 'a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.'") (quoting Aetna Fin. Co. v. Culpepper, 320 S.E. 228, 232 (Ga. Ct. App. 1984)).[12]

---

[12]    Plaintiff asserts that "[l]ate charges were assessed for virtually every monthly installment, despite Plaintiff's explanation – and proof – that he was current on the Loan."  (FAC at ¶ 33(b)).  The Court agrees with the Magistrate Judge's observation that Plaintiff's assertion that he was current on his loan is undermined by Plaintiff's statement in his Response that OLS accepted loan

9.    *Libel of Title to Land*

The parties did not object to the Magistrate Judge's finding that Plaintiff stated a claim for libel of title based on his assertions that, in May 2010, OLS "published false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan," and that these "false statements" caused him "injury and damages."  (FAC at ¶¶ 101-102).  The Court reviews this finding for plain error.

Under Georgia law, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom."  O.C.G.A. § 51-9-11.  To support an action for slander of title, a plaintiff must allege "the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." Cornelius v. Bank of Am., N.A., No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *4 (N.D. Ga. Sept. 27, 2012) (quoting Latson v. Boaz, 598 S.E.2d 485, 487 (Ga.

_____

payments from him that were "less than the full amount due."  (R&R at 39 n.4; Pl's Resp. [40] at 10-11).  The Court notes that the crux of Plaintiff's claims appears to be that OLS misapplied his mortgage payments, resulting in an allegedly incorrect determination that Plaintiff had defaulted on his loan obligations and publication of an allegedly untrue statement that Plaintiff was in default.  The Court agrees with the Magistrate Judge's conclusion that Plaintiff has alleged facts sufficient, at this stage in the litigation, to support that he had not defaulted on his loan obligations in March 2010.

2004)).  A plaintiff who asserts a claim of slander of title can "recover only such special damages as he actually sustained as a consequence of the alleged wrongful acts, and he is required to plead them plainly, fully, and distinctly."  Id.

The Court finds plain error in the Magistrate Judge's finding and recommendation on this claim.  Plaintiff has not asserted that he suffered special damages as a result of OLS's publication of allegedly false statement that Plaintiff had defaulted on his loan obligations.  Failure to adequately plead special damages defeats a claim for slander or libel of title to land.  See, e.g., Cornelius, 2012 WL 4468746, at *4 (dismissing slander of title claim where plaintiff simply claimed millions of dollars in damages without further explanation); Jackman v. Hasty, No. 1:10-cv-2485-RWS, 2011 WL 854878, at *6 (N.D. Ga. Mar. 8, 2011) (dismissing a slander of title claim for failure to allege special damage); Harmon v. Cunard, 378 S.E.2d 351 (1989) (insufficient proof of special damages where no specific figures were offered for the damage allegedly suffered).  Plaintiff fails to allege facts sufficient to support a claim for libel of title.  The Magistrate Judge plainly erred in his findings and recommendation on this claim and Plaintiff's claim for libel of title to land is required to be dismissed.

10.     *False Light Invasion of Privacy*

The parties did not object to the Magistrate Judge's conclusion that Plaintiff alleged facts sufficient to support a claim for false light invasion of privacy against OLS.  After careful review, the Court does not find plain error in the Magistrate Judge's recommendation that this claim be allowed to proceed.  Plaintiff asserts that "during March 2010, [OLS] knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan," and that these statements "placed Plaintiff in a false light" and caused him "injury and damages."  (FAC ¶¶ 105-106).  Plaintiff has alleged facts sufficient to support a viable claim for false light invasion of privacy.  See, e.g., Smith v. Stewart, 660 S.E.2d 822, (Ga. Ct. App. 2008) (To support claim for false light invasion of privacy, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person.).

11.     *Intentional Infliction of Emotional Distress*

The Magistrate Judge found that Plaintiff failed to state a claim for intentional IIED because Plaintiff has not alleged the kind of "extreme and

outrageous" conduct that goes "beyond all possible bounds of decency" and would

be "utterly intolerable in a civilized community."  (R&R at 46-47).  Plaintiff argues

that

> [a]ny reasonable person who makes regular payments to his loan
> servicer over a period of years, only to have the loan servicer
> intentionally manipulate the application of those payments so as not to
> reduce the amount of the outstanding principal obligation, such that he
> owes as much at the end of seven years as he owed at the beginning,
> would find such conduct by his servicer to be extreme, outrageous and
> intolerable.

(Obj. at 21).

> Under Georgia law,
>
> the burden which the plaintiff must meet in order to prevail [on a
> claim for intentional infliction of emotional distress] is a stringent
> one.  To prevail, a plaintiff must demonstrate that: (1) the conduct
> giving rise to the claim was intentional or reckless; (2) the conduct
> was extreme and outrageous; (3) the conduct caused emotional
> distress; and (4) the emotional distress was severe.  The defendant's
> conduct must be so extreme in degree, as to go beyond all possible
> bounds of decency, and to be regarded as atrocious, and utterly
> intolerable in a civilized community.  Whether a claim rises to the
> requisite level of outrageousness and egregiousness to sustain a claim
> for intentional infliction of emotional distress is a question of law.

Steed v. Fed. Nat'l Mortg. Corp., 689 S.E.2d 843, 851-852 (Ga. Ct. App. 2009)

(quoting Frank v. Fleet Fin. Inc. of Ga., 518 S.E.2d 717, 720 (Ga. Ct. App. 1999)).

Plaintiff alleges that "[a]s a result of [OLS's] wrongful actions and wanton

disregard for the consequences of its actions . . . [OLS] has caused Plaintiff . . .

substantial and irreparable financial, physical, and emotional distress, anxiety, and mental anguish." (FAC at ¶ 108). The crux of Plaintiff's FAC is that OLS misapplied his mortgage payments, resulting in an allegedly incorrect determination that Plaintiff had defaulted on his loan obligations and publication of an allegedly untrue statement that Plaintiff was in default. This simply is not the kind of action that rises to the level of extreme, outrageous, atrocious or intolerable conduct as required to support a claim for intentional infliction of emotional distress. See, e.g., Frank, 518 S.E.2d at 720 (breach of contract to re-sell property to homeowners following foreclosure sale and institution of dispossessory proceedings not the kind of egregious conduct necessary to support IIED); Ingram v. JIK Realty Co., 404 S.E.2d 802 (Ga. Ct. App. 1991) (affirming grant of summary judgment on intentional infliction claim where defendant's conduct consisted of wrongfully foreclosing on plaintiff's property); Thomas v. Ronald A. Edwards Constr. Co., 293 S.E.2d 383 (1982) (filing a dispossessory warrant does not constitute the kind of egregious conduct necessary to sustain a claim for intentional infliction of emotional distress). Having conducted its *de novo* review, the Court concludes that Plaintiff fails to allege facts sufficient to support a claim for intentional infliction of emotional distress. Plaintiff's objection is overruled and this claim is required to be dismissed.

26

12.     *Punitive Damages, Litigation Expenses and Injunctive Relief*

Plaintiff asserts claims for punitive damages (Count 12), litigation expenses (Count 13), and injunctive relief (Count 14).  The parties did not object to, and the Court does not find any plain error in, the Magistrate Judge's conclusion that to the extent Plaintiff seeks punitive damages, litigation expenses and injunctive relief on his claims for wrongful attempted foreclosure and false light invasion of privacy, Plaintiff's claims in Counts 12-14 may proceed against OLS.  Because the Court finds that Plaintiff has failed to state a claim for libel of title, the Court finds, on *de novo* review, that Plaintiff's claims for punitive damages, litigation expenses and injunctive relief not be allowed to proceed in respect to the libel of title claim.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Jeffrey Phillips's Objections [49] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Justin S. Anand's Non-Final Report and Recommendation [47] is **ADOPTED IN PART** and **REJECTED IN PART** in accordance with the terms of this Order.  The R&R is **REJECTED** with respect to Plaintiff's claim for libel of title to land (Count 9) and it is **ADOPTED** with respect to all other claims.

27

**IT IS FURTHER ORDERED** that Defendants OFC and the Trustee's Motion to Dismiss [12] is **GRANTED**, and Plaintiff's claims against OFC and the Trustee are **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendant OLS's Motion to Dismiss [13] is **GRANTED IN PART** and **DENIED IN PART**.  OLS's Motion to Dismiss Plaintiff's claims for fraud and deceit (Count 1), negligence (Count 2), mutual departure (Count 3), equitable accounting (Count 4), breach of fiduciary duty (Count 5), violation of the FDCPA (Count 6), promissory estoppel (Count 7), libel of title to land (Count 9), and intentional infliction of emotional distress (Count 11) is **GRANTED** and those claims are **DISMISSED**.  OLS's Motion to Dismiss Plaintiff's claims for wrongful attempted foreclosure (Count 8), false light invasion of privacy (Count 10), punitive damages (Count 12), expenses of litigation (Count 13), and injunctive relief (Count 14) is **DENIED** and those claims are **ALLOWED TO PROCEED**.

**SO ORDERED** this 10th day of September, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE