## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, | ) | |
| | ) | |
| On Behalf of Himself and All Other | ) | |
| Persons in the State of Georgia Who are | ) | |
| Similarly Situated, | ) | |
| | ) | Civil Action File No. |
| Plaintiffs, | ) | 1:12-3861-WSD-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND AMENDED AND RESTATED COMPLAINT

**COMES NOW** JEFFREY PHILLIPS (hereinafter referred to as "Plaintiff") and submits this, his Second Amended and Restated Complaint, by amending and restating his "First Amended and Restated Complaint," and substituting for such Petition, the following Complaint against Defendant OCWEN LOAN SERVICING, LLC (hereinafter "Defendant OLS"), on his own behalf, and on behalf of all other persons in the State of Georgia who are similarly situated.

Defendant OCWEN FINANCIAL CORPORATION (hereinafter "OFC") and Defendant BANK OF AMERICA, NATIONAL ASSOCIATION, AS

SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE SEASONED LOAN TRUST 2006-1, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1 (hereinafter "Trustee"), were dismissed by this Court on September 10, 2013. Doc. 51. With respect to the Defendants and Counts of the First Amended Complaint that are not the subject of repleading in this Second Amended Complaint, Plaintiff expressly reserves, and does not waive, the right to appeal the dismissal of such Defendants and Counts, under the authority of *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, (11th Cir. 1999). ("[W]e do not require a party to replead a claim following a dismissal under Rule 12(b)(6) to preserve objections to the dismissal on appeal.") *Id*. at 1191 n.5.

## **PARTIES**

1.

Plaintiff has for over twenty-four (24) years, since August 1988, been the owner of residential real property in the West End Community of Atlanta, Fulton County, Georgia, located at 728 Kennolia Drive, Atlanta, Georgia 30310 (the "Home") and which is more particularly described as:

> ALL THAT TRACT or parcel of land lying and being in Land Lot 171 of the 14th District of Fulton County, Georgia, being Lot 53 and Part of Lot 52, Property of R.M. Kenney, as per plat recorded in

Plat Book 20, Page 33, Fulton County, Georgia Records, and being more particularly described as follows:

BEGINNING at a point on the East side of Kennolia Drive, 469.4 feet North from the corner formed by the intersection of the East side of Kennolia Drive with the North side of Beecher Street; running thence North along the East side of Kennolia Drive 60 feet to a point and Lot 54 of said subdivision; running thence East along the South line of said Lot 54, 240 feet to a point; running thence South 60 feet to a point; running thence West 240 feet to a point on the East side of Kennolia Drive and the POINT OF BEGINNING; said property being known as 728 Kennolia Drive, Atlanta, Georgia 30319, according to the present system of numbering in Fulton County, Georgia.

2.

Plaintiff is an IT contractor, who currently works as a back-end integration engineer for SunTrust Bank, Inc.

3.

Defendant OLS is a Delaware limited liability company having its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

4.

Defendant OLS is a corporate subsidiary of OFC, a Florida corporation, which was formerly known as "Ocwen Federal Bank, FSB," prior to relinquishing its federal bank charter. OFC's principal place of business is 2002 Summit

Boulevard, 6th Floor, Atlanta, Fulton County, Georgia 30319. Defendant OLS was served with Plaintiff's original Petition.

5.

Defendant OLS services residential mortgage loans. Defendant OLS has publicly described itself as "a leading provider of residential and commercial loan servicing, special servicing and asset management services." Mortgage servicers are the "middlemen" between homeowners and the investors that often hold the homeowners' mortgages, collecting the homeowners' payments and remitting payment for principal, interest, property taxes, and hazard insurance. Mortgage servicers, including Defendant OLS, have often been cited for badgering, manipulating, and lying to their customers, imposing fraudulent fees, and improperly foreclosing.

6.

Defendant OLS has further publicly stated that it is "one of the largest non-prime mortgage servicers in the United States." Defendant OLS now services more than eight hundred thousand (800,000) mortgages, many of which are secured by residential real property located in the State of Georgia, such properties being the principal residences of middle and low-income homeowners in Georgia. Defendant

OLS has touted servicing in excess of five (5) million dollars worth of residential mortgage loans in the State of Georgia.

7.

Defendant OLS publicly claims that it has gained a "national reputation as a servicer specializing in the management of sub-performing and non-performing assets, including severely-delinquent and labor-intensive mortgage loans" and "REO assets" (bank-owned properties constituting "Real Estate Owned"), requiring a "hands-on" approach. A recent on-line survey of customer satisfaction with various mortgage servicers found that eighty-five (85%) percent of the respondents gave Defendant OLS the lowest possible rating.

8.

As a mortgage servicer, Defendant OLS's financial interests are enhanced through the maximization of fee and expense-based income derived from the persons paying the monthly principal and interest due on the serviced mortgages. For the second quarter of 2013, Defendant OLS and its corporate affiliates reported net income of $76,700,000.00. Defendant OLS reported net income of $44,800,000.00 for the second quarter of 2012. This compared with net income of $26,400,000.00 for the second quarter of 2011. Revenue for the second quarter of 2012 was a "record-setting" $211,400,000.00, up one hundred (100%) percent

from the second quarter of 2011. Income from operations was a record at $125,500,000.00 for the second quarter of 2012, as compared to $63,600,000.00 for the second quarter of 2011, an increase of ninety-seven (97%) percent. Upon information and belief, much of Defendant OLS's "record-setting" revenue and net income was derived from improper fees and expenses imposed by Defendant OLS on sub-prime borrowers, contrary to the settlement terms of a class action, styled In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, M.D.L. No. 1604, No. 04-CV-2714, N.D. Ill., U.S. District Court, Northern District of Illinois, as more particularly described below.

9.

In addition to acting as a mortgage servicing company, Defendant OLS has, over the past decade, acquired and managed more than $4,500,000,000.00 in distressed real estate debt on its own behalf. Defendant OLS received more than $200,000,000.00 in cash payments from the United States Treasury under the Troubled Asset Relief Program (TARP). Defendant OLS is also a participant in the Treasury Department's Making Home Affordable Program (HAMP), which is designed to help homeowners facing foreclosure by providing financial incentives to parties such as Defendant OLS. Upon information and belief, Defendant OLS has received such financial incentives.

10.

Defendant OLS is a component of a publicly-held diversified financial corporation with a current market capitalization of at least $7,970,000,000.00, such market capitalization having more than doubled during the preceding year. Defendant OLS is now the largest servicer of sub-prime mortgages in the United States, according to its chief executive officer, having recently acquired Litton Loan Servicing from Goldman Sachs, which serviced many Georgia mortgages. On June 13, 2013, Defendant OLS and its corporate affiliates purchased the servicing rights of OneWest Bank for $2,530,000,000.00. Previously, Defendant OLS acquired the portfolio of HomEq from Barclays Capital**.** In April 2012, Defendant OLS closed the purchase of approximately $22,000,000,000.00 of mortgage servicing rights from Saxon Mortgage Services, a unit of Morgan Stanley. In June 2012, Defendant OLS completed its purchase of Aurora Bank's commercial servicing rights portfolio. On October 3, 2012, Defendant OLS announced its acquisition of Homeward Residential Holdings, Inc. from WL Ross & Co. LLC, a private equity firm, for $750,000,000.00 cash and other consideration. According to Defendant OLS's press release, this acquisition of servicing rights brings to Defendant OLS approximately 422,000 mortgages.

## JURISDICTION AND VENUE

### 11.

This Complaint seeks redress from Defendant OLS's mishandling, over many years, of the servicing of Plaintiff's residential mortgage loan and Defendant OLS's refusal to address serious errors in Defendant OLS's record of Plaintiff's loan payments, including, but not limited to, the late postings of payments, resulting in the improper assessment of late fees and the misapplication of such payments.

### 12.

Defendant OLS was properly served with Plaintiff's original "Petition to Remove Cloud from Title."

### 13.

Venue is proper in this Court.

### 14.

Defendant OLS is subject to the personal jurisdiction of this Court.

### 15.

This Court has subject matter jurisdiction over this action.

## BACKGROUND OF PLAINTIFF'S RELATIONSHIP WITH DEFENDANT OLS

16.

On or about December 7, 1998, Plaintiff executed and delivered to HomeAmerican Credit, Inc., d/b/a Upland Mortgage (hereinafter "Upland"), that certain secured promissory note in the original principal amount of $86,400.00 (hereinafter referred to as the "Note").

17.

A true and correct copy of the first page of the Note is attached hereto as Exhibit "A."

18.

Concurrently with the execution of the Note, Plaintiff executed and delivered to Upland that certain Deed to Secure Debt (hereinafter referred to as the "Security Deed") for the purpose of securing the Note with the Home. The Security Deed is recorded at Deed Book 25899, Page 259, Fulton County, Georgia Records.

19.

A true and correct copy of the Security Deed is attached hereto as Exhibit "B."

20.

The Note and Security Deed are hereinafter jointly referred to as the "Loan." Upland's internal loan identification number was 1045423.

21.

On or about April 20, 2005, Plaintiff received a letter from Upland stating that the new servicer of Plaintiff's Loan would be Defendant OLS.

22.

On May 11, 2005, Plaintiff received a letter from Defendant OLS introducing itself as the new servicer for the Loan.

23.

Upon information and belief, during May 2005, Plaintiff learned that Upland had filed a Chapter 11 bankruptcy, which was then converted to a Chapter 7 bankruptcy, and that Upland was no longer an active corporation.

24.

On or about May 5, 2005, Upland executed a Limited Power of Attorney (hereinafter referred to as "POA") appointing Defendant OLS as its attorney-in-fact for several matters, including, but not limited to, note endorsements and assignments of mortgages.  The POA, a genuine copy of which is attached hereto

as Exhibit "C," is recorded at Deed Book 41467, Page 343, Fulton County, Georgia Records.

25.

By instrument stating that it was entered into as of November 30, 2006, but which was not in writing, executed or notarized until March 10, 2010, Upland purportedly assigned its interest in the Loan to the Trustee. The assignment, a genuine copy of which is attached hereto as Exhibit "D," was recorded on March 19, 2010, at Deed Book 48876, Page 503, and Fulton County, Georgia Records.

26.

Plaintiff experienced multiple problems during Upland's servicing of the Loan. Such problems included cashing post-dated checks (which Upland had requested) before the date shown on the check, resulting in a series of returned checks and the accrual of substantial insufficient funds fees, and harassment of Plaintiff when his installment was not paid on the fifteenth (15th) day of each month. Plaintiff did not, in fact, realize the full extent of his problems with Upland's servicing of the Loan until after Defendant OLS became the loan servicer.

27.

At the time that Plaintiff executed the Note, he clearly and unequivocally understood that the Loan was amortized over thirty (30) years, with interest being calculated on a monthly basis, which was, and is, the traditional method for amortizing the principal and interest of residential mortgages. Upon information and belief, either Upland or Defendant OLS converted the Loan to a "Simple Interest Loan" that accrued interest from the last date that interest was paid through the date that the next payment was received.

28.

This amortization technique, which is known as a "daily interest rate" computation, reduces the application of the payment to principal, unless a payment is received on the exact due date set forth in the Note.

29.

Plaintiff was not advised of, nor did he agree to, this change in the amortization method.

30.

Upon information and belief, and subject to confirmation through discovery, Defendant OLS maintained the "daily interest rate" computation, after the servicing rights for the Loan were acquired by Defendant OLS.

31.

Defendant OLS failed to correct the Upland mortgage account errors. Therefore, Plaintiff's mortgage loan account has been incorrect throughout the time that the Loan has been held by Defendant OLS. After its acquisition of the Loan, Defendant OLS compounded Upland's errors by committing numerous errors and making numerous false entries, as more particularly described below, to Plaintiff's mortgage loan account.

32.

Upon information and belief, as a result of Defendant OLS's numerous false entries and errors on Plaintiff's mortgage loan account, Defendant OLS incorrectly treated Plaintiff's mortgage loan account as being in default.

33.

Upon information and belief, starting in 2009 and continuing to this day, Defendant OLS's incorrectly reported Plaintiff's alleged default to third parties, including but not limited to, credit reporting agencies.

34.

On or about March 1, 2010, the law firm of Weissman Nowack Curry & Wilco, P.C., under the direction of Defendant OLS, sent Plaintiff a notice of foreclosure sale stating that the holder of the Note and Security Deed, the Trustee,

was calling the Note due. A genuine copy of the Notice is attached hereto as Exhibit "E."

35.

The Notice, dated March 1, 2010, identified Defendant OLS as the entity with full authority to negotiate, amend, and modify all terms of the mortgage. *Id.* The Notice further stated that Plaintiff had ten (10) days from the date the Notice was received to pay the entire principal and interest owed or the property would be sold. *Id.*

36.

On March 8, 2010, Defendant OLS first published, in the Fulton County Daily Report, its notice of sale under power, a true and correct copy of which is attached hereto and made a part hereof as Exhibit "F."

37.

Upon information and belief, on or about March 10, 2010, Defendant OLS assembled four of its employees, Christopher Simmons (Manager of Investor Relations), Scott Anderson (Executive Vice President of Residential Loan Servicing), Jonathan Burgess, and Laura Baxton to execute an assignment of Plaintiff's Security Deed between Upland, a bankrupt entity, and the Trustee.

Exhibit "D." Upon information and belief, no such assignment existed prior to March 10, 2010.

38.

On March 15, 2010, Defendant OLS again published, in the Fulton County Daily Report, its notice of sale under power. Exhibit "F."

39.

On or about March 19, 2010, Defendant OLS recorded the assignment of Plaintiff's Security Deed at Deed Book 48876, Page 503, and Fulton County, Georgia Records. Exhibit "D."

40.

On March 22 and March 29, 2010, Defendant OLS again published, in the Fulton County Daily Report, its notice of sale under power. Exhibit "F."

## OPERATIVE FACTS COMMON TO CLASS MEMBERS

41.

During his relationship with Defendant OLS, Plaintiff has been subjected to a variety of pernicious practices and policies that are common to all members of the putative Class. Defendant OLS utilized accounting techniques, loan processing procedures, and administrative processes to defraud Plaintiff and other members of the Class. Defendant OLS committed repeated "errors" in the servicing of

Plaintiff's account which were, under information and belief, intentional actions taken in order to increase the profits of Defendant OLS. Plaintiff's account statements from Defendant OLS, commencing with the statement of May 6, 2005 ("May Statement"), a genuine copy of which is attached hereto as Exhibit "G," demonstrate such errors, including:

(a)  Inaccurate Amortization. Although Plaintiff had made payments on the Loan for approximately seven (7) years, the May Statement showed a principal balance of $85,463.72, only $936.28 less than the original principal balance when Plaintiff executed the Note in 1998. With one exception, no part of Plaintiff's monthly installments was applied to principal.

(b)  Fictitious Escrow Advances. The May Statement shows an "escrow advance" of $2,633.73, although no escrow account had ever been established with Upland (see the Escrow Waiver executed by Plaintiff on December 7, 1998, a true and correct copy of which is attached hereto as Exhibit "H"), and Plaintiff had paid all of the taxes and insurance on the Home.

(c)  Fictitious "Past Due" Amounts. The May Statement shows a "past due amount" of $815.64, although Plaintiff was current at the time of the transfer of the servicing rights to Defendant OLS.

(d)   <u>False Expenses</u>. The May Statement shows a "Prior Servicer Expense" of $1,802.11 that was never explained to Plaintiff by either Upland or Defendant OLS.

42.

In addition to the errors exemplified in the May Statement, Defendant OLS repeatedly engaged in other wrongful actions, including but not limited to the following:

(a)   <u>Duplicate Insurance Premiums</u>. Property insurance was "force placed" by Defendant OLS when, in fact, Plaintiff had personally maintained proper insurance coverage.

(b)   <u>False Late Charges</u>. Late charges were assessed for virtually every monthly installment, despite Plaintiff's explanation – and proof – that he was current on the Loan.

(c)   <u>Duplicate Payment of Property Taxes</u>. Defendant OLS paid property taxes in August 2006, when Plaintiff was not delinquent and had no escrow established with Defendant OLS, and even though he later paid the taxes because he did not know that Defendant OLS had improperly paid such taxes. Plaintiff did not receive a refund of the double payment, and does not know whether the Tax Commissioner refunded such payment to Defendant OLS.

(d)    <u>Fictitious Legal/Collection Expenses</u>. Defendant OLS assessed "legal/collection expenses" when, to Plaintiff's best knowledge and belief, Defendant OLS had not incurred any "legal/collection" expenses with respect to Plaintiff's mortgage loan account.

43.

In response to Plaintiff's subsequent inquiries and complaints, both by telephone and in writing, Defendant OLS forwarded to Plaintiff "payment histories" which demonstrate:

(a)    Fictional escrow advances; and

(b)    Improper application of interest charges

44.

The foregoing errors and wrongful actions, as described herein, resulted in Defendant OLS's false reports of Plaintiff's alleged default to third parties. Such reports were defamatory and directly concerned Plaintiff's personal financial condition.

## CLASS ACTION ALLEGATIONS

45.

Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23. The Class, as proposed by Plaintiff, consists of all persons:

(a) Who are the owners of real property located in the State of Georgia and securing a mortgage loan serviced by Defendant OLS; and

(b) Who incurred or were assessed any charges not authorized by their loan terms, and which have not subsequently been canceled or forgiven, including, but not limited to, late fees that have not been canceled or forgiven or bankruptcy or collection fees that were not properly charged; or

(c) Who were subject to improper interest calculations, or misapplication of payments to interest rather than principal; or

(c) Who had hazard insurance improperly force-placed on their property, the premiums for such insurance having not been subsequently reversed;

(d) Who had mortgage loans serviced by Defendant OLS which were either in default or were treated as being in default by Defendant OLS;

(e) Who had one or more foreclosure notices published regarding their

homes by Defendant OLS, or where Defendant OLS made any other publication of alleged default to third parties; and

(f) Whose homes were not foreclosed or attempted foreclosures were later withdrawn.

Excluded from the Class is Defendant OLS and any of their corporate parents, subsidiaries, affiliates, partners, officers, directors, predecessors, or successors; or any entity which any Defendant or other excluded entity has a controlling interest; or any judge or judicial official assigned to this matter and his or her immediate family; and the legal representatives, successors or assigns of any such excluded persons or entities.

46.

Attempted foreclosure is a tort action unique to the State of Georgia, and as such, the Class is limited to those persons who own residential real property in Georgia and whose property secures a mortgage loan serviced by Defendant OLS. The tort of wrongful foreclosure arises out of Georgia case law, applies only to real property in Georgia, and, therefore Defendants' tort can only be remediated through the application of Georgia law. The number of members of the putative Class in Georgia is substantial. Defendant OLS claims that it services in excess of five (5) million dollars' worth of mortgages in the State of Georgia.

47.

Prior to certification of a class, this Court must find that: "The class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are potentially hundreds of persons within the putative class. This group is so large that each person cannot practically represent himself or herself, either by joinder in one action or in separate actions.

48.

Prior to certification, this Court must find that: "There are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Certain aspects of M.D.L. 1604, described below, are binding legal authority in this action. These questions of law apply to the claims of all members of the putative Class. Moreover, the wrongful actions of Defendants, described herein, were taken pursuant to standardized practices, procedures, and policies.

49.

Prior to certification, this Court must find that: "The claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The members of the Class, as defined above, assert essentially the same claims; therefore, the claims of the Plaintiff are typical of the claims of the proposed Class. Defendant OLS's schemes for the imposition of fraudulent charges

and expenses have been carried out by means of a standardized, centrally-controlled set of practices, procedures, and policies, and such schemes are executed through the uses of form documents, form notices, and uniform accounting protocols, including proprietary (albeit deeply flawed) mortgage servicing software.

50.

Federal Rule of Civil Procedure 23(a)(4) requires that: "The representative parties will fairly and adequately protect the interests of the class." Plaintiff and his counsel will fairly and adequately protect all the claims of the Class members. No conflicts of interests have appeared, or are likely to appear, among the Class members at any level. Plaintiff will fairly and adequately represent the interests of all members of the proposed Class because he seeks relief on behalf of the Class as a whole and has no interests antagonistic to other members of the Class. Plaintiff is also represented by counsel who, collectively, have experience in unfair lending claims, loan servicing, consumer fraud, and class action litigation. Finally, Defendant OLS acted and will act on grounds generally applicable to the Class in regard to the servicing of home loans in Georgia, thereby making appropriate final injunctive relief with respect to the Class as a whole.

51.

Federal Rule of Civil Procedure 23 (b)(1)(A) favors the certification of a class when the prosecution of separate actions by or against individual members of the class would create a risk of "[i]nconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ...." If independent actions are brought by different Class members, varying interpretations of the relevant documents and the applicable statutes, unequal results, and inconsistent interpretations of such documents and statutes may result.

52.

Federal Rule of Civil Procedure 23 (b)(1)(B) favors the certification of a class when the prosecution of separate actions by or against individual members of the class would create a risk of "[a]djudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ...." The prosecution of numerous separate actions against Defendants, including numerous *pro se* actions, both for damages and as foreclosure injunction actions, could impair or impede the ability of other customers to protect their interests.

53.

Federal Rule of Civil Procedure 23 (b)(3) provides that as a precondition for certification of a class: "The court [must find] that the questions of law or fact common to the members of the class predominate  over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The matters pertinent to the findings include:  "[t]he interest in the members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). In the case at bar, the interests of individual members of the Class in controlling the prosecution of separate actions are less significant than the need to enforce broadly remedial measures against the practices of Defendant OLS.

54.

Federal Rule of Civil Procedure 23 (b)(3) further provides that as a precondition for certification of a class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The matters pertinent to the findings include "[t]he extent and nature of any litigation

concerning the controversy already commenced by or against members of the class

….” Fed. R. Civ. P. 23(b)(3)(B). As set forth below, there have been numerous

pending federal actions against Defendants. Upon information and belief, there are

numerous, similar actions pending in the Superior Courts of Georgia. Many of

such actions have been filed *pro se*, and the homeowners-plaintiffs would benefit

from the proposed class action.

55.

At times relevant herein, at least nineteen (19) actions against Defendant

OLS were pending in the United States District Courts in Georgia.  As reflected in

the PACER system, the following actions are pending: *Mahmoud Abdul-Rauf v.*

*The Bank of New York Melton, Ocwen Loan Servicing, LLC, McCalla Raymer,*

*LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division),

Civil Action File No.: 1:12-CV-01071-JEC, (Carnes, D.J.) (pro se); *Charlotte*

*Abdullah v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Middle

District of Georgia (Macon Division), Civil Action File No.:  5:12-CV-00369-

CAR (Royal, D.J.) (pro se); *Angela Clyde v. Wells Fargo Bank, N.A., Ocwen*

*Financial Corporation, Scott B. Kuperberg,* U.S. District Court for the Northern

District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-03608-

CAP-AJB (Pannell, D.J.) (pro se); *Lisa DeSouza v. Federal Home Mortgage Corp.*

*d/b/a also known as Freddie Mae, J.P. Morgan Chase Bank, N.A., Ocwen Loan Servicing, LLC,* U.S. District Court for the Southern District of Georgia (Augusta Division), Civil Action File No.: 1:10-CV-00130-JRH-WLB (Hall, D.J.) (pro se); *Stevie Dorsey v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:10-CV-03330-AT (Totenberg, D.J.); *Lena Felix and Meshack Felix v. Federal Housing Finance Agency, Ocwen Loan Servicing, Federal Home Loan Mortgage Corporation,* U.S. District Court Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00934-CAP (Pannell, D.J.) (pro se); *Ronald Gaylord v. Ocwen Loan Servicing, LLC, Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., Central Loan Administration & Reporting, FSB,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 2:12-CV-00087-WCO (O'Kelley, D.J.) (pro se); *Melody Gold and Michael J. Gold v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-03056-JEC-LTW (Carnes, D.J.); *Tyrone D. Gorham v. Wells Fargo Bank, N.A., Inc., ABFC 2004-OPT5 Trust, Ocwen Loan Servicing, LLP, Mortgage Electronic Registration Systems, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00377-TCB-LTW (Batten,

D.J.) (pro se); *Clara Y. Grubbs and Celeste Grubbs v. HSBC Bank USA, N.A., Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00457-AT, (Totenberg, D.J.) (pro se); *Carline Rose Joseph v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-04176-CC (Cooper, D.J.) (pro se); *Johnny L. Lewis v. U.S. Bank National Association, Ocwen Loan Servicing, LLC, Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-04600-AT-JFK (Totenberg, D.J.) (pro se); *Moses Matamoros v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-02789-SCJ (Jones, D.J.) (pro se); *Shakoor Mintu v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-02917-TCB (Batten, D.J.) (pro se); *Michael L. Morgan v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:10-CV-03555-AT (Totenberg,

D.J.) (pro se); *Lina Rodriguez v. Ocwen Loan Servicing, LLC,* U.S. District Court for the Northern District of Georgia (Atlanta Division) Civil Action File No.: 1:112-CV-01463-CAP (Pannell, D.J.); *Dianne Staten v. Litton Loan Servicing, LP, John Doe Corporation,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:11-CV-03382-WBH (Hunt, D.J.) (pro se); *Jennifer Toussaint v. Ace Homes, LLC, Home America Mortgage, Inc., Ocwen Loan Servicing, LLC, Federal Home Loan Mortgage Corporation,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-01700-CAP (Pannell, D.J.); *Anne Elizabeth Wright v. Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., Bank of America, N.A., Weissman, Nowack, Curry & Wilco, P.C.,* U.S. District Court for the Northern District of Georgia (Atlanta Division), Civil Action File No.: 1:12-CV-00903-SCJ (Jones, D.J.) (pro se).

56.

Federal Rule of Civil Procedure 23 (b)(3) provides that as a precondition for certification of a class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action  is superior to other available methods for the fair and efficient adjudication of the controversy." The matters

pertinent to the findings include "[t]he desirability or undesirability of concentrating the litigation of the claims in the particular forum …." Fed. R. Civ. P. 23(b)(3)(C). Fulton County, Georgia is the location of certain headquarters offices of Defendant OLS where information necessary for the correction of the mortgage loan accounts of Class members and for the calculation of the damages suffered by the Class members is available. Therefore, this Court is a desirable forum for the concentration of the litigation of the Class claims.

57.

Federal Rule of Civil Procedure 23 (b)(3) provides that as a precondition for certification of a class: "The court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and  that a class action is superior to other available methods  for  the fair  and  efficient adjudication of the controversy." The matters pertinent to the findings include "[t]he likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). A class action is appropriate here because the identity of the Class members is readily available in the records of Defendant OLS together with the data needed to make corrections to its mortgage loan accounts and to make calculations of damages. Notification will be easier than in other class

actions because the addresses of many Class members are known by Defendant OLS by reason of the nature of Defendant OLS's business.

58.

The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

59.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRIOR JUDICIAL TREATMENT OF DEFENDANTS IMPROPER AND FRAUDULENT PRACTICES

60.

In one of the earliest judicial assessments of Defendant OLS's behavior, *Guzman v Ocwen*, No. 03-61011-2, in the state court of Nueces County, Texas (Corpus Christi), in 2005, sworn testimony at such trial by a former employee in Defendant OLS's collections and loan resolution departments from 1996 until 2003, indicated that: (i) Defendant OLS intentionally foreclosed on homes with substantial equity even when the payment histories did not justify the foreclosures, in order to realize the value of the equity; (ii) Defendant OLS provided financial incentives, including cash "bumps" of $200.00 to $500.00, to employees who were able to force foreclosure on homes with substantial equity; (iii) Defendant OLS

fabricated the amount of attorneys' fees and interest and added such amounts to the balance of the mortgage loans; (iv) Defendant OLS employees used profane and threatening language to intimidate customers; (v) Customer checks were routinely held from deposit, in order to cause late fees to accrue; (vi) Payoff figures were not provided to customers in order to discourage refinancing; (vii) Defendant OLS employees altered and forged mortgage loan documents; and (viii) Defendant OLS foreclosed on homes that were not properly subject to foreclosure. The jury returned a verdict of more than $3,000,000.00 against Defendant OLS.

61.

In *Davis v. Ocwen*, filed in Texas' 212th Judicial District (Galveston), a home equity loan borrower was, on November 29, 2005, awarded $11,500,000.00 by the jury on a fraud claim against Defendant OLS.   The jury awarded $10,000,000.00 in actual damages and approximately $1,500,000.00 for mental anguish and economic damages. The jury found that Defendant OLS made fraudulent, deceptive, and misleading representations after the plaintiff missed a payment while hospitalized in 2003. On January 17, 2006, the trial judge reduced the judgment to $1,800,000.00. The evidence at the trial was that Defendant OLS falsely classified timely payments as "late" and then, improperly, commenced foreclosure proceedings. On appeal, the Court granted the parties' Agreed Motion

to Dismiss the Appeal and Remand to the Trial Court for entry of an agreed final judgment. Similarly, in a Texas bankruptcy case, the judge censured Defendant OLS after it attempted to pass the cost of a $1,000.00 sanction imposed on Defendant OLS onto the customer that it mistreated. The judge found: "Ocwen's course of conduct in this proceeding bordered on the outrageous." Defendant OLS was fined an additional $27,500.00.

62.

On January 12, 2011, the United States District Court for the Northern District of Illinois, Eastern Division, entered its Order approving the settlement of sixteen (16) class actions and numerous individual actions, in Multi-District Litigation No. 1604, styled *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*. M.D.L. 1604 was composed of sub-classes of actions from jurisdictions throughout the United States, including Arizona, California, Minnesota, New Mexico, Pennsylvania, Texas, Washington State, Illinois, and Indiana. *See Third Amended Consolidated Class Action Complaint*. Upon information and belief, at the time of M.D.L. 1604, Defendant OLS was defending more than 330 civil actions, throughout the United States, challenging its servicing practices.  After six years of litigation, and while continuing to deny liability, Defendant OLS settled M.D.L.1604 by, *inter alia*, the payment of $7,000,000.00 cash, certain non-cash

consideration, and the commitment to certain remedial measures. The M.D.L. did not seek to correct the inaccurate mortgage loan accounts of the Plaintiff or any other Class members. Plaintiff received notice of M.D.L. 1604, and was either a Full Participant or Limited Participant in the settlement fund of M.D.L. 1604, but did not, in fact, seek to participate in the settlement fund.

63.

Defendant OLS argued in M.D.L. 1604 that the Home Owners Loan Act, 12 U.S.C. §§ 1461 et seq. ("HOLA"), and HOLA regulations promulgated by the Office of Thrift Supervision, particularly 12 C.F.R. § 560.2, preempted certain state law claims. The district court in M.D.L. 1604 held that two dozen state-law claims that arose from a disregard of loan terms, including claims predicated on the unfair business practices statutes of a number of states, as well as common-law contract and fraud claims, were not preempted by § 560.2. The Seventh Circuit affirmed. *In re:  Ocwen Loan Servicing, LLC Mortgage Servicing Litigation,* 491 F.3d 638 (7th Cir. 2007).  Defendant OLS is bound by this holding in the present litigation.

64.

In March, 2011, the Federal Trade Commission opened a broad investigation into the operations and foreclosure practices of Defendant OLS. The FTC

requested documents and information concerning Defendant OLS's servicing activities. Defendant OLS has acknowledged the FTC investigation in a filing with the Securities and Exchange Commission. This investigation is ongoing.

65.

On November 7, 2011, Defendant OLS received a civil investigatory demand from the Massachusetts Attorney General, requesting documents and information regarding foreclosures executed in that state. This investigation is ongoing.

66.

By instrument dated September 1, 2011, the State of New York State Banking Department entered into an Agreement on Mortgage Servicing Practices with Ocwen Financial Corporation, and others, wherein the parties agreed to adhere to the proper servicing practices outlined in the Agreement. On January 18, 2012, Ocwen Financial Corporation received a subpoena from the New York Department of Financial Services, requesting documents regarding Ocwen Financial Corporation's policies, procedures, and practices regarding "force-placed" insurance. That investigation is ongoing.

**DEFENDANT OLS'S CONTINUATION OF IMPROPER PRACTICES
AFTER JUNE 10, 2010—THE FINAL DATE OF CONDUCT GOVERNED
BY M.D.L. 1604**

67.

Upon information and belief, from and after June 10, 2010, Defendant OLS falsely charged Plaintiff's mortgage account for late charges.

68.

Upon information and belief, from and after June 10, 2010, Defendant OLS falsely charged Plaintiff's mortgage account for "force-placed" homeowner's insurance.

69.

Upon information and belief, from and after June 10, 2010, Defendant OLS falsely charged Plaintiff's mortgage account for legal and other collection expenses.

70.

Pursuant to the settlement terms of M.D.L. 1604, Defendant OLS agreed, for a three (3) year period, to abide by certain "best practices" in mortgage servicing, to implement certain "practice changes," to appoint an ombudsman to represent the interests of its customers, and to apply all customer payments promptly and otherwise in a proper manner. Upon information and belief, notwithstanding such

commitments to the Court in M.D.L. 1604, Defendant OLS has continued to pursue a business strategy of predation and victimization of its customers with the fraudulent practices described herein; Defendant OLS profits from false late fees, force-placed insurance, and other fictitious expenses and, for this reason, has, upon information and belief, continued to implement policies of charging for such fees when customers are not, in fact, late, or have not, in fact, failed to provide hazard insurance, and have not, in fact, failed to make other payments required by the terms of such customers' mortgage loan documents.

71.

Prior to June 10, 2010, and thereafter, Defendant OLS misstated and intentionally miscalculated the amount of customers' obligation to make payments of principal and interest under the terms of such customers' mortgage documents.

72.

Prior to June 10, 2010, and thereafter, Defendant OLS misstated and intentionally miscalculated the amount of customers' obligation to make payments of property taxes and hazard insurance payable from customers' escrow accounts and otherwise.

73.

By reason of the aforesaid continuing misstatements and miscalculations, the mortgage account balances maintained by Defendant OLS for Plaintiff and other customers are inaccurate, incorrect, and false.

74.

Notwithstanding the inaccuracy, incorrectness, and falsity of Plaintiff's mortgage account balance, Defendant OLS has continued, as recently as August 29, 2012, to threaten Plaintiff with foreclosure on the basis of such inaccurate, incorrect, and false information.

## COUNT ONE
### (Wrongful Attempted Foreclosure)

75.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 80 above, as if fully set forth verbatim in this Count Two.

76.

Under Georgia law, "[i]n order to maintain a claim for an attempted wrongful foreclosure, a plaintiff must show that a creditor (1) knowingly and intentionally published 'untrue and derogatory information concerning the debtor's financial condition,' and that (2) 'damages were sustained as a direct result of this publication.' *Aetna Fin. Co. v. Culpepper,* 320 S.E.2d 228, 232 (Ga. Ct. App.

1984)." *Hauf v. HomEq Servicing Corp.*, No. 4:05-CV-109-CDL, 2007 U.S. Dist. LEXIS 9439, at \*17-21 (M.D. Ga. Feb. 9, 2007).

77.

From December 2009 forward, Defendant OLS knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was behind in payments or in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment. Similar publications were made, upon information and belief, with respect to other members of the putative Class.

78.

On March 8, 2010, the date of the first publication for notice of sale under power, Defendant OLS did not possess a valid assignment in compliance with Georgia's Statute of Frauds giving the Trustee, and Defendant OLS, the authority to foreclose.

79.

An assignment of a security deed is an instrument that transfers an interest in land. Georgia Statute of Frauds, O.C.G.A. § 13-5-30(4), requires any instrument conveying any interest in, or "concerning" lands, to be in writing. This Court has previously held that "[o]ral and unwritten agreements regarding any commitment

to lend money or any interests in lands—to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings— are unenforceable under the Georgia Statute of Frauds. O.C.G.A. § 13-5-30; *Merceron v. Bank of N.Y. Mellon Trust, N.A.*, No. 1:11-CV-2831-WSD, 2012 U.S. Dist. LEXIS 116544 at *12 n.5 (N.D. Ga. Aug. 7, 2012).

80.

All assignments of security deeds must comply with O.C.G.A. §§ 44-14-33 and 44-14-61. *Kabir v. Statebridge Co., LLC,* No. 1:11-CV-2747-WSD, 2011 U.S. Dist. LEXIS 109778 at *13-14 (N.D. Ga., September 21, 2011). Assignments must be (1) in writing (2) signed by the grantor (3) witnessed, and under certain conditions, (4) recorded. O.C.G.A. §§ 44-14-33 and 44-14-61. In order for the Court to find that the Trustee was the assignee of the security deed, with the authority to foreclose on the property at the time of the publication, it must find that the assignment was in writing, signed by the grantee or last transferee, and witnessed by two people, one of whom is an officer authorized to attest registrable instruments. *See Davis v. Bank of Am., N.A.,* No. 1:11-cv-04552-JEC-RGV, 2012 U.S. Dist. LEXIS 128287 at *20-21 (N.D. Ga. May 17, 2012).

81.

Upon information and belief, an Assignment giving Defendant OLS and

the Trustee power to foreclose on the Home did not exist in compliance with Georgia's Statute of Frauds and O.C.G.A. §§ 44-14-33 and 44-14-61, on the date of Defendant OLS's first publication of notice of sale under power.

82.

Thus, Defendants OLS's attempted foreclosure, including publication of such, was wrongful because Plaintiff was not in default and the Assignment giving Defendant OLS the power to foreclose did not exist in writing in compliance with Georgia's Statute of Frauds and O.C.G.A. §§ 44-14-33 and 44-14-61. Because Defendant OLS, necessarily, had no power to foreclose on the Home, its publication, and attempted foreclosure, was wrongful.

83.

Plaintiff and other members of the putative Class have been damaged, in an amount to be shown at the trial of this matter, as a result of Defendant OLS's publication of untrue and derogatory information.

## COUNT TWO
### (False Light Invasion of Privacy)

84.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 89 above as if fully set forth verbatim in this Count Three.

85.

From December 2009 forward, Defendant OLS knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment. Upon information and belief, similar publications were made with respect to other members of the putative Class.

86.

The written advertisements of Defendant OLS's notice of its intent to exercise its alleged power of sale, stating that Plaintiff was in default under the Loan, placed Plaintiff in a false light, all of which caused injury and damages to Plaintiff, in an amount to be shown at the trial of this matter, as determined by the enlightened conscience of a fair and impartial jury.

**COUNT THREE**
**(Breach of Contract)**
**(O.C.G.A. § 13-6-1 *et seq*.)**

87.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 92 above, as if fully set forth verbatim in this Count Four.

88.

Under Georgia law, "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement.… The implied covenant modifies and becomes a part of the provisions of the contract …." *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.,* 662 S.E.2d 745, 748 (Ga. Ct. App. 2008). [Citations omitted.]

89.

Defendant OLS's arbitrary and capricious violation of the terms of the Loan and Note, and the resulting attempted foreclosure of the Home, constituted a breach by Defendant OLS.

90.

As a result of such breach, Plaintiffs have been damaged in an amount to be shown at the trial of this matter.

**COUNT FOUR**
**(Punitive Damages)**

91.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 96 above, as if fully set forth verbatim in this Count Five.

92.

Defendant OLS is one of the largest residential mortgage holders in the United States, servicing and holding residential mortgages on homes throughout Georgia and the United States. Yet, the actions of Defendant OLS toward Plaintiff, and other members of the putative Class, exhibit incompetence, bad faith, gross negligence, and an unwillingness or inability to conform to the requirements of the laws of the State of Georgia and the United States.

93.

Defendant OLS should be held to a standard of honesty and compliance with Georgia law in its business affairs and dealings with its borrowers, including Plaintiff and the members of the putative Class.

94.

Defendant OLS's misconduct, as described in this Complaint, was taken with reckless, conscious, and intentional disregard of Plaintiff's rights under Georgia law, and deprived Plaintiff of his personal dignity.  Upon information and belief, similar misconduct was directed toward other members of the putative Class.

95.

The misconduct of Defendant OLS entitles Plaintiff and the putative Class to an award of punitive damages in an amount to be established by the enlightened conscience of a fair and impartial jury, sufficient to punish Defendant OLS and to discourage and deter such systemic misconduct by Defendant OLS in the future.

96.

The punitive damages to be awarded to the Plaintiff should be computed in light of the worldly circumstances of Defendant OLS and in light of the commitments made by Defendant OLS in the settlement of M.D.L. 1604.

**COUNT FIVE**
**(Expenses of Litigation)**

97.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 102 above, as if fully set forth verbatim in this Count Six.

98.

Defendant OLS has acted in bad faith by, *inter alia*, attempting wrongfully to foreclose on the Home. Defendant OLS has been stubbornly litigious, has committed intentional torts, and has caused Plaintiff and the members of the putative Class unnecessary trouble and expense.

99.

As a result of such conduct, Plaintiff and the other members of the putative Class are entitled to recover reasonable attorneys' fees and other expenses of litigation from Defendant OLS.

## COUNT SIX
### (Preliminary and Permanent Injunctive Relief)

100.

Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 through 105 above as if fully set forth verbatim in this Count Seven.

101.

Plaintiff respectfully requests that this Court exercise its equitable powers, both preliminarily and permanently, to issue:

(a)   A mandatory injunction requiring correction of the Plaintiff's mortgage loan account and the accounts of all other members of the putative Class;

(b)   A prohibitory injunction preventing any foreclosure or attempted foreclosure with respect to the Loan or the Home or any other property secured by a mortgage serviced by Defendant OLS until Defendant OLS's mortgage loan accounts are corrected;

(c)     A prospective injunction, enforced by the contempt powers of this

        Court, preventing Defendant OLS from engaging in the forms of

        predatory mortgage servicing described in this Second Amended and

        Restated Complaint.

102.

Pursuant to Federal Rule of Civil Procedure 65(a)(2), Plaintiff moves that the determination of all equitable issues in this matter be advanced until the time of hearing on the Plaintiff's Motion for Preliminary Injunction.

103.

Plaintiff shows to the Court that he is likely to succeed on the merits of the issues raised in his Second Amended and Restated Complaint; that Plaintiff will suffer irreparable harm unless the equitable powers of this Court are exercised; that the harm to be suffered by the Plaintiff's outweighs any burden to be imposed upon Defendant OLS; and that the grant of the injunctive relief requested is in the public interest. Pursuant to the express settlement terms of M.D.L. 1604, the Plaintiff "preserve[d] [his] ability to defend against foreclosure actions, a right all Settlement Class Members preserve[d]." *Class Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Final Approval of Settlement of Class Claims* at 3. Plaintiff's further show that the resolution of M.D.L. 1604

did not require that the mortgage loan accounts of Defendant OLS be corrected and otherwise rationalized, in order to expunge the fictitious and false entries made by Defendant OLS or its predecessors in interest. Finally, Plaintiff shows that he is not required to tender any amount prior to the issuance of this Court's injunction, because Defendant OLS is threatening to commence a void foreclosure action.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a)     That the Class described herein be certified pursuant to Federal Rule of Civil Procedure 23, and that this action proceed as a Class Action;

(b)     That Plaintiffs have judgment against Defendants for damages as shown by the evidence upon the trial of this case pursuant to Counts One, Two, Three, Four, Five and Six;

(c)     That Plaintiffs have judgment against Defendants for his expenses of litigation, including reasonable attorneys' fees, pursuant to Count Six;

(d)     That Plaintiffs have judgment against Defendants for punitive damages, pursuant to Count Five;

(e)     That Plaintiffs be granted the injunctive relief sought in Count Seven, including, but not limited to, a preliminary and permanent injunction of any further foreclosures in Georgia by Defendant OLS;

(f)     That all issues triable by a jury be tried before a jury;

(g)     That all costs of this action be cast against Defendants; and

(h)     That the Plaintiff's be granted such other and further relief as this Court may deem just and proper.

This 3rd day of December, 2013.

Respectfully submitted,

THE FEDERAL FIRM, LLC

**s/Jeannine M. Lowery**
R. Keegan Federal, Jr.
Georgia Bar Number: 257200
R. O. Lerer
Georgia Bar Number: 446962
Jeannine M. Lowery
Georgia bar Number: 622698

*Attorneys for Plaintiff*

Two Ravinia Drive
Suite 1776
Atlanta, Georgia  30346
Tel.: 678-443-4044
Fax: 678-443-4081
keegan@fedfirm.com
ray@fedfirm.com
jeannine@fedfirm.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, | ) | |
| | ) | |
| On Behalf of Himself and All Other | ) | |
| Persons in the State of Georgia Who are | ) | |
| Similarly Situated, | ) | |
| | ) | Civil Action File No. |
| Plaintiff's, | ) | 1:12-3861-WSD-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## CERTIFICATION OF FONT SIZE
_____

Counsel for Plaintiff certifies that this document has been prepared in a

Times New Roman, 14 point font and otherwise complies with Local Rule 5.1C.

This 3rd day of December, 2013.

Respectfully submitted,

THE FEDERAL FIRM, LLC

**<u>s/Jeannine M. Lowery</u>**
R. Keegan Federal, Jr.
Georgia Bar Number: 257200

R. O. Lerer
Georgia Bar Number: 446962
Jeannine M. Lowery
Georgia bar Number: 622698

*Attorneys for Plaintiff*

Two Ravinia Drive
Suite 1776
Atlanta, Georgia  30346
Tel.: 678-443-4044
Fax: 678-443-4081
keegan@fedfirm.com
ray@fedfirm.com
jeannine@fedfirm.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JEFFREY PHILLIPS,              )
                                  )
On Behalf of Himself and All Other   )
Persons in the State of Georgia Who are )
Similarly Situated,          )
                                  )   Civil Action File No.
      Plaintiff's,           )   1:12-3861-WSD-JSA
                                  )
vs.                       )
                                  )
OCWEN LOAN SERVICING, LLC,   )
                                  )
      Defendant.          )

_____

## CERTIFICATE OF SERVICE

_____

I hereby certify that on this day I served the foregoing *"Second Amended and Restated Complaint"* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Fredrick S. Levin, Esq. *(Admitted Pro Hac Vice)*
Richard E. Gottlieb, Esq.
Buckley Sandler LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401

Linda A. Klein, Esq.
William A. McBride, Jr., Esq.
Sarah-Nell Walsh, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, GA 30326

Laura S. Morris, Esq.
Weissman Nowack Curry & Wilco
3500 Lenox Road
One Alliance Center, 4th Floor
Atlanta, GA 30326

Dawn N. Williams
Dykema Gossett PLLC
Suite 2300
10 South Wacker
Chicago, IL 60606

Brett J. Natarelli, Esq. *(Admitted Pro Hac Vice)*
Buckley Sandler, LLP-IL
123 N. Wacker Drive
Chicago, IL 60606

This 3rd day of December, 2013.

Respectfully submitted,

THE FEDERAL FIRM, LLC


**s/Jeannine M. Lowery**
R. Keegan Federal, Jr.
Georgia Bar Number: 257200
R. O. Lerer
Georgia Bar Number: 446962
Jeannine M. Lowery
Georgia bar Number: 622698

*Attorneys for Plaintiff*

Two Ravinia Drive
Suite 1776
Atlanta, Georgia  30346
Tel.: 678-443-4044
Fax: 678-443-4081
keegan@fedfirm.com
ray@fedfirm.com
jeannine@fedfirm.com