IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, On Behalf of Himself and All Other Persons in the State of Georgia who are Similarly Situated, | : : : : | CIVIL ACTION NO. 1:12-CV-3861-WSD-JSA |
| Plaintiff, | : : | |
| v. | : : | |
| OCWEN LOAN SERVICING, LLC, | : : | **NON-FINAL REPORT AND RECOMMENDATION ON A** |
| Defendant. | : | **MOTION TO DISMISS** |

Plaintiff Jeffrey Phillips filed the original Complaint initiating this action in the Superior Court of Fulton County, Georgia, on November 16, 2010. *See* Notice of Removal [1] at ¶ 1. On November 2, 2012, Defendant Ocwen Loan Servicing, LLC ("OLS") removed the action to this Court with the consent of the other Defendants. *See* Notice of Removal at ¶ 25. The action is now before the Court on the Motion to Dismiss Second Amended and Restated Complaint [78] ("Motion to Dismiss") filed by Defendant OLS. For the reasons discussed below, **IT IS RECOMMENDED** that the Motion to Dismiss [78] be **GRANTED IN PART, DENIED IN PART**.

The undersigned **RECOMMENDS** that the Motion to Dismiss [78] be **GRANTED** as to those portions of Plaintiff's claims of wrongful attempted foreclosure and false light invasion of privacy that are based on the Plaintiff's theory

of an invalid assignment. The Court finds that, as a matter of law, Georgia does not recognize a claim of wrongful attempted foreclosure or false light invasion of privacy based on an allegedly improper assignment of a security deed. The Court concludes, however, that Plaintiff has alleged sufficient facts to state a plausible claim against OLS for breach of contract. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [78] be **DENIED** as to Plaintiff's breach of contract claim in Count Three of the Second Amended Complaint.

## I.     BACKGROUND

On November 16, 2010, Plaintiff filed the Complaint initiating this action in the Superior Court of Fulton County, Georgia. *See* Notice of Removal [1] at ¶ 1. In the original Complaint, Plaintiff named OLS as the only Defendant. *See* Compl., attached to Notice of Removal. On October 5, 2012, Plaintiff filed the First Amended and Restated Complaint [4] to bring a putative class action and to add new claims, including a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. In the First Amended and Restated Complaint, Plaintiff again named OLS as a Defendant, and also added claims against additional Defendants Ocwen Financial Corporation ("OFC") (the parent company of OLS) and Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for the Registered Shareholders of Credit Suisse Seasoned Loan Trust

2

2006-1, Home Equity Pass-Through Certificates, Series 2006-1 (the "Trustee"). Thereafter, on November 2, 2012, Defendant OLS removed the action to this Court with the consent of the other Defendants. *See* Notice of Removal at ¶ 25.

After the Defendants filed Motions to Dismiss [12][13], the Court dismissed all of the Plaintiff's claims against Defendants OFC and the Trustee. *See* Order [51] dated September 10, 2013 ("September 10 Order") at 27-28. The Court also dismissed the majority of the Plaintiff's claims asserted against OLS in the First Amended and Restated Complaint: a claim for fraud and deceit under O.C.G.A. § 51-6-1-2 (Count One); a claim for negligence (Count Two); a claim for mutual departure pursuant to O.C.G.A. § 13-4-4 (Count Three); a claim for equitable accounting (Count Four); a claim for breach of fiduciary duty (Count Five); a federal claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count Six); a claim for promissory estoppel under O.C.G.A. § 13-3-44 (Count Seven); a claim for libel of title to land (Count Nine); and a claim for intentional infliction of emotional distress (Count Eleven). *Id.* at 28. The Court held, however, that two of the Plaintiff's substantive claims asserted against OLS in the First Amended and Restated Complaint may proceed: a claim for wrongful attempted foreclosure (Count Eight); and a claim for false light invasion of privacy (Count Ten). *Id.* The Court further held that Plaintiff's requests for the remedies of punitive damages (Count Twelve), expenses

of litigation (Count Thirteen), and injunctive relief (Count Fourteen), may also proceed. *Id.*

After the Court dismissed most of the claims asserted against OLS in the First Amended and Restated Complaint, Plaintiff filed a Motion for Leave to File Second Amended and Restated Complaint [66] ("Motion to Amend"), which was unopposed by Defendant OLS. Plaintiff requested leave of the Court to file a Second Amended and Restated Complaint for the purpose of repleading his claims against OLS of fraud and deceit, wrongful attempted foreclosure, false light invasion of privacy, punitive damages, the expenses of litigation, and injunctive relief; adding a new claim for breach of contract; and redefining the putative class. *See* Mot. to Amend [66] at 2. The undersigned granted that Motion to Amend in part; it granted Plaintiff leave to file a Second Amended and Restated Complaint, but only to the extent that he sought to replead his claims of wrongful attempted foreclosure and false light invasion of privacy, along with his claims of relief, to add a new claim for breach of contract, and to redefine the putative class. Order [68] dated November 25, 2013. The Court held that Plaintiff was not granted leave to amend his complaint to replead his claim against OLS for fraud and deceit, as that claim had been dismissed with prejudice by the September 10 Order. *See id.* at 6-7.

4

On December 3, 2013, Plaintiff filed his Second Amended and Restated Complaint [69] ("Second Amended Complaint"), and the allegations set forth below are taken from that Second Amended Complaint. Plaintiff alleges that, on or about December 7, 1998, he obtained and executed a loan (the "Loan") from HomeAmerican Credit, Inc. d/b/a Upland Mortgage ("Upland") in the amount of $86,400.00, which was secured by a Deed to Secure Debt (the "Security Deed") on the Plaintiff's residence located at 728 Kennolia Drive, Atlanta, Georgia 30310 (the "Property"). Sec. Am. Comp. [69] at ¶¶ 1, 16, 18. Plaintiff executed both a promissory note ("Note") as well as the Security Deed at the closing of the Loan. *Id.* at ¶¶ 16-19, Ex. A and B. The Security Deed is recorded at Deed Book 25899, Page 259, in Fulton County, Georgia. *Id.* at ¶ 18.

Plaintiff alleges that in May of 2005, he learned that Upland had filed bankruptcy and was no longer an active corporation. *Id.* at ¶ 23. On or about May 5, 2005, Upland executed a limited Power of Attorney ("POA") appointing OLS as its attorney-in-fact for several matters, including, but not limited to, note endorsements and assignment of mortgages. *Id.* at ¶ 24, Ex. C. On or about April 20, 2005, Plaintiff received a letter from Upland stating that the new servicer of the Loan would be OLS. *Id.* at ¶ 21. On May 11, 2005, Plaintiff received a letter from OLS introducing itself as the new servicer for the Loan. *Id.* at ¶ 22. Plaintiff received an account statement

5

from OLS dated May 6, 2005 (the "May 2005 Statement"), and that May 2005 Statement, which is attached as Exhibit G to Plaintiff's Second Amended Complaint, indicates that OLS was the servicer of the Plaintiff's Loan. *Id.* at ¶ 41, Ex. G.

Plaintiff alleges that, during the time that Upland serviced the Loan, he experienced "multiple problems" with Upland but "did not realize the full extent of his problems with Upland's servicing of the Loan until after Defendant OLS became the loan servicer." *Id.* at ¶ 26. According to Plaintiff, at the time he executed the Note, he understood that the Loan was to be amortized over thirty years, with interest calculated on a monthly basis. *Id.* at ¶ 27. He alleges that, without obtaining his consent or notifying him, Upland converted the Loan to a "Simple Interest Loan" that accrued interest from the last date that interest was paid through the date the next payment was received. *Id.* at ¶¶ 27, 29. This amortization technique, which is known as a "daily interest rate" computation, reduces the application of the payment to principal unless a payment is received on the exact due date set forth in the Note. *Id.* at ¶ 28. Plaintiff alleges that OLS maintained the "daily interest rate" computation and failed to correct the Upland mortgage account errors after it began servicing the Loan. *Id.* at ¶¶ 30-31. He alleges further that OLS "compounded Upland's errors by committing numerous errors and making numerous false entries" on Plaintiff's Loan account. *Id.* at ¶ 31.

Plaintiff alleges that the May 2005 Statement he received from OLS demonstrates the "errors" on his Loan account. *Id.* at ¶ 41, Ex. G. The May 2005 Statement showed a principal balance of $85,463.72, only $936.28 less than the original principal balance when Plaintiff executed the Note in 1998. *Id.* at ¶ 41(a), Ex. G. Plaintiff alleges that, "[w]ith one exception, no part of Plaintiff's monthly installments was applied to principal." *Id.* at ¶ 41(a). The May 2005 Statement also shows an "escrow advance" of $2,633.73, although no escrow account had been established with Upland. *Id.* at ¶ 41(b), Ex. G. The May 2005 Statement shows a "past due amount" of $815.64, although Plaintiff was current at the time of the transfer of the servicing rights to OLS. *Id.* at ¶ 41(c), Ex. G. The May 2005 Statement also shows a "Prior Servicer Expense" of $1,802.11 that was never explained to Plaintiff by either Upland or OLS. *Id.* at ¶ 41(d), Ex. G.

The May 2005 Statement further states under the heading "Important Message": "Please note that you have a Simple Interest Loan that accrues interest from the last date that interest was paid through the date your next payment is received." *Id.*, Ex. G.

Plaintiff alleges that OLS also "repeatedly engaged in other wrongful actions," including the assessment of duplicate insurance premiums, false late charges, duplicate payments of property taxes with no refund to Plaintiff of the double

payment, and fictitious legal/collection expenses. *Id.* at ¶ 42. He claims that OLS also sent him his "payment histories" on the Loan, which demonstrated fictional escrow advances and improper application of interest charges. *Id.* at ¶ 43. Plaintiff alleges that, from and after June 10, 2010, OLS falsely charged late charges to his account, falsely charged his account for "force-placed" homeowner's insurance, and falsely charged his account for legal and other collection expenses. *Id.* at ¶¶ 67-69.

Plaintiff further alleges that, both prior to June 10, 2010, and thereafter, OLS intentionally miscalculated the amount of its customers' obligations to make payments of principal and interest under the terms of their loans, and their obligations to make payments of property taxes and hazard insurance. *Id.* at ¶¶ 71-72. He alleges that the mortgage account balances maintained by OLS for both himself and other customers are "inaccurate, incorrect, and false." *Id.* at ¶ 73. He also alleges that OLS has threatened him with foreclosure as recently as August 29, 2012, on the basis of the "inaccurate, incorrect, and false information" on his account. *Id.* at ¶ 74.

On or about March 1, 2010, the law firm of Weissman Nowack Curry & Wilco, P.C., under the direction of OLS, sent Plaintiff a notice of foreclosure sale ("Notice of Foreclosure"), stating that the holder of the Note and the Security Deed, the Trustee, was calling the Note due. *Id.* at ¶ 34; Ex. E. The Notice of Foreclosure identified OLS as the entity with full authority to negotiate, amend, and modify all

8

terms of the mortgage, and advised Plaintiff that he had ten days from the date the Notice was received to pay the entire principal and interested owed or the Property would be sold. *Id.* at ¶ 35, Ex. E. On March 8, 2010, OLS first published in the Fulton County Daily Report a notice of sale under power ("Notice of Sale"), and OLS published the Notice of Sale again on March 15, March 22, and March 29, 2010. *Id.* at ¶¶ 36, 38, 40, Ex. F.

Plaintiff alleges that, by an "instrument stating that it was entered into as of November 30, 2006, but which was not in writing, executed or notarized until March 10, 2010," Upland assigned its interest in the Loan to the Trustee. *Id.* at ¶ 25, Ex. D (the "Assignment"). On or about March 19, 2010, OLS recorded the Assignment of the Security Deed at Deed Book 48876, Page 503, in Fulton County, Georgia records. *Id.* at ¶ 39.

On January 12, 2011, the United States District Court for the Northern District of Illinois entered an Order approving a settlement of sixteen class actions and numerous individual actions involving OLS in Multi-District Litigation No. 1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation* ("MDL 1604"). *Id.* at ¶ 62. Plaintiff alleges that he received notice of the settlement in MDL 1604, and was either a "Full Participant" or "Limited Participant" in the settlement fund of MDL 1604, but he did not actually participate in the settlement fund. *Id.* at ¶ 62. He further

alleges that the final date of the conduct covered by MDL 1604 was June 10, 2010. *Id.* at 35.

Plaintiff has brought claims against OLS on behalf of himself and a purported class made up of owners of real property located in the State of Georgia and secured by a mortgage loan serviced by OLS who, after June 10, 2010: (1) were assessed any charges not authorized by their loan terms, and which have not subsequently been canceled or forgiven; (2) had hazard insurance improperly "force-placed" on their property; (3) had mortgage loans serviced by OLS which were either in default or treated as being in default by OLS; or (4) had one or more foreclosure notices published regarding their homes by OLS or OLS made any other publication of alleged default to third parties; *and* (5) whose homes were not foreclosed or attempted foreclosures were later withdrawn, and who were not affiliated with OLS or a judge or judicial official assigned to the matter. *Id.* at ¶ 45.

## II.    DISCUSSION

### A.    *Standard on a Motion to Dismiss*

Defendant OLS has filed a Motion to Dismiss, arguing that some of the claims asserted against it in the Second Amended Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider

matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

 *Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* FED. R. CIV. P. 8(a)(2)) (other citations omitted).

11

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed

12

by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiff has referred to the Note and Security Deed throughout the Second Amended Complaint, and he attached copies of those documents to the Second Amended Complaint. *See* Sec. Am. Comp. [4], Ex. A and B. Plaintiff also attached copies of the POA, the Assignment from Upland to the Trustee, the Notice of Foreclosure dated March 1, 2010, the Notice of Sale, and the May 2005 Statement. *Id.*, Ex. C-G. Because Plaintiff attached those documents to the Amended Complaint, they are considered part of the Complaint for all purposes. FED. R. CIV. P. 10(c).

B.    *Plaintiff's Claims*

Plaintiff has asserted three substantive claims against Defendant OLS in the Second Amended Complaint. In Count One, he asserts a claim for Wrongful Attempted Foreclosure. Sec. Am. Compl. [69] at ¶¶ 75-83. In Count Two, he asserts a claim for False Light Invasion of Privacy. *Id.* at ¶¶ 84-86. In Count Three, he asserts a claim for breach of contract, under O.C.G.A. §§ 13-6-1 *et seq*. *Id.* at ¶¶ 87-90. In

addition, Plaintiff asserts three counts requesting specific remedies under Georgia law. In Count Four, he requests punitive damages. *Id.* at ¶¶ 91-96. In Count Five, he requests expenses of litigation. *Id.* at ¶¶ 97-99. Finally, in Count Six, he requests both preliminary and permanent injunctive relief. *Id.* at ¶¶ 100-103.

### 1.   Wrongful Attempted Foreclosure

In Count One of the Second Amended Complaint, Plaintiff asserts a claim for Wrongful Attempted Foreclosure. Sec. Am. Comp. [69] at ¶¶ 75-83. Plaintiff alleges that "from December 2009 forward, Defendant OLS knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was behind in payments or in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment." *Id.* at ¶ 77. Plaintiff alleges that, "[o]n March 8, 2010, the date of the first publication for notice of sale under power, Defendant OLS did not possess a valid assignment in compliance with Georgia's Statute of Frauds giving the Trustee, and Defendant OLS, the authority to foreclose." *Id.* at ¶ 78. Plaintiff alleges that similar publications were made with respect to other members of the putative class, and that he and other members of the class were damaged by the Defendant's "publication of untrue and derogatory information." *Id.* at ¶ 83.

14

To state a claim for wrongful attempted foreclosure under Georgia law, a plaintiff must allege sufficient facts to state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that he or she incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)). "Derogatory" is defined as "detracting from the character or standing of something" or, alternatively, "expressive of low opinion" or "disparaging." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed.) 312.

The Court has previously held that Plaintiff alleged sufficient facts in the Amended Complaint to state a plausible claim for wrongful attempted foreclosure against OLS. *See* September 10 Order [51] at 21 ("Plaintiff has alleged sufficient–albeit scant–facts to support a viable claim for wrongful attempted foreclosure."). Thus, it is the law of the case that Plaintiff has stated a plausible claim against OLS for wrongful attempted foreclosure under Georgia law.

Nevertheless, OLS has now moved to dismiss a portion of the Plaintiff's claim of wrongful attempted foreclosure, based on the Plaintiff's allegation in the Second Amended Complaint that, "[o]n March 8, 2010, the date of the first publication for

notice of sale under power, Defendant OLS did not possess a valid assignment in compliance with Georgia's Statute of Frauds giving the Trustee, and Defendant OLS, the authority to foreclose." Sec. Am. Compl. [69] at ¶ 78. Plaintiff alleges that "Defendants [sic] OLS's attempted foreclosure, including publication of such, was wrongful because Plaintiff was not in default and the Assignment giving Defendant OLS the power to foreclose did not exist in writing in compliance with Georgia's Statute of Frauds and O.C.G.A. §§ 44-14-33 and 44-14-61." *Id.* at ¶ 82. Plaintiff further alleges that, "[b]ecause Defendant OLS, necessarily, had no power to foreclose on the Home, its publication, and attempted foreclosure, was wrongful." *Id.*

Defendant OLS argues that this portion of Plaintiff's claim must fail because Georgia law does not recognize any claim of wrongful attempted foreclosure based on an alleged invalid assignment of the Security Deed. Def. Br. [78-1] at 7-8. The undersigned agrees. As discussed above, Georgia law requires a plaintiff asserting a claim of wrongful attempted foreclosure to allege sufficient facts to state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that he or she incurred damages as a direct result of such publication. *Mayrant*, 2011 WL 1897674, at *2. In this case, the Court has previously held that Plaintiff has stated a plausible claim against OLS that it published untrue and

derogatory information about him when it published information that he was in default on the Loan. But Plaintiff has failed to cite to any case supporting his argument that Georgia law also recognizes a claim of attempted wrongful foreclosure based on an alleged invalid assignment of the Security Deed.

In *King v. U.S. Bank Nat. Ass'n*, Civil Action No. 1:13-CV-229-TWT, 2013 WL 4718342 at *3-*4 (N.D. Ga. Sept. 3, 2013), the undersigned rejected a similar argument made by the plaintiffs in that case, and Judge Thrash adopted the recommendation of the undersigned that the plaintiff's claim of attempted wrongful foreclosure be dismissed. In *King*, the undersigned discussed the plaintiffs' theory supporting their claim of attempted wrongful foreclosure as follows:

> Plaintiffs do not base this claim [of wrongful attempted foreclosure] on any alleged false publication of any debt that they owed or any default for which they were supposedly responsible. Rather, Plaintiffs allege solely that Defendants committed this tort by pursuing foreclosure despite not having the right to foreclose. Specifically, the Complaint alleges that Defendants "failed to perfect a security interest in the subject property" because the underlying debt and related Security Deed were "not properly assigned and transferred to Defendants." Ex. A, Pt. 1 [1-1] at 7. The allegedly "defective assignments of the security deed did not convert the servicer" into a lender who had the right to foreclose on Plaintiffs' property. *Id.* "Plaintiffs [also] allege that . . . any assignment of the Security Deed without proper transfer of the obligation that it secures is a legal nullity." *Id.*

> This claim must be dismissed for failure to state a claim. As noted above, the tort of Attempted Wrongful Foreclosure requires Plaintiffs to show that Defendants published untrue and derogatory information concerning the debtor's financial condition. . . .

17

>    Plaintiffs concede that they make no express allegations about any publication, but rather argue that "[a]llegations of false publication are inherent in Plaintiff's complaint wherein . . . [the] complaint indicates that Defendants do not have a perfected security interest in Plaintiffs' property . . ." Pl. Brf. [6-1] at 6. . . .
>
>    None of this satisfies Plaintiffs' obligation to plead facts that plausibly demonstrate that Defendants published untrue and derogatory statements about Plaintiffs' financial condition. Even if the Court were to find publication "inherent" in the Complaint, it remains that Plaintiffs' claim is premised solely on the creditor's alleged inaccurate statements about its own legal right to foreclose. Plaintiffs do not base this claim on any alleged false statements about *Plaintiffs'* financial condition. As a result, the claim fails.
>
>    Second, Plaintiffs' Attempted Wrongful Foreclosure claim appears to be a back-door attempt to do something Georgia law does not permit Plaintiffs to do, that is, challenge the validity of assignments to which they are not parties.
>
>    Plaintiffs generally cannot resist foreclosure by creating a dispute that does not exist between the assignor and assignee of the Security Deed. If there is a dispute between those parties as to the validity of the assignments–which there appears not to be here–then those parties can litigate that question. But Plaintiffs have no interest in how this hypothetical, non-existent dispute would be resolved, and cannot bring a claim for Attempted Wrongful Foreclosure on this basis.

*King*, 2013 WL 4718342 at *3-4 (emphasis in original, some internal quotes and citations omitted); *see also Williams v. US Bank National Association*, Civil Action No. 1:12–CV–3943–TWT, 2013 WL 2285748, *3 (N.D. Ga. May 23, 2013) (debtor could not challenge MERS' prior assignment to U.S. Bank because "as a stranger to the Assignment, Plaintiff lacks standing to challenge it") (internal quotations and citation omitted); *Peterson v. Merscorp Holdings, Inc.*, Civil Action No.

18

1:12–cv–00014–JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept.10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure on the basis of their allegation that the defendant misrepresented itself as the secured creditor on foreclosure notice); *Haldi v. Piedmont Nephrology Assocs.*, 641 S.E.2d 298, 300 (Ga. Ct. App. 2007); *Breus v. McGriff*, 413 S.E.2d 538, 539 (Ga. Ct. App. 1991).

In his response to the Motion to Dismiss, Plaintiff has cited to numerous cases discussing claims of wrongful attempted foreclosure, but he has failed to cite to any case supporting his argument that Georgia law recognizes a claim of attempted wrongful foreclosure based on an alleged invalid assignment of the Security Deed. *See* Pl. Br. at 10-13. Plaintiff argues that the elements of the tort of wrongful foreclosure should be considered by the Court as well, because the "logic demands, and the courts agree, at least implicitly, that wrongful *attempted* foreclosure is based on the tort of wrongful foreclosure. Therefore, the elements of wrongful foreclosure are, in least in part, considered within wrongful attempted foreclosure, much like every 'attempt' concept that exists in the law." *Id.* at 10 (emphasis in original).

Plaintiff's theory is a novel one, but tellingly, he has cited no case that supports his argument that the elements of the tort of wrongful foreclosure should also be applied to claims of wrongful attempted foreclosure. In a claim of wrongful foreclosure, the damage to the plaintiff obviously results from the wrongful

foreclosure sale. But in a claim of wrongful attempted foreclosure, the plaintiff is not damaged from any foreclosure sale because the sale did not occur; instead, the damage to the plaintiff is the result of the publication of "untrue and derogatory information" about his financial condition that occurs during the attempted foreclosure process, and an actual sale is not necessary to sustain the action. As a result, any purported lack of authority to conduct the foreclosure sale is not material to the claim.[1]

Plaintiff has thus failed to state a plausible claim against OLS for wrongful attempted foreclosure under Georgia law based on a theory that the purported Assignment was invalid or that OLS and the Trustee otherwise lacked the authority to foreclose. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [78] be **GRANTED** as to that portion of Plaintiff's claim of wrongful attempted foreclosure in Count One of the Second Amended Complaint.

2.      False Light Invasion of Privacy

In Count Two of the Second Amended Complaint, Plaintiff asserts a claim for False Light Invasion of Privacy. Sec. Am. Comp. [69] at ¶¶ 84-86. He alleges that, "[f]rom December 2009 forward, OLS knowingly and intentionally published, by

---

[1] Furthermore, as Defendant argues in its brief, Georgia law requires only that the foreclosing entity record the security instrument "prior to the time of sale," but there is no requirement that the security instrument be properly recorded before the debtor is served with a notice of foreclosure sale. *See* O.C.G.A. § 44-14-162(b); Def. Br. at 11-12.

means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment." *Id.* at ¶ 85. Plaintiff alleges that these "written advertisements" "placed Plaintiff in a false light, all of which caused injury and damages to the Plaintiff." *Id.* at ¶ 86. Plaintiff also alleges that other members of the putative Class were treated similarly. *Id.* at ¶ 85.

Under Georgia law, a claim based on invasion of privacy can be based on one of four types:

> (1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation for the defendant's advantage, of the plaintiff's name or likeness.

*Yarbray v. Southern Bell Telephone & Telegraph Co.*, 409 S.E.2d 835, 836 (Ga. 1991).

Plaintiff in this case contends that OLS engaged in "publicity which places the plaintiff in a false light in the public eye." In order to sustain a false light invasion of privacy claim, a plaintiff must allege sufficient facts to establish a plausible claim that a defendant knowingly or recklessly published falsehoods about him or her and, as a

result, placed him or her in a false light which would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652E; *see also Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008).

Plaintiff alleges facts in the Second Amended Complaint stating a plausible claim that he was current on his Loan, that OLS was aware that he was current on his Loan, that OLS published information in the "written advertisements" stating that he was in default on the Loan, that OLS did so knowingly or recklessly, and that he was damaged as a result of that publication. The undersigned finds that Plaintiff's allegation that OLS falsely stated that he was in default on his Loan could be construed as "highly offensive to a reasonable person," if that person was actually current on his Loan and not in default.

For that reason, the Court has previously held that Plaintiff alleged sufficient facts in the Amended Complaint to state a plausible claim for false light invasion of privacy against OLS. *See* September 10 Order [51] at 24 ("Plaintiff has alleged facts sufficient to support a viable claim for false light invasion of privacy."). Thus, it is the law of the case that Plaintiff has stated a plausible claim against OLS for false invasion of privacy under Georgia law.

Nevertheless, OLS has moved to dismiss a portion of the Plaintiff's claim of false light invasion of privacy, based on Plaintiff's allegation in the Second Amended

22

Complaint that OLS published "false and derogatory information concerning Plaintiff's financial condition" when it published information that "Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment." Sec. Am. Comp. [69] at ¶ 85. OLS argues that "even if an incorrect statement was made about the Trustee's legal authority, that statement would imply nothing derogatory about Plaintiff's financial condition." Def. Br. [78-1] at 8.

In response, Plaintiff argues that the Defendant's false assertion that it was acting "[u]nder and by virtue of the power of sale contained in the security deed" constituted "false publicity" because, he argues, the Trustee had no legal interest in the deed or note. Pl. Br. [81] at 19-20. Significantly, the Plaintiff has again failed to cite to any case supporting his argument that, under Georgia law, a plaintiff may sustain a viable claim of false light of invasion of privacy based on a publication of information about a pending foreclosure sale by an entity who is acting under the power of an allegedly invalid assignment. Moreover, Plaintiff's argument fails for the same reason that his argument supporting his claim of wrongful attempted foreclosure fails. It is the publication of the information that Plaintiff was in default on the Loan that allegedly placed Plaintiff in a "false light in the public eye." The specific identity of the foreclosing authority would have no bearing on whether the Plaintiff was placed in a "false light."

23

Plaintiff has thus failed to state a plausible claim against OLS for false light invasion of privacy under Georgia law based on a theory that the purported Assignment was invalid or that OLS and the Trustee otherwise lacked the authority to foreclose. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [78] be **GRANTED** as to that portion of Plaintiff's claim of false light invasion of privacy in Count Two of the Second Amended Complaint.

### 3.     Breach of Contract

In Count Three of the Second Amended Complaint, Plaintiff asserts a claim for breach of contract, pursuant to O.C.G.A. §§ 13-6-1 *et seq*. Sec. Am. Compl. [69] at ¶¶ 87-90. Plaintiff alleges that "Defendant OLS's arbitrary and capricious violation of the terms of the Loan and Note, and the resulting attempted foreclosure of the Home, constituted a breach by Defendant OLS." *Id.* at ¶ 89.

Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom. *See Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278 (1996)*; Turner v. Connor*, 192 Ga. App. 348, 349 (1989); *Cartin v. Boles*, 155 Ga. App. 248, 252 (1980); *see also TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F.Supp. 1572, 1583 (N.D.Ga. 1995) (Evans, J.). Furthermore, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract,

24

the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. A plaintiff must also allege that a defendant breached a specific provision in the contract in order to state a plausible claim for breach of contract. *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because American Casual cannot point to any contractual provision that Moe's breached by failing to act in the manner set forth above, American Casual cannot state a claim for breach of contract based on these allegations.").

Defendant OLS does not challenge the validity of the Note as an enforceable contract. It argues, however, that Plaintiff's breach of contract claim must be dismissed because the factual allegations of the Second Amended Complaint demonstrate that OLS, acting as the servicer of the Loan, was a disclosed agent of Upland and/or the Trustee. As set forth above, the Plaintiff alleges in the Second Amended Complaint that, on or about April 20, 2005, Plaintiff received a letter from Upland stating that the new servicer of the Loan would be OLS. Sec. Am. Comp. at ¶ 21. Plaintiff further alleges that, on May 11, 2005, he received a letter from OLS introducing itself as the new servicer for the Loan. *Id.* at ¶ 22.

Defendant OLS argues that, under Georgia law, it is well settled that a disclosed agent is not liable for any breach of the contract of the principal. *See* O.C.G.A. § 10-6-

53 ("The form in which the agent acts is immaterial; if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal."); *see also Cuba v. Hudson & Marshall, Inc.*, 445 S.E.2d 386, 388 (Ga. Ct. App. 1994) ("[W]e note that even if there were an enforceable contract for the sale of Property No. 230, plaintiffs' remedy would be against [the principal]; defendants as agents of a disclosed principal would not be liable for the principal's breach of contract.").

In response to the Defendant's argument, Plaintiff states that he "squarely disputes that Defendant OLS was a disclosed agent." Pl. Br. [81] at 23. He argues that "[o]n the current record, there is simply no evidence that Defendant OLS did not become a de facto, if not an actual principal, as to the Plaintiff, when it assumed the loan servicing duties." *Id.* at 22. Plaintiff argues further that it is the burden of the agent to prove both the existence of the agency relationship as well as knowledge of the agency by the opposite party. *Id.*; *see Chambliss v. Hall*, 147 S.E.2d 334, (Ga. Ct. App. 1966) ("If the agent would avoid personal liability, the duty is on him to disclose his principal, and the agent is individually liable if he fails to disclose his agency and the identity of his principal.").

As discussed, the Plaintiff alleges in the Second Amended Complaint that Upland notified him in a letter that the new servicer of the Loan would be OLS, and

that OLS also sent him a separate letter in which it introduced itself as the new servicer for the Loan. Sec. Am. Comp. at ¶¶ 21-22. Thus, it appears that Plaintiff's allegations would suggest that it was disclosed to him by both Upland and OLS that OLS was acting as the servicer of the Loan, and that OLS was not acting as the principal or owner of the Note and the Security Deed. However, while this may be the most logical inference from the alleged facts, the Court cannot definitively say that this is the only plausible inference, or that Plaintiff can prove no set of facts to establish a breach of contract claim against Defendant. Indeed, Plaintiff contends that he "squarely disputes that Defendant OLS was a disclosed agent."

Moreover, in the unique procedural posture of this case, there is no reason at this time to dismiss this claim based on these borderline allegations. Discovery has been completed, and Defendant has already filed a motion for summary judgment requesting judgment in favor of Defendant on this claim on the basis of the actual evidence adduced in discovery.[2] Given the debatable quality of the allegations and the lack of any efficiency to the Court or parties in considering this claim on the basis of the Plaintiff's allegations alone, the Court finds that the appropriate course is to

---

[2] On May 19, 2014, OLS filed a Motion for Summary Judgment [104] in which it argues that the Court should grant summary judgment in its favor on all of Plaintiff's claims, including his claim for breach of contract. *See* Def. Mot. for Summary Judgment [104].

assume the sufficiency of those allegations for the purpose of resolving the instant motion, but revisit the issue in the context of Defendant's summary judgment motion.

Defendant OLS argues further that Plaintiff has failed to allege sufficient facts to state a plausible claim for breach of contract under Georgia law because, it argues, he has failed to allege that it breached a specific contractual provision of the Note. See *American Casual Dining*, 426 F. Supp. 2d at 1369. Defendant argues that "Plaintiff provides no citations to specific provisions of the Loan or Note that were supposedly breached. In fact, even outside of the four paragraphs of Count Three, there are *zero* citations to provisions of the Loan or Note that were breached, leaving OLS without sufficient notice as to the actual claim(s) being made by Plaintiff." Def. Br. [78-1] at 19 (emphasis in original).

As set forth above, Plaintiff alleges in the Second Amended Complaint that, at the time he executed the Note, he understood that the Loan was to be amortized over thirty years, with interest calculated on a monthly basis. Sec. Am. Compl. at ¶ 27. He alleges that, without obtaining his consent or notifying him, Upland converted the Loan to a "Simple Interest Loan" that accrued interest from the last date that interest was paid through the date the next payment was received. *Id.* at ¶¶ 27, 29. This amortization technique, which is known as a "daily interest rate" computation, reduces the application of the payment to principal unless a payment is received on the exact

due date set forth in the Note. *Id.* at ¶ 28. Plaintiff alleges that OLS maintained the "daily interest rate" computation and failed to correct the Upland mortgage account errors after it began servicing the Loan. *Id.* at ¶¶ 30-31. He alleges further that OLS "compounded Upland's errors by committing numerous errors and making numerous false entries" on Plaintiff's Loan account. *Id.* at ¶ 31.

Plaintiff also alleges that the May 2005 Statement he received from OLS demonstrates the "errors" on his Loan account. *Id.* at ¶ 41, Ex. G. The May 2005 Statement showed a principal balance of $85,463.72, only $936.28 less than the original principal balance when Plaintiff executed the Note in 1998. *Id.* at ¶ 41(a), Ex. G. Plaintiff alleges that, "[w]ith one exception, no part of Plaintiff's monthly installments was applied to principal." *Id.* at ¶ 41(a). The May 2005 Statement also shows an "escrow advance" of $2,633.73, although no escrow account had been established with Upland. *Id.* at ¶ 41(b), Ex. G. The May 2005 Statement shows a "past due amount" of $815.64, although Plaintiff was current at the time of the transfer of the servicing rights to OLS. *Id.* at ¶ 41(c), Ex. G. The May 2005 Statement also shows a "Prior Servicer Expense" of $1,802.11 that was never explained to Plaintiff by either Upland or OLS. *Id.* at ¶ 41(d), Ex. G.

Plaintiff also alleges in the Second Amended Complaint that OLS also "repeatedly engaged in other wrongful actions," including the assessment of duplicate

insurance premiums, false late charges, duplicate payments of property taxes with no refund to Plaintiff of the double payment, and fictitious legal/collection expenses. *Id.* at ¶ 42. He claims that OLS also sent him his "payment histories" on the Loan, which demonstrated fictional escrow advances and improper application of interest charges. *Id.* at ¶ 43. Plaintiff alleges that, from and after June 10, 2010, OLS falsely charged late charges to his account, falsely charged his account for "force-placed" homeowner's insurance, and falsely charged his account for legal and other collection expenses. *Id.* at ¶¶ 67-69. Plaintiff further alleges that, both prior to June 10, 2010, and thereafter, OLS intentionally miscalculated the amount of its customers' obligations to make payments of principal and interest under the terms of their loans, and their obligations to make payments of property taxes and hazard insurance. *Id.* at ¶¶ 71-72. He alleges that the mortgage account balances maintained by OLS for both himself and other customers are "inaccurate, incorrect, and false." *Id.* at ¶ 73.

In response to the Defendant's argument that he has failed to state a claim for breach of contract, Plaintiff argues that these allegations are sufficient to state a plausible claim for breach of contract, even absent a specific citation to a particular provision of the Note. Plaintiff argues that he has "alleged particular contractual provisions were violated when [the Second Amended Complaint] specifically stated that Defendant charged Plaintiff improper late fees and attorney fees, improperly

applied payments to interest rather than principal, charged duplicate insurance premiums and taxes, and used improper amortization methods." Pl. Br. [81] at 21.

Although Plaintiff failed to cite to a particular provision in the Note that the Defendant allegedly breached, the undersigned finds that the Plaintiff has alleged sufficient facts to state a plausible claim for breach of contract. *See, e.g., Bates v. JPMorgan Chase Bank, N.A.*, No. 4:12–CV–43 (CDL), 2012 WL 3727534, at *5 (M.D. Ga. August 27, 2012) ("While these allegations are not as detailed as they could be, the Court finds that they sufficiently place Defendant on notice as to the nature of her claim and include factual allegations in support of that claim. Here, it is obvious that Bates is alleging that Chase breached provisions of the note and security deed regarding (1) application of payments, (2) permissible fees and charges, including those in connection with reinstatement, (3) duties under certain HUD regulations that were allegedly incorporated into the note and security deed, and (4) invocation of the power of sale.").

Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [78] be **DENIED** as to Plaintiff's claim of breach of contract in Count Three of the Second Amended Complaint.

31

### III.    RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendant's Motion to Dismiss [78] be **GRANTED IN PART, DENIED IN PART**.

**IT IS RECOMMENDED** that the Motion to Dismiss [78] be **GRANTED** as to those portions of Plaintiff's claims of wrongful attempted foreclosure and false light invasion of privacy that are based on the Plaintiff's theory of an invalid assignment. **IT IS RECOMMENDED** that the Motion to Dismiss [78] be **DENIED** as to Plaintiff's breach of contract claim.

**IT IS SO RECOMMENDED** this 24th day of July, 2014.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE