IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY PHILLIPS, On Behalf of Himself and All Other Persons in the State of Georgia who are Similarly Situated, | : : : : : | CIVIL ACTION NO. 1:12-CV-3861-WSD-JSA |
| Plaintiff, | : : | |
| v. | : : | |
| OCWEN LOAN SERVICING, LLC, | : : : | **FINAL REPORT AND RECOMMENDATION ON A MOTION FOR SUMMARY** |
| Defendant. | : | **JUDGMENT** |

Plaintiff Jeffrey Phillips filed the original Complaint initiating this action in the Superior Court of Fulton County, Georgia, on November 16, 2010. *See* Notice of Removal [1] at ¶ 1. On November 2, 2012, Defendant Ocwen Loan Servicing, LLC ("OLS") removed the action to this Court. *See* Notice of Removal [1]. The action is now before the Court on the Defendant's Motion for Summary Judgment [104] and the Defendant's Motion to Strike and Objections to Expert Declaration of Diana A. Crawford [116] ("Motion to Strike").

For the reasons discussed below, the Defendant's Motion to Strike [116] is **GRANTED**. The Court finds that the report of Ms. Crawford, Plaintiff's expert witness, must be excluded because the Plaintiff failed to identify her to the Defendant

sufficiently early in the discovery period to allow the Defendant to depose her, as required under Local Rule 26.2C.

Furthermore, the undersigned **RECOMMENDS** that the Defendant's Motion for Summary Judgment [104] be **GRANTED**. The undersigned finds that the undisputed facts establish that Plaintiff failed to make the monthly payments on a timely basis as required by his mortgage agreement, and was thus in default on his mortgage. For that reason, Defendant is entitled to summary judgment on the Plaintiff's claims of wrongful attempted foreclosure and false light invasion of privacy. The undisputed facts also establish that Defendant OLS was not a party to the mortgage agreement, but as the servicer of the mortgage was instead a disclosed agent of the principal. For that reason, Defendant is also entitled to summary judgment on Plaintiff's claim of breach of contract.

## I.    FACTS

Unless otherwise indicated, the Court draws the following facts from Defendant's Statement of Material Facts [104-3] ("Def. SMF") and Plaintiff's Statement of Additional Material Facts [110] ("Pl. SMF"). The Court also draws some facts from Plaintiff's Response to Defendant's Statement of Material Facts [110] ("Pl. Resp. SMF"), and the Defendant's Objections and Responses to Plaintiff's Statement of Additional Material Facts [115-3] ("Def. Resp. SMF").

2

The Court has excluded assertions of fact by either party that are immaterial or presented as arguments or legal conclusions, and has excluded assertions of fact unsupported by a citation to admissible evidence in the record or asserted only in the party's brief and not the statement of facts. *See* LR 56.1B, NDGa ("The court will not consider any fact: (a) not supported by a citation to evidence . . . or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."). The Court has also viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

On or about December 7, 1998, Plaintiff entered into a promissory note ("Note") and Security Deed ("Security Deed") with HomeAmerican Credit, Inc. d/b/a Upland Mortgage ("Upland"). Def. SMF at ¶¶ 1-2; Def. Ex. 1, 2. The Note and the Security Deed are collectively referred to as the "Loan." Def. SMF at ¶ 2. The Security Deed secured property located at as 728 Kennolia Drive, Atlanta, Georgia 30310 (the "Property"). Def. SMF at ¶ 3. The Note required Plaintiff to make monthly payments in the amount of $815.64 as follows: "My monthly payment will be in the amount of U.S. $815.64," "I will pay principal and interest by making payments every

month," and "I will make my monthly payments on the 15th day of each month beginning on January 15, 1999." Def. SMF at ¶ 4; Pl. Resp. SMF at ¶ 4; Def. Ex. 1 at 1. The Note also required Plaintiff to "pay Interest at a yearly rate of 10.890%." Def. SMF at ¶ 5; Def. Ex. 1 at 1.

On or about May 6, 2005, Defendant OLS began servicing the Loan and sent Plaintiff numerous account statements, approximately one per month. Def. SMF at ¶ 6. The May 6, 2005 Account Statement ("May 6, 2005 Statement") that was sent from OLS to Plaintiff stated in part:

> Important Messages – Please note that you have a Simple Interest Loan that accrues interest from the last date that interest was paid through the date your next payment is received. When your next payment is received, the interest amount will be calculated from the date listed in the "Interest paid Through Date' field (listed above) through the date that your payment was received. It is important to ensure that your payments are received timely and consistently so that your accrued interest each period is limited to approximately one month's interest. If you elect to take advantage of your grace period, please note that this will cause a greater portion or all of your payment to be applied to interest.

Def. SMF at ¶ 6; Def. Ex. 3.

Plaintiff does not dispute that the May 6, 2005 Statement contained that language, but he contends that the May 6, 2005 Statement also contained a "Prev-Prior Services Expense" of $1802.11, and that he wrote to OLS to request an explanation of that charge, but never received an explanation. Pl. SMF at ¶ 7; Pl. Resp. SMF at

¶ 6; Pl. Dep. at 85-86, 96, 119, 124-25. Plaintiff further contends that the amounts

shown on Defendant's account statements were "inaccurate from the initial boarding

of Plaintiff's loan from Upland, beginning in April of 2005." Pl. SMF at ¶ 8; Pl. Dep.

at 158-59 (Plaintiff testified during his deposition that the "problem" started in March

or April of 2005).

The November 29, 2005 account statement ("November 29, 2005 Statement")

from OLS to Plaintiff stated, in relevant part:

> The interest amount will be higher than scheduled if the time in between
> receipt of payments is greater than thirty days, thereby reducing or
> eliminating any application of funds to principal, and interest will be
> lower than scheduled, if the time is less than thirty days. Additional
> funds may only be applied to your principal balance after all interest is
> paid current and any outstanding fees, costs, or advances are paid.

Def. SMF at ¶ 16; Def. Ex. 13. Plaintiff does not dispute that the November 29, 2005

Statement contained that language, but he contends that he "repeatedly questioned the

principal and interest amounts on the statements." Pl. Resp. SMF at ¶ 16; Pl. Dep. at

50-51, 124-25.

Defendant has produced records that include Plaintiff's payment history on the

Loan to Upland and OLS, and that Plaintiff has also produced documents that include

a "true and accurate summary of payments to OLS." Def. SMF at ¶¶ 7-10; Def. Ex.

4-7, 22. Plaintiff stated he produced "all documents in Plaintiff's possession" that

were responsive to Defendant's request that Plaintiff produce "[m]onthly bank statements from any account you used to make payments on the Loan for any months in which such payments were made." Def. SMF at ¶ 11; Def. Ex. 18. In response to Defendant's Interrogatory requesting Plaintiff to "[i]dentify each and every payment of any kind that you made in connection with the Loan," Plaintiff offered no objection and answered by way of reference to the bank statement documents Plaintiff produced as Set II. Def. SMF at ¶ 12; Def. Ex. 8, 10. Plaintiff produced dozens of account statements he received from Defendant OLS describing the status of his loan as Set III. Def. SMF at ¶ 13; Def. Ex. 9. In response to Defendant's Interrogatory asking Plaintiff to "[i]dentify and describe in detail the proof you were current on the Loan," Plaintiff again offered no objection and answered by way of reference to the bank statement documents Plaintiff produced as Set II. Def. SMF at ¶ 14; Def. Ex. 8, 10.

In response to Defendant's Interrogatory asking Plaintiff to "[i]dentify each insurance policy that you contend provided hazard or flood insurance coverage for the Property," Plaintiff did not offer any objection and answered by way of reference to Plaintiff's document production, Set VII. Def. SMF at ¶ 19; Def. Ex. 10, 11. Plaintiff produced as Set VII "all documents in Plaintiff's possession" responsive to Defendant's document request for "documents and communications you have sent to any insurer who provided hazard insurance coverage on the Property." Def. SMF at

¶ 20; Def. Ex. 18. The earliest dated document showing insurance coverage is dated for coverage beginning January 11, 2005. Def. SMF at ¶ 20; Def. Ex. 11, 18. During the Defendant's servicing of the Plaintiff's Loan, Defendant OLS charged $53.52 in net charges for placement of hazard insurance on the Property including charges of $49.00 on April 30, 2009; $18.14 on June 2, 2005; and a credit of $13.22 on June 10, 2005. Def. SMF at ¶ 21; Def. Ex. 4.

Plaintiff also produced an application for insurance which Yvonne Phillips signed on April 6, 2009, in which she stated the "[e]xpiration date of present or prior coverage" was "3/15/2008," and that the reason for applying for coverage was "because lapsed for so long." Def. SMF at ¶ 40; Def. Ex. 11 at PHI-SET-VII 00005. Plaintiff does not dispute that, but contends that the referenced "lapse" was for no longer than one week. Pl. Resp. SMF at ¶ 40; Pl. Decl. at ¶ 9. Plaintiff nevertheless contends that Defendant "force-placed insurance on Plaintiff's home." Pl. SMF at ¶ 10; Pl. Decl. at ¶ 9. Defendant concedes that it placed insurance on Plaintiff's Property and charged $53.32 to do so, but notes that Plaintiff conceded that he let his insurance on the Property lapse, allegedly for one week. Def. Resp. SMF at ¶ 10; Pl. Decl. at ¶ 9. Defendant further contends that the Plaintiff's documents produced to Defendant show a gap in insurance coverage for one year. Def. Resp. SMF at ¶ 10; Def. SMF at ¶ 40; Def. Ex. 11 at PHI-SET-VII 00005.

7

In response to Defendant's Interrogatory requesting Plaintiff to "[i]dentify each instance after December 1998 that You or Your wife were denied credit," Plaintiff offered no objection and answered by way of reference to Plaintiff's Set VI as documenting his denial for credit, which indicates that the earliest such denial was July 24, 2012. Def. SMF at ¶ 39; Def. Ex. 10; Def. Ex. 16 at PHI-SET-VI-0053.

Plaintiff produced as Set VIII "all documents in Plaintiff's possession" responsive to Defendant's document request for "documents and communications you received from any taxing authority concerning real estate taxes." Def. SMF at ¶ 22; Def. Ex. 18, 19. Defendant contends that the documents reflect that Plaintiff failed to pay taxes owed to the City of Atlanta in 2005, resulting in a civil action brought by the City of Atlanta against Plaintiff and his wife as reflected on the document. Def. SMF at ¶ 23; Def. Ex. 19 at PHI-SET-VIII-00023. Plaintiff disputes that and contends that the document at issue reflects a "Solid Waste Fi. Fa. for amounts owed for garbage collection." Pl. Resp. SMF at ¶ 23. Plaintiff contends that he subsequently paid the amount of $1004.97 owed to the City of Atlanta for solid waste collection. Pl. Resp. SMF at ¶ 23; Def. Ex. 19 at PHI-SET-VIII-00005; Pl. Decl. at ¶ 8. Plaintiff received a refund on his real estate taxes in 2010 and 2011 because Defendant had already paid the taxes due. Def. SMF at ¶ 24; Def. Ex. 10.

Defendant contends that, on or about December 21, 2009, Plaintiff attempted to make a payment to OLS, but OLS returned the payment as insufficient to cure the default. Def. SMF at ¶ 34; Def. Ex. 14. Plaintiff does not dispute that he made a payment of $855 to OLS on December 21, 2009, and that it was returned by OLS. Pl. Resp. SMF at ¶ 34. He contends, however, that "OLS misapplied Plaintiff's mortgage payments from the time that it became the servicer of Plaintiff's mortgage, and OLS's misapplication of Plaintiff's mortgage payments resulted in an incorrect determination that Plaintiff had defaulted on his loan." Pl. Resp. SMF at ¶ 34; Pl. SMF at ¶ 1; Pl. Dep. at 50-51, 68, 124.[1] Defendant, on the other hand, contends that Plaintiff's deposition testimony does not support his contention that OLS "misapplied" his mortgage payments. *See* Def. Resp. SMF at ¶ 1. It is undisputed by the parties that OLS applied most of the Plaintiff's payments to interest, rather than principal, but they dispute whether that constituted "misapplication." Pl. SMF at ¶ 1; Def. Resp. SMF at ¶ 1.

---

[1] Plaintiff also cites to a previous Order of the Court as evidentiary support for this contention. *See* Pl. SMF at ¶ 1 (citing to Judge Duffey's Order dated September 10, 2013, on the Defendant's Motion to Dismiss [51]). Because the Court's Order merely summarized the Plaintiff's allegations in his First Amended Complaint, the Order does not constitute admissible evidence that may be considered in resolving a motion for summary judgment. *See* FED. R. CIV. P. 56(c)(1)(A). As discussed above, the Court may not consider a factual allegation unless it is supported by a citation to evidence in the record. *See* LR 56.1B, NDGa.

Plaintiff also contends that "Ocwen's misapplication of Plaintiff's mortgage payments resulted in an incorrect determination that Plaintiff had defaulted on his loan." Pl. SMF at ¶ 2; Pl. Dep. at 61. In support of that contention, Plaintiff cites to his own deposition testimony, in which he testified as follows:

> Q      Well, it says, if I do not pay the full amount of each monthly payment on the date it is due, I will be in default. That's what it says. Do you disagree with that?
>
> A      I disagree with that.
>
> Q      Do you disagree that it says that?
>
> A      I don't disagree that it says that, but I disagree that it–I disagree that I was in default.

Pl. Dep. at 61. Defendant contends that Plaintiff's testimony does not provide any support for his contention that Defendant made an "incorrect determination" that the Plaintiff was in default on the Loan. Def. Resp. SMF at ¶ 2.

Following the December 21, 2009 attempt, Plaintiff did not make a payment to OLS until March 11, 2010. Def. SMF at ¶ 35; Def. Ex. 8, 12. Plaintiff states that this fact is "disputed," but he has not cited to any evidence in the record that disputes that fact or otherwise demonstrates that Plaintiff made a payment between December 21, 2009, and March 11, 2010. *See* Pl. Resp. SMF at ¶ 35. Instead, Plaintiff contends that he "was under the assumption that if he mailed a payment by March 15, he would be under the loan modification." Pl. Resp. SMF at ¶ 35; Pl. Dep. at 241, 245. It is

10

undisputed that Plaintiff has not made a payment on the Loan since on or about March 11, 2010. Def. SMF at ¶ 38; Pl. Resp. SMF at ¶ 38.

Plaintiff contends that OLS first offered him a loan modification on or about October 30, 2009. Pl. SMF at ¶ 11; Pl. Dep. at 208-11. He further contends that he disputed the balance of the Loan, and "an Ocwen representative" told him that "corrected documents were being sent." Pl. SMF at ¶ 11; Pl. Dep. at 208-11. Based on that representation, Plaintiff contends that he "believed that the documentation would be 'fixed' and that his loan had been modified." Pl. SMF at ¶ 11; Pl. Dep. at 208-11. It is undisputed that Defendant OLS made another proposed loan modification to Plaintiff on or about January 16, 2010 (the "Loan Modification Offer"), and made the same offer to Plaintiff in writing on more than one occasion. Def. SMF at ¶ 25; Def. Ex. 14, 20; Pl. Dep. at 209, Ex. 115. It is further undisputed that Plaintiff did not sign the Loan Modification Offer or any similar written agreement to modify the Loan. Def. SMF at ¶ 26; Pl. Dep. at 208-11.

On March 8, 2010, the first publication of the foreclosure against Plaintiff ("Publication") was published in the Daily Report. Def. SMF at ¶ 29; Def. Ex. 23. Plaintiff contends that "Ocwen's misapplication of Plaintiff's mortgage payments resulted in publication of an untrue statement that Plaintiff was in default." Pl. SMF at ¶ 3; Def. Ex. 23. In support of that contention, Plaintiff cites only to the publication

itself. *See* Def. Ex. 23. Defendant contends that the publication does not support the Plaintiff's contention that it was an "untrue statement that Plaintiff was in default." Def. Resp. SMF at ¶ 3.

Plaintiff also alleges that "Ocwen did not follow the provisions governing the notice of default and the acceleration of the entire remaining indebtedness secured by the Note outlined in the Security Deed, which was executed with the Note." Pl. SMF at ¶ 4; Def. Ex. 2. In support of that contention, Plaintiff cites only to the Security Deed itself. *See* Def. Ex. 2 [104-5], at 5, ¶ 21. Defendant contends that the Security Deed provides no evidentiary support for the Plaintiff's contention that OLS "did not follow the provisions" of the Security Deed regarding the notice of default and acceleration. Def. Resp. SMF at ¶ 4. Similarly, Plaintiff contends that Defendant's "notices of default were materially incorrect because they did not accurately calculate the remaining principal due." Pl. SMF at ¶ 5. Plaintiff cites only to the account statements and notices of default as evidentiary support for that allegation, and Defendant contends that those documents do not support the Plaintiff's contention that the notices were "incorrect." Pl. SMF at ¶ 5; Def. Resp. SMF at ¶ 5.

Defendant contends that, on February 28, 2006, Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, As Trustee for the Registered Holders of Credit Suisse Seasoned Loan Trust 2006-1, Home

Equity Pass-Through Certificates, Series 2006-1 (the "Trustee") became the owner of the Loan. Def. SMF at ¶ 28; Def. Ex. 21 (the "Assignment") [104-35]; Def. Ex. 22, Kearse Decl. at ¶ 12. Although Plaintiff does not dispute that the Trustee became the owner of the Loan, he disputes the date on which it became the owner. Pl. Resp. SMF at ¶ 28. He notes that, although the Assignment states that it was entered into on November 30, 2006, it was executed on March 10, 2010, and recorded on March 19, 2010. Pl. Resp. SMF at ¶¶ 27-28; Def. Ex. 21 [104-35]. Plaintiff thus contends that Upland assigned its rights under the Note and Security Deed to the Trustee on March 10, 2010, which was after the first notice of foreclosure was published on March 18, 2010. Pl. SMF at ¶ 6. Defendant contends that the Assignment reflects on its face that it was executed on February 28, 2006. Def. Resp. SMF at ¶ 6; Def. Ex. 21 [104-35].[2]

---

[2] The Court notes that the Assignment that Defendant submitted to the Court states, in relevant part, as follows: "This ASSIGNMENT OF DEED TO SECURE DEBT is made and entered into as of the 30TH day of November, 2006, from HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE SEASONED LOAN TRUST 2006-1, HOME EQUITY PASS-THROUGH CERTIFICATES SERIES 2006-1, whose address is C/O OCWEN LOAN SERVICING, LLC 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee")." Def. Ex. 21 [104-35].

On May 3, 2010, Plaintiff filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia in case number 10-73238 ("the Bankruptcy"). Def. SMF at ¶ 30. In the Bankruptcy, Plaintiff filed a bankruptcy petition in which he claimed under penalty of perjury that he was $5,000 in arrears on his Loan as of May 3, 2010, and he did not check the box to indicate that he disputed the amount of the debt. Def. SMF at ¶ 31; Def. Ex. 24. Although Plaintiff does not dispute that, he contends that his statement was "based upon OLS's misinformation." Pl. Resp. SMF at ¶ 31; Pl. Decl. at ¶ 7. In the Bankruptcy, Defendant OLS filed a Proof of Claim on May 12, 2010, in which it stated that Plaintiff was in arrears on the Loan in the amount of $22,064.00, of which $5,709.48 was missed monthly payments, and the balance was taxes, late charges, and fees. Def. SMF at ¶ 32; Def. Ex. 25. It is undisputed that the Bankruptcy docket does not reflect that Plaintiff objected to the Defendant's Proof of Claim. Def. SMF at ¶ 33; Pl. Resp. SMF at ¶ 33.

It is undisputed by the parties that no foreclosure sale has occurred on the Property, and that Plaintiff continues to reside at the Property. Def. SMF at ¶¶ 36-37; Pl. Resp. SMF at ¶¶ 36-37.

14

## II.    DISCUSSION

### A.    DEFENDANT'S MOTION TO STRIKE

Before addressing Defendant's Motion for Summary Judgment, the Court will first address the Defendant's Motion to Strike [116]. Defendant argues that the Court must exclude the Declaration of Diana A. Crawford, which was submitted by the Plaintiff in support of his opposition to the Defendant's Motion for Summary Judgment. *See* Pl. Resp., Ex. A [109]. Defendant argues that Plaintiff failed to identify Ms. Crawford, a Certified Public Accountant, sufficiently early in the discovery period to allow Defendant to depose her, as required by Local Rule 26.2.

Local Rule 26.2 provides in relevant part, as follows:

> **C. Expert Witnesses.** Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.
>
> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

LR 26.2C, NDGa.

Rule 37 of the Federal Rules of Civil Procedure also provides, in relevant part:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

The requirement of the timely disclosure of an expert witness is necessary to allow the opposing party to adequately prepare its case by deposing the expert witness during the discovery period. *See, e.g.*, *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004); *Morrison v. Mann*, 244 F.R.D. 668, 673-74 (N.D. Ga. 2007) (Carnes, J.); *Leathers v. Pfizer*, 233 F.R.D. 687, 699 (N.D. Ga. 2006) (Evans, J.).

In this case, the discovery period expired on April 17, 2014. *See* Order dated March 21, 2014 [103]. Defendant contends that Plaintiff failed to disclose Ms. Crawford as an expert witness in his Initial Disclosures, or at any other time during the discovery period. *See* Pl. Initial Disclosures [54]. Defendant further contends that Plaintiff did not produce a copy of Ms. Crawford's expert report until Plaintiff filed his response to the Defendant's Motion for Summary Judgment on July 3, 2014, which was more than two months after the close of discovery. Defendant argues that, because Plaintiff failed to identify Ms. Crawford sufficiently early in the discovery

period to permit Defendant to depose her, or even during the discovery period at all, her report must be excluded under Local Rule 26.2C.

In response, Plaintiff does not even attempt to argue that he identified Ms. Crawford to the Defendant during the discovery period. *See* Pl. Resp. [120] at 6. Instead, Plaintiff makes substantive arguments regarding the Plaintiff's claims and the Defendant's alleged violations of the terms of the Note and the Security Deed. Plaintiff argues that "this Court's assessment of the Defendant's Motion to Strike should focus on the testimonial content of the Declaration–its arithmetic calculations." *Id.* at 9. Significantly, Plaintiff cites to no authority supporting his argument that the "testimonial content" of Ms. Crawford's Declaration should be relevant to the issue of whether Plaintiff identified Ms. Crawford early enough in the discovery period to allow Defendant to depose her. If the Plaintiff believed that the "testimonial content" of Ms. Crawford's Declaration was essential to his claims, then he was required to disclose her identity and her expert report to the Defendant in compliance with Local Rule 26.C.

Accordingly, the Court finds that Plaintiff failed to disclose the identity of Ms. Crawford to Defendant "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert," as required by Local Rule

26.2C.[3] Pursuant to Local Rule 26.2, the Court must exclude the Declaration of Ms. Crawford unless Plaintiff is able to establish that her late disclosure was "justified." LR 26.2C, NDGa.

Plaintiff, apparently relying on his argument that the "testimonial content" of Ms. Crawford's Declaration should be considered by the Court, makes no effort to establish that his untimely disclosure of Ms. Crawford was "justified." Plaintiff instead argues that her Declaration should be considered by the Court because she is not an expert who was retained to testify "at trial," as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. Pl. Br. [120] at 11; *see* FED. R. CIV. P. 26(a)(2) ("a party must disclose to the other parties the identity of any witness it may use at trial to present evidence"). Local Rule 26.2, however, requires that "[a]ny party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose

---

[3] The Court notes that, even if Plaintiff had disclosed the identity of Ms. Crawford during the last week of the discovery period, the disclosure would still have been too late under Local Rule 26.2C. *See*, *e.g.*, *Carolina Casualty Ins. Co. v. R.L. Brown & Assocs., Inc.*, No. 1:04-CV-3537-GET, 2007 WL 174171, at *2-3 (N.D. Ga. Jan. 19, 2007) (Tidwell, J.) ("the court finds that plaintiffs' disclosure of [four] expert witnesses seventeen days before the close of discovery violates Local Rule 26.2C"); *Reese v. Herbert*, No. 4:05-CV-0193-RLV, 2006 WL 1892026, at *4-5 (N.D. Ga. July 10, 2006) (Vining, J.) (disclosure of an expert witness twelve days before the end of discovery was too late under Local Rule 26.2C), *rev'd on other grounds*, 527 F.3d 1253 (11th Cir. 2008).

the expert." LR 26.2C, NDGa. No mention is made of any requirement that the witness be retained to testify only "at trial." Moreover, FED. R. CIV. P. 26 also requires that each party disclose the name of "each individual likely to have discoverable information–along with the subjects of that information." FED. R. CIV. P. 26(a)(1)(A). Plaintiff does not argue that he ever made any disclosure of the identity of Ms. Crawford or the subject of her testimony at any time before he submitted it to the Court with his response to the Defendant's Motion for Summary Judgment.

Plaintiff argues further that the Court should deny the Motion to Strike and consider Ms. Crawford's Declaration because "there is no conceivable prejudice to Ocwen, in light of the content of the Declaration." Pl. Br. [11] at 11. Plaintiff argues that, under Rule 37 of the Federal Rules of Civil Procedure, a party's failure to disclose the identity of a witness will not prohibit the use of that witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Plaintiff argues that his failure to identify Ms. Crawford was "harmless" because the Defendant does not dispute Ms. Crawford's arithmetic computations contained in her Declaration. Thus, Plaintiff argues, although he failed to identify her to the Defendant within the time required by Local Rule 26.2C, the Court should deny the Motion to Strike because the Defendant will suffer no prejudice to the admission of Ms. Crawford's Declaration. Plaintiff also

argues that he does not even need Ms. Crawford's Declaration to support his argument that Defendant did not properly apply his payments to principal, because the Court may take judicial notice of "fundamental mathematical and financial calculations." Pl. Br. [120] at 12.

The Court is unpersuaded by Plaintiff's argument that the admission of Ms. Crawford's Declaration is "harmless" to the Defendant. Ms. Crawford states in her Declaration that Defendant "misapplied" the Plaintiff's payments, based on her analysis of the Plaintiff's payment history. The Plaintiff relies on these conclusions as evidentiary support for the arguments he makes in opposition to the Defendant's Motion for Summary Judgment. But the Plaintiff never disclosed the identity of Ms. Crawford so that Defendant had an opportunity to depose her, or to produce an expert witness of its own who could rebut the conclusions found in Ms. Crawford's report, which is the purpose of Local Rule 26.2C.

Thus, because the Plaintiff did not disclose the identity of Ms. Crawford until July 3, 2014, which was months after the expiration of the discovery period, the Court finds that the disclosure was too late under Local Rule 26.2C and as a result, her Declaration must be excluded. *See* LR 26.2C, NDGa; FED. R. CIV. P. 37(c)(1). Accordingly, the Defendant's Motion to Strike [116] is **GRANTED**. The Court has

excluded the Declaration of Ms. Crawford in its consideration of the Defendant's

Motion for Summary Judgment.[4]

### B.    SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden of

demonstrating the absence of a genuine dispute as to any material fact. *See Adickes*

*v. S. H. Kress & Co.*, 398 U.S. 144, 175 (1970); *Bingham, Ltd. v. United States*, 724

F.2d 921, 924 (11th Cir. 1984). The movant carries this burden by showing the court

that there is "an absence of evidence to support the nonmoving party's case." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In making its determination, the court

must view the evidence and all factual inferences in the light most favorable to the

nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving

party must come forward with specific facts that demonstrate the existence of a

---

[4] The undersigned notes that, even if the Declaration of Ms. Crawford had been considered, for the reasons discussed below, the undersigned would still recommend granting the Defendant's Motion for Summary Judgment as to all of the Plaintiff's claims.

genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson*, 477 U.S. at 249; *Ryder Int'l Corp. v. First American Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250. A dispute is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 242. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259.

## C.   PLAINTIFF'S CLAIMS

Plaintiff has asserted three substantive claims against Defendant OLS in the Second Amended Complaint. In Count One, he asserts a claim for Wrongful Attempted Foreclosure. Sec. Am. Compl. [69] at ¶¶ 75-83. In Count Two, he asserts a claim for False Light Invasion of Privacy. *Id.* at ¶¶ 84-86. In Count Three, he asserts a claim for breach of contract, under O.C.G.A. §§ 13-6-1 *et seq*. *Id.* at ¶¶ 87-90. Plaintiff also asserts three counts requesting specific remedies under Georgia law. In Count Four, he requests punitive damages. *Id.* at ¶¶ 91-96. In Count Five, he requests

expenses of litigation. *Id.* at ¶¶ 97-99. Finally, in Count Six, he requests both preliminary and permanent injunctive relief. *Id.* at ¶¶ 100-103.

1.   *Wrongful Attempted Foreclosure*

In Count One of the Second Amended Complaint, Plaintiff asserts a claim for Wrongful Attempted Foreclosure. Sec. Am. Comp. [69] at ¶¶ 75-83. Plaintiff alleges that "Defendant OLS knowingly and intentionally published untrue and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff was behind in payments or in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment."[5] *Id.* at ¶ 77. Plaintiff alleges that he was damaged by the Defendant's "publication of untrue and derogatory information." *Id.* at ¶ 83.

In order to establish a claim for wrongful attempted foreclosure under Georgia law, a plaintiff must present sufficient evidence to show that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that he or she incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust*

_____

[5] The Court has previously dismissed the Plaintiff's claim of wrongful attempted foreclosure to the extent it is based on the Plaintiff's theory of an invalid assignment or the Defendant's lack of authority to foreclose on the Property. *See* Order dated September 12, 2014 [126].

*Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)). "Derogatory" is defined as "detracting from the character or standing of something" or, alternatively, "expressive of low opinion" or "disparaging." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed.) 312.

The Court has previously held that Plaintiff alleged sufficient facts to state a plausible claim for wrongful attempted foreclosure against OLS. *See* September 10 Order [51] at 21 ("Plaintiff has alleged sufficient–albeit scant–facts to support a viable claim for wrongful attempted foreclosure."). That finding was premised solely on the fact that Plaintiff had alleged in the Amended Complaint that he had made all the payments required under the Loan and was thus not in default at the time of the publication on March 8, 2010. *See id.*; *see also* Report and Recommendation [47] at 38-39. But at the summary judgment stage, the Plaintiff may not rely on his allegations in his Complaint and must present admissible evidence that would be sufficient to establish each element of his claim. The undisputed evidence in the record establishes that the Plaintiff failed to make every monthly payment due under the terms of the Note at the time that each payment was due, and thus, under the express terms of the Note, he was in default on the Loan as of the first publication of the foreclosure on March 8, 2010.

The Plaintiff does not dispute that, on or about December 7, 1998, he entered into a Note and Security Deed with Upland that required him to make monthly payments in the amount of $815.64 as follows: "My monthly payment will be in the amount of U.S. $815.64," "I will pay principal and interest by making payments every month," and "I will make my monthly payments on the 15th day of each month beginning on January 15, 1999." Def. SMF at ¶ 4; Pl. Resp. SMF at ¶ 4; Def. Ex. 1 at 1. The Note further states as follows: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." Def. Ex. 1 at 1.

Defendant argues that, because Plaintiff admitted in his Bankruptcy proceeding that he was in "arrears" on the Loan as of May 3, 2010, he is judicially estopped from taking an inconsistent position in this case and arguing that he was not actually in default on the Loan. Defendant argues further that, even if the Plaintiff is not judicially estopped, the undisputed evidence in this case demonstrates that Plaintiff failed to make his monthly payments on the 15th of every month as required by the terms of the Note, and thus, he was in default on the Loan as of March 8, 2010, the date that Defendant first published the notice of a foreclosure sale. For that reason, Defendant argues, it is entitled to summary judgment on Plaintiff's claim of wrongful attempted foreclosure.

26

As set forth above, it is undisputed by the parties that, on May 3, 2010, Plaintiff filed his Bankruptcy action in the United States Bankruptcy Court for the Northern District of Georgia, case number 10-73238. Def. SMF at ¶ 30. In the Bankruptcy, Plaintiff filed a bankruptcy petition in which he claimed under penalty of perjury that he was $5,000 in arrears on his Loan as of May 3, 2010, and he did not check the box to indicate that he disputed the amount of the debt. Def. SMF at ¶ 31; Def. Ex. 24. Defendant argues that, because of Plaintiff's admission in the Bankruptcy action that he was in arrears on his account with Defendant, he is judicially estopped from taking an inconsistent position in this case, that he was not actually in default on the Loan and was instead current on his payments.

Judicial estoppel is an equitable doctrine designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). As the Eleventh Circuit explained, judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (internal quotations and citation omitted). To determine whether a court should apply the doctrine of judicial estoppel to a particular case, courts in the Eleventh Circuit consider two non-exhaustive factors: (1) whether an

inconsistent position was made under oath in a prior proceeding, and (2) whether the inconsistent statements were made knowingly and with intent to mislead. *See id.*

If a party makes a mistake in failing to disclose a claim, summary judgment on grounds of "judicial estoppel" cannot be granted if there exists a material issue of fact as to whether the nonmovant acted with "the motivation and intent to manipulate the judicial system." *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1346 (11th Cir. 2006) (reversing district court's grant of summary judgment on grounds of judicial estoppel because, although the plaintiff indisputably failed to amend his bankruptcy petition to disclose certain claims, a material issue of fact existed as to whether plaintiff did so with bad intent). "Judicial estoppel," moreover, "is an equitable concept invoked at the court's discretion." *Burnes*, 291 F.3d at 1285 (internal quotations and citation omitted); *see also Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 213 (D.N.J. 2009). It "must be applied with caution and in the narrowest of circumstances." *Lamonds v. Gen'l Motors Corp.*, 34 F. Supp. 2d 391, 394 (W.D. Va. 1999) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) and *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).

In this case, it is undisputed that Plaintiff claimed in his Bankruptcy action that he was in "arrears" on his Loan with Defendant OLS in the amount of $5,000, and that Plaintiff never disputed the amount of the debt. Plaintiff now contends that his

statement in the Bankruptcy action was "based upon OLS's misinformation." Pl. Resp. SMF at ¶ 31; Pl. Decl. at ¶ 7. He argues that he "was relying upon the accuracy of the information that he had received from Ocwen." Pl. Br. [109] at 20. Plaintiff does not actually explain how he believed that he was in "arrears" on the Loan if, in fact, he had actually made every payment required under the Note at the time that it was required. Nor does he explain why he did not make any attempt in the Bankruptcy action to dispute Defendant's claim that he owed it a debt, or the amount of the debt. Nevertheless, the Court declines to find that Defendant is entitled to summary judgment on the ground of judicial estoppel. Instead, the Court relies on the undisputed evidence presented by the parties demonstrating that Plaintiff was in default on his Loan at the time that Defendant made the publication regarding the anticipated foreclosure sale.

Defendant OLS has produced records that include Plaintiff's payment history on the Loan to Upland and OLS, and Plaintiff has also produced documents that include a "true and accurate summary of payments to OLS." Def. SMF at ¶¶ 7-10; Def. Ex. 4-7, 22. It is undisputed that Plaintiff made a payment of $855 to OLS on December 21, 2009, and that the payment was returned by OLS. Def. SMF at ¶ 34; Def. Ex. 14; Pl. Resp. SMF at ¶ 34. Defendant contends that it returned the payment to Plaintiff because the payment was insufficient to cure the default on the Loan. Def.

SMF at ¶ 34; Def. Ex. 14. In addition, it is also undisputed that Plaintiff made no payments to Defendant between December 21, 2009 and March 11, 2010. Def. SMF at ¶ 35; Def. Ex. 8, 12. Plaintiff attempts to state that this fact is "disputed," but he has not cited to any evidence in the record that disputes that fact or otherwise demonstrates that he made any payment to Defendant OLS between December 21, 2009, and March 11, 2010. *See* Pl. Resp. SMF at ¶ 35.

Instead, Plaintiff contends that he "was under the assumption that if he mailed a payment by March 15, he would be under the loan modification." Pl. Resp. SMF at ¶ 35; Pl. Dep. at 241, 245. Plaintiff contends that OLS first offered him a loan modification on or about October 30, 2009. Pl. SMF at ¶ 11; Pl. Dep. at 208-11. He further contends that he disputed the balance of the Loan, and "an Ocwen representative" told him that "corrected documents were being sent." Pl. SMF at ¶ 11; Pl. Dep. at 208-11. Based on that representation, Plaintiff contends that he "believed that the documentation would be 'fixed' and that his loan had been modified." Pl. SMF at ¶ 11; Pl. Dep. at 208-11. Plaintiff, however, has produced no evidence that he ever entered into any agreement with Defendant regarding a modification of the Loan. It is undisputed that Plaintiff did not sign the Loan Modification Offer or any similar written agreement to modify the Loan. Def. SMF at ¶ 26; Pl. Dep. at 208-11.

In sum, based on the undisputed evidence in the record, the Court finds that the Plaintiff failed to make timely monthly payments on the Loan that were due on January 15, 2010, and February 15, 2010. Under the express terms of the Note, the Plaintiff was thus in default at the time of the first publication of the foreclosure on March 8, 2010.[6] Def. SMF at ¶ 29; Def. Ex. 23; Def. Ex. 1 at 1 ("If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."); *see also* BLACK'S DICTIONARY 7TH ED. at 428 (A "default" is defined as "The omission or failure to perform a legal or contractual duty; esp, the failure to pay a debt *when due*." (emphasis added)).

In his response brief, Plaintiff argues that he was not in default on the Loan, because, he argues, Defendant misapplied the payments he did make, and failed to allocate the payments properly to principal and interest. Even if the Plaintiff's arguments were true that Defendant "misapplied" the payments, that would affect only the amount of the outstanding principal balance due on the Loan, not whether the Plaintiff was in "default" on the Loan. Under the express terms of the Note, the

---

[6] Defendant argues that the undisputed records indicate that Plaintiff's Loan was already in default before he failed to make the payments on January 15, 2010, and February 15, 2010, because he was at least four payments short on the Loan as of February 16, 2010. *See* Def. Ex. 5, 6; *see also* Def. Ex. 12 at 186 and 221 (indicating that Plaintiff made some payments after the 15th of the month). The Court need not discuss Plaintiff's entire payment history, because it is undisputed that he failed to make the required monthly payments in January and February of 2010.

Plaintiff's failure to make even one payment on the date that it was due–which was the 15th of each month–would result in a default. Plaintiff has not cited to any evidence in the record disputing the Defendant's evidence that he missed payments that were due under the terms of the Note before the publication on March 8, 2010, regarding the pending foreclosure. Thus, he has not cited to any evidence to establish a genuine dispute of fact as to whether he made every monthly payment on time, which would be required for him to establish that he was not in default, the basis of his claim of attempted wrongful foreclosure.

Accordingly, because the Plaintiff has failed to cite to evidence in the record establishing that he made all payments on time and was not in default, the undersigned **RECOMMENDS** that the Defendant's Motion for Summary Judgment [104] be **GRANTED** as to Plaintiff's claim of attempted wrongful foreclosure in Count One of the Second Amended Complaint.

2.   *False Light Invasion of Privacy*

In Count Two of the Second Amended Complaint, Plaintiff asserts a claim for False Light Invasion of Privacy. Sec. Am. Comp. [69] at ¶¶ 84-86. He alleges that, "OLS knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, *to wit*, that Plaintiff

32

was in default under the Loan, and that Defendant OLS and Trustee had the power to foreclose by means of a valid enforceable assignment."[7] *Id.* at ¶ 85. Plaintiff alleges that these "written advertisements" "placed Plaintiff in a false light, all of which caused injury and damages to the Plaintiff." *Id.* at ¶ 86.

Under Georgia law, a claim based on invasion of privacy can be based on one of four types:

> (1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation for the defendant's advantage, of the plaintiff's name or likeness.

*Yarbray v. Southern Bell Telephone & Telegraph Co.*, 409 S.E.2d 835, 836 (Ga. 1991).

Plaintiff in this case contends that OLS engaged in "publicity which places the plaintiff in a false light in the public eye." In order to establish a false light invasion of privacy claim, a plaintiff must establish that a defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person. Restatement (Second)

---

[7] The Court has previously dismissed the Plaintiff's claim of false light invasion of privacy to the extent it is based on the Plaintiff's theory of an invalid assignment or the Defendant's lack of authority to foreclose on the Property. *See* Order dated September 12, 2014 [126].

of Torts § 652E; *see also Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008).

Plaintiff argues that the Defendant published a "falsehood" about him when it

published a notice of foreclosure indicating that he was in default on the Loan. As

discussed above in connection with Plaintiff's claim of attempted wrongful

foreclosure, the undisputed evidence in the record establishes that Plaintiff missed at

least a few payments on the Loan prior to March 8, 2010, and thus, under the express

terms of the Note, he was in default on the Loan at the time of the publication.

Accordingly, because the Plaintiff has failed to cite to evidence in the record

establishing that he made all payments on time and was not in default, the undersigned

**RECOMMENDS** that the Defendant's Motion for Summary Judgment [104] be

**GRANTED** as to Plaintiff's claim of false light invasion of privacy in Count Two of

the Second Amended Complaint.

### 3.    *Breach of Contract*

In Count Three of the Second Amended Complaint, Plaintiff asserts a claim for

breach of contract, pursuant to O.C.G.A. §§ 13-6-1 *et seq*. Sec. Am. Compl. [69] at

¶¶ 87-90. Plaintiff alleges that "Defendant OLS's arbitrary and capricious violation

of the terms of the Loan and Note, and the resulting attempted foreclosure of the

Home, constituted a breach by Defendant OLS." *Id.* at ¶ 89.

34

Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom. *See Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278 (1996)*; Turner v. Connor*, 192 Ga. App. 348, 349 (1989); *Cartin v. Boles*, 155 Ga. App. 248, 252 (1980); *see also TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F.Supp. 1572, 1583 (N.D.Ga. 1995) (Evans, J.). Furthermore, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. A plaintiff must establish that a defendant breached a specific provision in the contract in order to establish a claim for breach of contract. *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because American Casual cannot point to any contractual provision that Moe's breached by failing to act in the manner set forth above, American Casual cannot state a claim for breach of contract based on these allegations.").

Defendant OLS argues that Plaintiff's breach of contract claim must be dismissed because the undisputed evidence establishes that Defendant OLS was not a party to the actual contract, and was merely acting as the servicer of the Loan. *See* Def. Br. at 29 (relying on its argument made in its Motion to Dismiss that the breach

of contract claim should be dismissed on the ground that OLS was a disclosed agent of the principal); Def. Reply Br. [115] at 7. Defendant argues that the undisputed evidence establishes that it was at all times the servicer of the Loan, and thus was a disclosed agent of the principal, which was Upland and/or the Trustee. Because the contract was between Plaintiff and Upland, and later, after Upland assigned its interest in the Note and the Security Deed to the Trustee, between Plaintiff and the Trustee, the Plaintiff cannot maintain his claim for breach of contract against OLS.

It is well settled in Georgia law that a disclosed agent is not liable for any breach of the contract of the principal. *See* O.C.G.A. § 10-6-53 ("The form in which the agent acts is immaterial; if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal."); *see also Cuba v. Hudson & Marshall, Inc.*, 445 S.E.2d 386, 388 (Ga. Ct. App. 1994) ("[W]e note that even if there were an enforceable contract for the sale of Property No. 230, plaintiffs' remedy would be against [the principal]; defendants as agents of a disclosed principal would not be liable for the principal's breach of contract.").

In the Report and Recommendation issued on July 24, 2014, the undersigned addressed the Defendant's argument in its second Motion to Dismiss [78] that the Plaintiff's breach of contract claim should be dismissed on the ground that OLS was a disclosed agent of the principal. *See* Report and Recommendation [113]. The

undersigned declined to recommend dismissal of the claim at that time, and stated as follows:

> As discussed, the Plaintiff alleges in the Second Amended Complaint that Upland notified him in a letter that the new servicer of the Loan would be OLS, and that OLS also sent him a separate letter in which it introduced itself as the new servicer for the Loan. Sec. Am. Comp. at ¶¶ 21-22. Thus, it appears that Plaintiff's allegations would suggest that it was disclosed to him by both Upland and OLS that OLS was acting as the servicer of the Loan, and that OLS was not acting as the principal or owner of the Note and the Security Deed. However, while this may be the most logical inference from the alleged facts, the Court cannot definitively say that this is the only plausible inference, or that Plaintiff can prove no set of facts to establish a breach of contract claim against Defendant. Indeed, Plaintiff contends that he "squarely disputes that Defendant OLS was a disclosed agent."

> Moreover, in the unique procedural posture of this case, there is no reason at this time to dismiss this claim based on these borderline allegations. Discovery has been completed, and Defendant has already filed a motion for summary judgment requesting judgment in favor of Defendant on this claim on the basis of the actual evidence adduced in discovery. Given the debatable quality of the allegations and the lack of any efficiency to the Court or parties in considering this claim on the basis of the Plaintiff's allegations alone, the Court finds that the appropriate course is to assume the sufficiency of those allegations for the purpose of resolving the instant motion, but revisit the issue in the context of Defendant's summary judgment motion.

*Id.* at 27-28 (footnote omitted).

The Defendant's argument is now before the Court on its Motion for Summary Judgment, and the parties have had an opportunity to present evidence relevant to the issue of whether OLS was a disclosed agent on the Loan. As set forth above, it is

undisputed that Plaintiff entered into a Note and Security Deed with Upland on or about December 7, 1998, to secure the Loan on the subject Property. Def. SMF at ¶¶ 1-2; Def. Ex. 1, 2. It is further undisputed that, on or about May 6, 2005, Defendant OLS began servicing the Loan and sent Plaintiff numerous account statements, approximately one per month. Def. SMF at ¶ 6. Plaintiff has not cited to any evidence in the record that OLS ever represented to Plaintiff that it had been assigned Upland's interest in the Note and the Security Deed or that it otherwise was the principal on the Loan contract with Plaintiff. Instead, the undisputed evidence indicates that OLS at all times represented that it was merely the servicer of the Loan.

In his brief in response to the Defendant's Motion for Summary Judgment, the Plaintiff does not address the Defendant's argument that his breach of contract claim fails because the evidence indicates that OLS acted at all times as the servicer for the Loan, and thus was the disclosed agent of the principal. In Plaintiff's response to the Defendant's argument in its second Motion to Dismiss, he argued that he "squarely disputes that Defendant OLS was a disclosed agent." Pl. Br. [81] at 23. Plaintiff argued that "[o]n the current record, there is simply no evidence that Defendant OLS did not become a de facto, if not an actual principal, as to the Plaintiff, when it assumed the loan servicing duties." *Id.* at 22. Plaintiff argued further that it is the burden of the agent to prove both the existence of the agency relationship as well as

knowledge of the agency by the opposite party. *Id.*; *see Chambliss v. Hall*, 147 S.E.2d 334, 338 (Ga. Ct. App. 1966) ("If the agent would avoid personal liability, the duty is on him to disclose his principal, and the agent is individually liable if he fails to disclose his agency and the identity of his principal.").

The undersigned finds that, based on the undisputed evidence in the record, the fact that OLS was merely the servicer of the Loan, and not the principal to the contract, was fully disclosed to Plaintiff. Although Plaintiff cited the *Chambliss* case for the proposition that the agent must disclose both the agency and the identity of the principal, the undersigned notes that, in *Chambliss*, it was the agent who entered into the contract with the plaintiff in that case, not the alleged principal. *See id.* at 337. In this case, it is undisputed that Plaintiff entered into the contract with Upland, who was the principal on the contract until it assigned its interest in the Note and the Security Deed to the Trustee. While the parties dispute the effective date of that Assignment from Upland to the Trustee, the Plaintiff has cited to no evidence that Defendant OLS ever held itself out as the principal on the contract, or otherwise failed to disclose its status as the servicer of the Loan.

As one Judge in the Middle District of Georgia has held in granting summary judgment on a similar claim for breach of contract, a loan servicer is generally not considered a party to a mortgage note in the absence of evidence of a specific contract

between the servicer and the borrower. *James v. Litton Loan Servicing, L.P.*, No.

4:09-CV-147 CDL, 2011 WL 59737, at *11 (M.D. Ga. Jan. 4, 2011).

> Plaintiffs did not, however, allege that they had a contract with Litton,
> nor did they point to any evidence of such contract. As a loan servicer,
> Litton is not a party to or an assignee of the Note itself. In the absence of
> evidence of a contract between Plaintiffs and Litton, Plaintiffs' breach
> of contract claim fails.

*Id.* at *11; *see also Shugart v. Ocwen Loan Servicing, LLC*, Case No. 2:09–cv–1123,

2010 WL 3894155, at *2 (S.D.Ohio Sept. 28, 2010) ("Plaintiff alleges Ocwen is a

servicer of the note and mortgage, not a party to or holder of or assignee of the note

or mortgage. Plaintiff provides multiple examples of Ocwen's alleged violations of

the language of the note and mortgage, but never alleges that Ocwen was bound by

the note and mortgage."). For that reason, Defendant OLS is entitled to summary

judgment on Plaintiff's breach of contract claim.

Although Plaintiff did not make any argument in his response brief regarding

the status of Defendant as a "de facto principal" to the Loan contract, in his objection

to the Report and Recommendation on Defendant's second Motion to Dismiss, the

Plaintiff argued that "[t]he extent to which Ocwen disclosed the Trustee as a principal,

or the extent to which Ocwen itself was a principal immediately after the 'assignment'

from Upland, or the extent to which the principal's responsibilities were assigned to

Ocwen are all fact-bound issues, inappropriate for summary adjudication." Pl. Obj.

[117] at 11-12. In support of that contention, Plaintiff cited to, *inter alia*, *Redi-Floors, Inc. v. Sonenberg Company*, 563 S.E.2d 505 (Ga. App. 2002). As in the *Chambliss* case, in the *Redi-Floors* case, the agent was the party who entered into the contract with the plaintiff, purportedly on behalf of the principal. *See Redi-Floors*, 563 S.E.2d at 506 ("An agent who makes a contract without identifying his principal becomes personally liable on the contract. If the agent wishes to avoid personal liability, the duty is on him to disclose his agency, and not on the party with whom he deals to discover it." (internal quotes and citations omitted)). In this case, unlike the plaintiffs in both the *Chambliss* case and the *Redi-Floors* case, Plaintiff has not presented any evidence that Defendant OLS ever entered into any contract with Plaintiff. Instead, the undisputed evidence indicates that Plaintiff executed the Loan contract with Upland, and OLS acted only as the Loan servicer.

In Plaintiff's objection to the Report and Recommendation on Defendant's second Motion to Dismiss, he also cited to other cases outside this circuit as support for his argument that Defendant OLS should be held liable as a principal on the Loan for the purpose of Plaintiff's breach of contract claim.[8] *See* Pl. Obj. [117] at 12-13; *see, e.g., In re Ocwen Loan Servicing, LLC*, 491 F.3d 638, 645 (7th Cir. 2007); *Kesten*

---

[8] Plaintiff does not preserve this argument in his response to Defendant's Motion for Summary Judgment, nor does he cite the cases discussed herein. Nevertheless, the undersigned offers this analysis for the benefit of the District Court.

*v. Ocwen Loan Serv., LLC*, 2012 U.S. Dist. LEXIS 16917 (N.D. Ill. Feb. 9, 2012). In

*in re Ocwen*, the Seventh Circuit held:

> At least so far as bears on this case, servicing refers to the exercise of
> rights that are conferred by a partial assignment of a mortgage by the
> mortgagee. Instead of assigning the entire mortgage to Ocwen, the
> mortgagee in this case assigned some of the rights created by the
> mortgage contract–the "servicing rights"–to Ocwen, which according to
> the complaint proceeded to violate its contractual obligations. It is no
> different than if the original mortgagee, or an assignee of the entire
> mortgage, had violated the terms of the mortgage or defrauded the
> mortgagor. . . . If an original mortgagee can be sued under state law for
> breach of contract, so may the partial assignee if he violates the terms of
> the part of the mortgage contract that has been assigned to him.

*In re Ocwen Loan Servicing, LLC*, 491 F.3d at 645. But in this case, Plaintiff has not

presented any evidence that Defendant OLS was even a "partial assignee" of the Loan

contract. That OLS represented itself as "servicer" on behalf of the Trustee did not,

in itself, establish that OLS had been assigned rights and obligations under the

contract itself.[9]

Furthermore, even if Defendant OLS were considered a party to the Loan

contract by virtue of its status as the servicer of the Loan, Defendant would be entitled

to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not

presented evidence creating a genuine issue of fact as to whether OLS breached any

---

[9] Moreover, the *in re Ocwen* case does not apply Georgia law. Judge Land's
decision in *Litton* is therefore more applicable to the resolution of this case.

specific terms of the Loan contract. In his response brief, Plaintiff argues that Defendant OLS breached the Loan agreement in three ways: it made an "improper calculation of late payment fees," an "improper payment of ad valorem taxes," and an "improper payment of insurance premiums." Pl. Br. [109] at 22-23. Plaintiff, however, has not presented evidence to create a genuine issue of fact as to whether OLS breached any of these alleged provisions of the Loan agreement.

With respect to the Plaintiff's claim that OLS committed an "improper calculation of late payment fees," the Plaintiff has not cited to evidence in the record supporting that claim. *See* Pl. Br. at 22-23. Plaintiff does not state which provision of the Loan agreement that OLS allegedly breached, nor does he otherwise cite to any evidence in the record that would create a genuine issue of material fact as to whether Defendant committed an "improper calculation of late payment fees." *See id.* Indeed, Defendant has presented evidence based on the records Plaintiff himself produced in discovery that show nearly all of Plaintiff's payments to be late. *See* Def. Ex. 5. Plaintiff does not dispute this evidence. *See* Pl. Resp. SMF at ¶ 8. Plaintiff entirely fails to explain or support how the assessment of late payment fees was improper given these facts.[10]

_____

[10] In his response, Plaintiff does not specifically argue that Defendant breached any contract by failing to apply more payments to principal. But because this is a major thrust of Plaintiff's overall complaint, the Court has considered the question,

Plaintiff also claims that OLS breached the Loan agreement when it made an "improper payment of ad valorem taxes." Pl. Br. at 22. Plaintiff also does not cite to the particular provision of the Loan agreement that applies to the payment of "ad valorem taxes." The Security Deed provides, in relevant part, as follows:

> Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. . . . If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. . . . Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting repayment.

Def. Ex. 2 at ¶¶ 4, 7.

────────────────────

and finds that this theory does not support the breach of contract claim either. Plaintiff identifies no particular contractual provision that sets forth how payments must be allocated between principal and interest. Plaintiff's argument appears to be that, because many of his payments were allocated only to interest, that in itself is evidence of a breach. But that in itself does not prove liability, particularly when, as the Defendant shows, nearly all of Plaintiff's payments were late, generating additional fees and interest charges. Plaintiff has identified no provision that required him to receive credit for principal for any particular payment on these facts.

According to Defendant, the undisputed evidence in this case reflects that Plaintiff failed to pay taxes owed to the City of Atlanta in 2005, resulting in a civil action brought by the City of Atlanta against Plaintiff and his wife. Def. SMF at ¶ 23; Def. Ex. 19 at PHI-SET-VIII-00023. Plaintiff, on the other hand, contends that the document at issue reflects a "Solid Waste Fi. Fa. for amounts owed for garbage collection." Pl. Resp. SMF at ¶ 23. Plaintiff contends that he subsequently paid the amount of $1004.97 owed to the City of Atlanta for solid waste collection. Pl. Resp. SMF at ¶ 23; Def. Ex. 19 at PHI-SET-VIII-00005; Pl. Decl. at ¶ 8.

Although Plaintiff argues that the solid waste charge assessed to him was not a "tax," he does not explain why that distinction is material to his breach of contract claim. *See* Pl. Br. [109] at 23. As discussed, the Security Deed expressly requires the Plaintiff to "pay all taxes, assessments, charges, fines and impositions attributable to the Property," which would appear to include the charge labeled a "solid waste assessment" by the City of Atlanta. Def. Ex. 2 at ¶ 4. Thus, regardless of whether that payment is considered a "tax," or an "assessment," the Plaintiff was required under the terms of the Security Deed to make that payment to the City of Atlanta, and the terms of the Security Deed permit OLS to pay the charge and take any other actions necessary to protect the lender's interest in the Property. Moreover, Plaintiff does not dispute that he received a refund on his real estate taxes in 2010 and 2011 because

45

Defendant had already paid the taxes due. Def. SMF at ¶ 24; Def. Ex. 10. Thus, Plaintiff has failed to cite to evidence in the record establishing either that Defendant OLS breached the terms of the Loan agreement, or that Plaintiff suffered damages as a result.

Finally, Plaintiff contends that OLS breached the Loan agreement by making an "improper payment of insurance premiums." Pl. Br. at 23. Again, Plaintiff has not cited to the specific provision of the Loan agreement that OLS allegedly violated. The Security Deed provides, in relevant part, as follows:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires Insurance. . . . If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

Def. Ex. 2 at ¶ 5.

It is undisputed that, during the Defendant's servicing of the Plaintiff's Loan, Defendant OLS charged $53.52 in net charges for placement of hazard insurance on the Property including charges of $49.00 on April 30, 2009; $18.14 on June 2, 2005; and a credit of $13.22 on June 10, 2005. Def. SMF at ¶ 21; Def. Ex. 4. Moreover, the evidence in the record, including the documents that Plaintiff produced to Defendant

during discovery, show a gap in insurance coverage for one year. Def. Resp. SMF at ¶ 10; Def. SMF at ¶¶ 19-21, 40; Def. Ex. 11 at PHI-SET-VII 00005. Plaintiff also produced an application for insurance on the Property which Yvonne Phillips signed on April 6, 2009, in which she stated the "[e]xpiration date of present or prior coverage" was "3/15/2008," and that the reason for applying for coverage was "because lapsed for so long." Def. SMF at ¶ 40; Def. Ex. 11 at PHI-SET-VII 00005. Plaintiff admits that the insurance coverage was allowed to lapse, but he contends that the referenced "lapse" was for no longer than one week. Pl. Resp. SMF at ¶ 40; Pl. Decl. at ¶ 9. Defendant concedes that it placed insurance on Plaintiff's Property and charged $53.32 to do so, but argues that Plaintiff has admitted that he let his insurance on the Property lapse. Def. Resp. SMF at ¶ 10; Pl. Decl. at ¶ 9.

Thus, Plaintiff has admitted that he allowed the insurance coverage to lapse on the Property; that admission establishes that he failed to comply with the provision of the Security Deed requiring him to maintain proper insurance coverage on the Property. Although he contends that the lapse in insurance coverage was for only one week (which contention is not supported by the documents in evidence), he has not explained why the length of the lapse would be material to his claim of breach of contract. Under the terms of the Security Deed, if the Plaintiff failed to maintain proper insurance coverage on the Property, the Lender was permitted to obtain

47

insurance coverage on the Property "to protect Lender's rights in the Property." Def. Ex. 2 at ¶ 5. Thus, the Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether OLS breached the terms of the Loan agreement when it obtained insurance coverage on the Property.

Moreover, the Plaintiff's reliance on the Consent Judgment entered into by OLS in a separate case also does not provide evidence to support his claims asserted in this case. *See* Pl. Br. [109] at 17-18 (citing to the Consent Judgment entered December 16, 2013, in a case brought by the Consumer Financial Protection Bureau ("CFPB"), and arguing that "Ocwen's settlement of the CFPB case, which involved strikingly similar allegations, lends substantial support to Plaintiff's position here that there are genuine issues of material fact to be tried."). The fact that OLS may have entered into a settlement agreement in another case in which it was also accused of committing alleged errors in the servicing of mortgage loans is not evidence that it committed errors with respect to the Plaintiff's Loan in this case.

Accordingly, for all these reasons, the undersigned **RECOMMENDS** that the Defendant's Motion for Summary Judgment [104] be **GRANTED** as to Plaintiff's breach of contract claim in Count Three of the Second Amended Complaint.[11]

---

[11] The Court has held several discussions with the parties on the topic of class certification discovery, including oral argument on October 16, 2014. *See* Minute Orders dated August 29, 2014 [122], and October 16, 2014 [134]. Because the Court

4.  *Plaintiff's Remaining Claims*

In the Second Amended Complaint, Plaintiff has asserted three "counts" that are not substantive causes of action, but requests for specific remedies under Georgia law. Sec. Am. Compl. [69] at ¶¶ 91-103. In Count Four, he requests punitive damages. *Id.* at ¶¶ 91-96. In Count Five, he requests expenses of litigation. *Id.* at ¶¶ 97-99. Finally, in Count Six, he requests both preliminary and permanent injunctive relief. *Id.* at ¶¶ 100-103.

Because the undersigned is recommending that the Defendant's Motion for Summary Judgment be granted as to the Plaintiff's substantive claims, the undersigned **RECOMMENDS** that the Defendant's Motion for Summary Judgment [104] be **GRANTED** as to Plaintiff's claims asserted in Counts Four, Five, and Six of the Second Amended Complaint.

---

finds that Plaintiff has failed to present sufficient evidence to establish the Defendant's liability on his individual claims, the question of class certification is moot and the Court declines to permit any further discovery on this question for that reason. In the event that the District Court does not adopt this Report and Recommendation and denies the Defendant's Motion for Summary Judgment with respect to any of the Plaintiff's claims, the Plaintiff may move to re-open class discovery at that time. In doing so, Plaintiff should be prepared to proffer how the requested discovery will be reasonably calculated to lead to evidence that would support class certification, especially given the highly account-specific factual issues upon which Plaintiff's liability case turns.

### III.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, Defendant's Motion to Strike [116] is **GRANTED**.

Furthermore, **IT IS RECOMMENDED** that the Defendant's Motion for Summary Judgment [104] be **GRANTED** as to all counts of the Plaintiff's Second Amended Complaint.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO ORDERED and RECOMMENDED** this 29th day of October, 2014.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE