IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEFFREY PHILLIPS, On Behalf of Himself and All Other Persons in the State of Georgia who are Similarly Situated,<br><br>     **Plaintiff,**<br><br> **v.**<br><br>OCWEN LOAN SERVICING, LLC,<br><br>     **Defendant.** | **1:12-cv-3861-WSD** |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Jeffrey Phillips's ("Plaintiff" or "Phillips") Objections [139] to Magistrate Judge Justin S. Anand's Final Report and Recommendation ("R&R") [135]. The R&R recommends granting Defendant Ocwen Loan Servicing, LLC's ("Defendant" or "OLS") Motion for Summary Judgment [104]. Also before the Court is Plaintiff's Motion for a Hearing [141] on his Objections.[1]

---

[1] The Court determines that a hearing on Plaintiff's Objections is not necessary and Plaintiff's Motion for a Hearing is denied. See LR 7.1E, NDGa. ("Motions will be decided by the court without oral hearing, unless a hearing is ordered by the court.").

## I.   BACKGROUND

A.   <u>Facts</u>

On December 7, 1998, Plaintiff obtained a loan (the "Loan") from

HomeAmerican Credit, Inc., d/b/a/ Upland Mortgage ("Upland") and executed in

favor of Upland a promissory note (the "Note"), in the amount of $86,400.  (Note

[104.4]).  The Note provides, in pertinent parts:

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of 10.890%.
. . .

**3.  PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 15th day of each month beginning on January 15, 1999.
I will make these payments every month until I have paid all of the principal and interest and any other charges . . . that I may owe under this Note.  My monthly payments will be applied to interest before principal. . . .
. . .
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $815.64.
 . . .

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**
 . . .
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**
  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(Note ¶¶ 2-3, 6).

Repayment of Plaintiff's loan was also secured by a deed (the "Security Deed") (together with the Note, the "Loan Agreement") to real property located at 728 Kennolia Drive, Atlanta, Georgia (the "Property").  (Security Deed [104.5]). The Security Deed was executed in favor of Upland.  (Id.).  The Security Deed provides, in pertinent parts:

  **3.  Application of Payments.**  . . . [A]ll payments received . . . shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable [for escrow items, including taxes and insurance]; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

  **4.  Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property . . . .

  **5.  Hazard or Property Insurance.**  . . . If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property . . . .

  . . .

  **7.  Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security [Deed] . . . then Lender may do and pay for whatever is

necessary to protect the value of the Property and Lender's rights in the
Property. . . .

. . .

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial
interest in the Note (together with this Security [Deed]), may be sold
one or more times without prior notice to Borrower. A sale may result
in a change in the entity (known as the "Loan Servicer") that collects
monthly payments due under the Note and this Security [Deed]. There
also may be one or more changes of the Loan Servicer unrelated to a
sale of the Note. . . .

. . .

**21. Acceleration; Remedies**. Lender shall give notice to Borrower
prior to acceleration following Borrower's breach of any covenant or
agreement in this Security [Deed] . . . . The notice shall specify:
(a) the default; (b) the action required to cure the default; (c) a date, not
less than 30 days from the date the notice is given to Borrower, by
which the default must be cured; and (d) that failure to cure the default
on or before the date specified in the notice may result in acceleration
of the sums secured by this Security [Deed] and sale of the Property.
. . . If the default is not cured on or before the date specified in the
notice, Lender, at its option, may require immediate payment in full of
all sums secured by this Security [Deed] without further demand and
may invoke the power of sale granted by Borrower . . . .

(Security Deed ¶¶ 3-5, 7, 19, 21).

In May 2005, OLS became the servicer of Plaintiff's loan. (Def's Statement

of Material Facts ("SOMF") at ¶ 6). On May 6, 2005, OLS sent Plaintiff an

account statement, which states:

Please note that you have a Simple Interest Loan that accrues interest
from the last date that interest was paid through the date your next

> payment is received.  When your next payment is received, the
> interest amount will be calculated from the date listed in the "Interest
> Paid Through Date" field (listed above) through the date that your
> payment was received.  It is important to ensure that your payments
> are received timely and consistently so that your accrued interest each
> period is limited to approximately one month's interest.  If you elect
> to take advantage of your grace period, please note that this will cause
> a greater portion or all of your payment to be applied to interest.

(05/06/2005 Account Statement [104.6]).

On October 30, 2009, OLS offered Plaintiff a loan modification.  (Pl's

SOMF ¶ 11).  Plaintiff did not sign the modification agreement.

On November 20, 2009, OLS sent Plaintiff a Notice of Default, which states

that Plaintiff's "mortgage payments are past due, which puts [Plaintiff] in default

of [his] loan agreement."  (Notice of Default [140.1] at 1).[2]  The Notice of Default

also states that, as of November 20, 2009, Plaintiff owes $12,068.64, which

includes past due principal and interest of $2,446.92, that the "debt is owed to

[OLS] as the owner or servicer of your home loan and mortgage," and that

payment is due by December 20, 2009.  (Id.).  The Notice of Default provides:

> Failure to bring your account current may result in our election to
> exercise our right to foreclose on [the P]roperty.  Upon acceleration,
> your total obligation will be immediately due and payable without
> further demand.  . . .

---

[2]    The Notice of Default is referenced in the Notice of Foreclosure Sale
attached to Plaintiff's Second Amended Complaint, and Plaintiff testified at his
deposition that he received the November 20, 2009, Notice of Default.  (See SAC
at Ex. E; Phillips Dep. 195-196).

. . .

> After acceleration of the debt, but prior to foreclosure, you may have
> the right to reinstate the mortgage loan, depending on the terms of the
> note and mortgage. . . . Payments received that are less than the
> amount required to reinstate the mortgage loan will be returned, and
> will not stop any foreclosure proceedings that have begun. . . .

(Notice of Default at 2).

On December 21, 2009, Plaintiff sent a payment, in the amount of $855, to

OLS, and OLS returned the payment to Plaintiff.  (Def's SOMF ¶ 34).  Plaintiff did

not make another loan payment to OLS until March 9, 2010.  (Id. ¶ 35).

On January 16, 2010, OLS offered Plaintiff another loan modification and

sent him a Proposed Modification Agreement ("PMA").  (Def's SOMF ¶ 25; PMA

[104.34]).  The PMA states:

> In order to accept this modification on your loan, you must complete
> ALL of the following steps on or before 1/29/10, ("Due Date"):
>
> 1.   SIGN the bottom of the Agreement . . . .
>
> 2.   FAX the fully executed Agreement to [OLS]
>
> 3.   PAY the full initial payment in the amount of:  $1,022.82
>
> 4.   NEW MONTHLY PAYMENT:
>      Principal and Interest Payment:              $857.00
>      Escrow Payment:                              $165.82
>      Total (which may or may not include escrow): $1,022.82
>                                                   **starting on** 3/15/10
>
>  . . .

6

> . . . If ALL of the items above are not completed by the Due Date, the
> Agreement shall have no force or effect and any down payment
> received will be returned to you.  Please be advised that [OLS] will
> not delay, postpone or otherwise stop any collection efforts until ALL
> of the steps above have been completed.

(PMA at 1).  Plaintiff did not sign the PMA.  (Def's SOMF ¶ 26).

On March 1, 2010, Weismann Nowack Curry & Wilco, P.C., on behalf of "Bank of America, National Association, as Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of Credit Suisse Seasoned Loan Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1" (the "Trustee"), sent Plaintiff a Notice of Foreclosure Sale ("NFS").  (NFS [69.5] at 1).  The NFS states that the Trustee is the holder of Plaintiff's Note and Security Deed, that OLS is the entity with full authority to negotiate, amend and modify the terms of Plaintiff's mortgage, that Plaintiff had defaulted on his loan obligations, and that, if Plaintiff did not pay the entire balance of his loan, the Trustee would conduct a foreclosure sale of the Property.  (Id.).

On March 8, 15, 22, and 29, 2010, OLS published in the Fulton County Daily Report a Notice of Sale Under Power ("NSUP"), which states that the Trustee will conduct a foreclosure sale of the Property on the first Tuesday in April, 2010.  (NSUP [104.37]).  The NSUP states that

> the debt secured by [the] Security Deed has been and is hereby
> declared due because of, among other possible events of default,

failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed.  The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale . . . .

. . .

The sale will be conducted subject . . . to final confirmation and audit of the status of the loan with the holder of the [S]ecurity [D]eed.

(NSUP [104.37]).

On March 9, 2010, Plaintiff mailed a payment to OLS, and OLS deposited the payment on March 11, 2010.  (Pl's Resp. to Def's SOMF ¶ 35).

On March 10, 2010, Upland assigned its rights under the Security Deed to the Trustee.  (Assignment [104.35]).[3]

On May 3, 2010, Plaintiff, represented by counsel, filed a petition for relief under the United States Bankruptcy Code.  (Def's SOMF ¶ 30).  In the Bankruptcy Action, Plaintiff stated, under penalty of perjury, that as of May 3, 2010, he was $5,000 in arrears on his loan, and he did not indicate that he disputed the amount of the debt.  (Id. ¶ 31).

On May 12, 2010, OLS filed in the Bankruptcy Action its Proof of Claim, which states that the arrearage on Plaintiff's loan was $22,064.00, including

---

[3]      The Assignment states that it "is made and entered into as of the 30th day of November, 2004," but it is dated March 10, 2010.

$5,709.48 in missed monthly payments.  (Id. ¶ 32).  Plaintiff did not object to

OLS's Proof of Claim.  (Id. ¶ 33).

On August 20, 2010, Plaintiff's Bankruptcy Petition was dismissed because

Plaintiff failed to make payments under his proposed bankruptcy plan.  (Pl's Resp.

to Def's SOMF ¶ 30).

It is undisputed that OLS has not conducted a foreclosure sale of the

Property, that Plaintiff continues to reside at the Property, and that Plaintiff has not

made any loan payments since March 9, 2010.  (Def's SOMF ¶¶ 36-38).

B.     Procedural History

On November 16, 2010, Plaintiff, proceeding *pro se*, filed his original

complaint [1.1 at 2-7] against OLS in the Superior Court of Fulton County,

Georgia.[4]  Plaintiff sought to remove the cloud on his title to the Property caused

by his mortgage, to recover all loan payments he made after Upland filed for

bankruptcy protection in 2005, and to recover damages for alleged fraud and

misrepresentation.

On October 5, 2012, after retaining counsel, Plaintiff filed his First

Amended Complaint ("FAC") [4], seeking to bring a putative class action and

asserting additional claims, including for violation of the Fair Debt Collection

---

[4]      No. 2012CV193422.

Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., wrongful attempted foreclosure, false light invasion of privacy, punitive damages, expenses of litigation, and injunctive relief.[5]

On November 2, 2012, OLS removed the Fulton County Action to this Court based on federal question jurisdiction and the Class Action Fairness Act [1].

On December 12, 2012, OLS moved to dismiss Plaintiff's FAC for failure to state a claim [13].

On September 10, 2013, the Court dismissed most of Plaintiff's claims, but allowed his claims for wrongful attempted foreclosure and false light invasion of privacy to proceed.  Plaintiff's claims for punitive damages, attorney's fees and costs, and injunctive relief were also allowed to proceed to the extent Plaintiff sought those remedies in connection with his claims for wrongful attempted foreclosure and false light invasion of privacy.  (Order of Sept. 10, 2013 [51]).

---

[5]   Plaintiff asserted claims for: fraud and deceit; negligence; mutual departure; equitable accounting; breach of fiduciary duty; violation of the FDCPA; promissory estoppel; wrongful attempted foreclosure; libel of title to land; false light invasion of privacy; intentional infliction of emotional distress; punitive damages; expenses of litigation; and injunctive relief.  The FAC also added Ocwen Financial Corporation ("OFC"), OLS's parent company, and the Trustee as defendants in this action.  On September 10, 2013, the Court dismissed Plaintiff's claims against OFC and the Trustee because Plaintiff failed to allege any facts to support wrongdoing by OFC or the Trustee.  (Order of Sept. 10, 2013 [51]).

On October 30, 2013, Plaintiff moved for leave to file a second amended complaint, which the Magistrate Judge granted only to the extent Plaintiff sought to add a new claim for breach of contract and to replead his claims for wrongful attempted foreclosure, false light invasion of privacy, and claims for relief.[6]

On December 3, 2013, Plaintiff filed his Second Amended Complaint ("SAC") [69], asserting claims for: wrongful attempted foreclosure (Count 1); false light invasion of privacy (Count 2); breach of contract (Count 3); punitive damages (Count 4); expenses of litigation (Count 5); and preliminary and permanent injunctive relief (Count 6).[7]

On December 20, 2013, OLS moved to dismiss (1) the portions of Plaintiff's claims in his SAC that are based on Plaintiff's newly-alleged theories that the

---

[6]     The Magistrate Judge denied Plaintiff leave to amend his claim for fraud and deceit because that claim was dismissed with prejudice in the Court's September 10th Order.

[7]     Plaintiff also repleaded his class action allegations to assert claims on behalf of a class of owners of real property located in the State of Georgia and secured by a mortgage loan serviced by OLS, who: (1) were assessed any charges not authorized by their loan terms, and which have not been subsequently cancelled or forgiven; (2) had hazard insurance improperly "force-placed" on their property; (3) had mortgage loans served by OLS which were either in default or treated as being in default by OLS; or (4) had one or more foreclosure notices published regarding their homes by OLS or OLS made any other publication of alleged default to third parties; and (5) whose homes were not foreclosed or attempted foreclosures were later withdrawn.  (SAC ¶ 45).

Assignment was not valid and that OLS and the Trustee lacked authority to

foreclose on the Property; and (2) Plaintiff's breach of contract claim.

On May 19, 2014, OLS filed its Motion for Summary Judgment [104].

On September 12, 2014, the Court dismissed Plaintiff's claims for wrongful

attempted foreclosure and false light invasion of privacy to the extent they were

based on perceived defects in the Assignment and Defendant's alleged lack of

authority to foreclose.  The Court found that Plaintiff cannot state a claim for relief

based on his assertions that the Assignment is not valid and that OLS and the

Trustee lacked authority to foreclose on the Property because these statements,

even if false, do not concern Plaintiff's financial condition.  The Court found that

Plaintiff had alleged sufficient facts to state a plausible claim for breach of contract

and declined to determine, at the motion to dismiss stage, whether OLS's agency

was disclosed to Plaintiff or whether OLS was acting as a principal or owner of the

Note and Security Deed.  (Order of Sept. 12, 2014 [126]).

On October 29, 2014, Magistrate Judge Anand issued his Final R&R [135],

recommending that the Court grant OLS's Motion for Summary Judgment.  The

Magistrate Judge concluded that Defendant is entitled to summary judgment on

Plaintiff's claims for wrongful foreclosure and false light invasion of privacy

because the undisputed facts show that Plaintiff failed to make his monthly

payments on a timely basis, as required by the Note and Security Deed, and

Plaintiff was thus in default on his loan obligations at the time the NSUP was

published.  The Magistrate Judge concluded that Defendant also is entitled to

summary judgment on Plaintiff's breach of contract claim because the undisputed

facts show that OLS was not a party to, or an assignee of, the Note or Security

Deed, and as Plaintiff's loan servicer, OLS was a disclosed agent of the holder of

the Note and Security Deed.  The Magistrate Judge found further that, even if OLS

is considered a party to the loan, Plaintiff failed to present any evidence creating a

genuine issue of material fact whether OLS breached any of the terms of the Note

or Security Deed.[8]

On December 3, 2014, Plaintiff filed his Objections [139] to the R&R.

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

---

[8]     The Magistrate Judge granted Defendant's Motion to Strike [116] the Expert Declaration of Diana Crawford, finding that Plaintiff, in violation of the Court's Local Rules, failed to identify Crawford sufficiently early in the discovery period to allow Defendant to depose her.  The parties did not object to the Magistrate Judge's order striking the Crawford Declaration.  See 28 U.S.C. § 636(b)(1)(A) (magistrate judge may hear and determine certain non-dispositive pretrial matters).

judge's report and recommendation.  28 U.S.C. § 636(b)(1); <u>Williams</u>

<u>v. Wainwright</u>, 681 F.2d 732 (11th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1112 (1983).

A district judge "shall make a *de novo* determination of those portions of the report

or specified proposed findings or recommendations to which objection is made."

28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh

consideration to those issues to which specific objection has been made by a

party."  <u>Jeffrey S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir. 1990)

(internal quotation marks omitted).  With respect to those findings and

recommendations to which objections have not been asserted, the Court must

conduct a plain error review of the record.  <u>United States v. Slay</u>, 714 F.2d 1093,

1095 (11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1050 (1984).

        2.    <u>Motion for Summary Judgment</u>

     A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is

genuinely disputed must support that assertion by . . . citing to particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party," summary judgment for the moving party is proper.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

      B.    Analysis

          1.    Wrongful Attempted Foreclosure

In Georgia, to "recover damages for a wrongful attempted foreclosure, the

plaintiff must prove a knowing and intentional publication of untrue and

derogatory information concerning the debtor's financial condition, and that

damages were sustained as a direct result of this publication."  Bates v. JPMorgan

Chase Bank, NA, 768 F.3d 1126, 1134 (11th Cir. 2014) (quoting Aetna Fin. Co.

v. Culpepper, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)).

Here, Plaintiff claims that OLS "knowingly and intentionally published

untrue and derogatory information concerning Plaintiff's financial condition, to wit

that Plaintiff was . . . in default under the Loan . . . ."  (SAC ¶¶ 77, 85).  The

Magistrate Judge found that the undisputed facts show that Plaintiff failed to make

monthly loan payments that were due on January 15, 2010, and February 15, 2010,

and therefore, under the express terms of the Note, Plaintiff was in default at the

time of the first publication of the NSUP, on March 8, 2010.  The Magistrate Judge

also found that even if, as Plaintiff asserts, Defendant "misapplied" Plaintiff's loan

payments and failed to properly allocate payment amounts to principal and interest,

that would affect only the amount of the outstanding principal balance due on the Loan, not whether Plaintiff was in "default" under the terms of the Note.

In his Objections, Plaintiff does not dispute that he failed to make his January 15, 2010, and February 15, 2010, loan payments as required by the Note. Plaintiff instead argues that, because Defendant "did not properly accelerate" the Loan, the maturity date of the Note remained December 2028, and thus the statement in the NSUP that OLS and the Trustee were authorized to foreclose on the Property was false and defamatory. This argument, raised for the first time in his Objections, is not properly before the Court and the Court is not required to consider it. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[P]laintiff may not amend her complaint through argument in a brief opposing summary judgment."); cf. Huls v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint). Although courts have construed additional allegations in a *pro se* plaintiff's response as a motion to amend the complaint, Plaintiff has been represented by counsel throughout this litigation in this Court. Compare Newsome v. Chatham Cnty. Detention Center, 256 F. App'x 342, 344 (11th Cir. 2007) (per curium) ("Because courts must construe *pro se*

pleadings liberally, the district court should have considered [plaintiff's] additional allegations in the objection as a motion to amend his complaint and granted it.") with Rule v. Chase Home Fin. LLC, No. 3:11-cv-146-CAR, 2012 WL 1833394, at *4 (M.D. Ga. May 18, 2012) ("Plaintiff is not proceeding *pro se,* and therefore this Court is under no obligation to construe these additional allegations as a motion to amend the Complaint."). Plaintiff has twice amended his complaint, each time with the assistance of counsel, and the Court declines to consider Plaintiff's untimely attempt now to inject new theories, couched as objections to the Magistrate Judge's R&R, into this litigation at the summary judgment stage.[9]

---

[9]    In its September 12, 2014, Order, the Court found that Plaintiff could not state a claim for wrongful attempted foreclosure based on his assertion that OLS and the Trustee lack authority to foreclose on the Property because, even if true, any statement in the NSUP regarding their authority to foreclose did not concern Plaintiff's financial condition. Plaintiff again ignores that wrongful foreclosure and wrongful attempted foreclosure are two different causes of action under Georgia law. Compare All Fleet Refinishing, Inc. v. W. Georgia Nat'l Bank, 634 S.E.2d 802, 807 (Ga. Ct. App. 2006) (To support claim for wrongful foreclosure, plaintiff must show "legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages"), and Culpepper, 320 S.E.2d at 232 (measure of damages for wrongful foreclosure is difference between fair market value of property at the time of sale and indebtedness to the seller; since plaintiff filed for bankruptcy, thereby preventing sale of property, plaintiff suffered no legal injury and proved no actual damages), with Bates, 768 F.3d at 1134 (wrongful attempted foreclosure claim requires plaintiff to show a knowing and intentional publication of untrue and derogatory information concerning debtor's financial condition, and that damages were sustained as a direct result of this publication."). That Plaintiff argues in his Objections that Defendant is not entitled to summary judgment on

Even if it were properly before the Court, Plaintiff's "improper acceleration" theory does not support a claim for wrongful *attempted* foreclosure under Georgia law, and Plaintiff's reliance on Sale City Peanut & Milling Co. v. Planters & Citizens Bank, 130 S.E.2d 518 (Ga. Ct. App. 1963), is misplaced.  In Sale City, the Georgia Court of Appeals held that the plaintiffs stated a claim for wrongful attempted foreclosure where the defendants published, on May 7, 1960, a notice of foreclosure stating that the plaintiffs had defaulted on their loan, even though, plaintiffs alleged, "defendants knew [at the time of publication] that *no part of the indebtedness was due before October 1, 1960*."  Sale City, 130 S.E.2d at 519-520 (emphasis added).  Sale City does not, as Plaintiff appears to contend, support a claim for wrongful attempted foreclosure based solely on a lender's publication of a foreclosure advertisement before the maturity date of a loan.  The loan at issue in Sale City was not an installment loan.  Rather, the entire indebtedness was due on

---

Plaintiff's wrongful attempted foreclosure claim because "OLS had no right to foreclose on the [P]roperty unless and until [OLS] accelerated the payment of the entire debt by giving Plaintiff proper notice," ignores the reasoning in the Court's September 12th Order, and the argument is inappropriate for this additional reason.

The Court notes further that Plaintiff's argument that OLS could not foreclose on the Property because it failed to give him proper notice of the default and opportunity to cure it before acceleration, is not supported by the record. Plaintiff testified that he received the November 20, 2009, Notice of Default, and he does not claim, and it does not appear, that the Notice of Default was defective or lacked information required by the Security Deed.  (See Phillips Dep. 195-196; Notice of Default at 1; Security Deed ¶ 21).

the maturity date, and thus the statement in the foreclosure notice that the plaintiffs

had defaulted on an installment payment was clearly false because it was published

"prior to the maturity date of the note and hence *before there was a default in*

*payment*."  Id. at 520 (emphasis added).  Here, it is undisputed that the Note

required Plaintiff to make a loan payment each month, that Plaintiff failed to make

at least two (2) monthly payments before publication of the NSUP, and the Note

expressly states, "[i]f I do not pay the full amount of each monthly payment on the

date it is due, I will be in default."  (Note ¶ 6(B)).

In Bates v. JPMorgan Chase, the Eleventh Circuit held that the defendant

was entitled to summary judgment on the plaintiff's wrongful attempted

foreclosure claim because the information published about the plaintiff's financial

condition—that she failed "to pay the indebtedness as and when due and in the

manner provided in the Note and Deed to Secure Debt" and that "the debt remains

in default"—was true, including because the plaintiff admitted that she failed to

make her payments when due and that she did not pay the entire amount due,

including late fees.  Bates, 768 F.3d at 1134.[10]  To the extent the plaintiff also

---

[10]   The Eleventh Circuit did not, as Plaintiff asserts, "need . . . to find that the
lender in Bates complied with its pre-foreclosure notice requirements" to address
the plaintiff's claim for wrongful attempted foreclosure.  The Eleventh Circuit did
not reach the question of whether the defendant actually breached a pre-foreclosure

argued that "the mention of an allegedly invalid foreclosure sale is sufficient to give rise to liability," the Eleventh Circuit held that "[t]his information about Chase's intent to sell the property, however, is not a statement of the debtor's financial condition, but rather a statement of Chase's future actions," and thus did not support a claim for wrongful attempted foreclosure.  Id.

Here, like in Bates, the statement in the NSUP about Plaintiff's financial condition—that "the debt secured by [the] Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed"—is not untrue or derogatory.  See Bates, 768 F.3d at 1134; Sale City, 130 S.E.2d at 520 ("defendants knowingly published an untrue and derogatory statement concerning the plaintiffs' financial condition"); cf. Ezuruike v. Bank of New York Mellon, No. 1:11-cv-4030-JEC, 2012 WL 3989961, at *1-2 (N.D. Ga. Sept. 11, 2012) (dismissing wrongful attempted foreclosure claim where "plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition"); Peterson v. Merscorp Holdings, Inc., No. 1:12-cv-00014-JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept. 10, 2012) (plaintiffs failed to state a

---

duty owed to the plaintiff under the note because plaintiff failed to show that she suffered damages as a result of the alleged breach.  Bates, 768 F.3d at 1132-1133.

claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as secured creditor on foreclosure notice).[11]  Plaintiff's objection is overruled.  Defendant is entitled to summary judgment on Plaintiff's claim for wrongful attempted foreclosure.

### 2.   False Light Invasion of Privacy

To support a claim for false light invasion of privacy, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person.  See Smith v. Stewart, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008).

Plaintiff alleges that "OLS knowingly and intentionally published, by means of the written advertisements of its intent to exercise its alleged power of sale

---

[11]   The Court further notes that any alleged damage to Plaintiff's credit was a result of his failure to make his required loan payments, not a result of any statement published in the NSUP.  Cf. Bates, 768 F.3d at 1132-33 (where plaintiff alleged defendant did not have authority to foreclose because it failed to comply with foreclosure procedure in note and security deed, plaintiff "must show that the premature or improper exercise of some power under the deed . . . resulted in damages that would not have occurred but for the breach"); Rourk v. Bank of Am., N.A., 587 F. App'x 597 (11th Cir. 2014) (mortgagor's failure to make loan payments "is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or omissions'") (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004)).  Defendant is entitled to summary judgment on Plaintiff's wrongful attempted foreclosure claim for this additional reason.

under the Security Deed, false and derogatory information concerning Plaintiff's financial condition, to wit, that Plaintiff was in default under the Loan." (SAC ¶ 85). The Magistrate Judge found that the undisputed evidence shows that Plaintiff missed at least two loan payments before the NSUP was first published on March 8, 2010, and thus under the terms of the Note, Plaintiff was in default at the time of publication.

Plaintiff states that his objection to the Magistrate Judge's findings regarding his wrongful attempted foreclosure claim applies also to his claim for false light invasion of privacy. (Objs. at 2 n.1). It is undisputed that Plaintiff failed to make at least two of the loan payments required under the terms of the Note, and thus the statement in the NSUP about Plaintiff's default is not a "falsehood." See Smith, 660 S.E.2d at 834. Plaintiff's objection is overruled. Defendant is entitled to summary judgment on Plaintiff's claim for false light invasion of privacy.

### 3.   Breach of Contract

To support a claim for breach of contract under Georgia law, a plaintiff must show (1) a valid contract; (2) material breach of its terms; and (3) damages arising from that breach. See Budget Rent-A-Care of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996). "It is axiomatic that a person who is not a party to a contract is not bound by its terms." Kaesemeyer v. Angiogenix, Inc., 629 S.E.2d

23

22, 25 (Ga. Ct. App. 2006).  When an agent acts for a disclosed principal, the agent is not liable for the principal's breach of contract.  <u>See</u> O.C.G.A. § 10-6-53 ("The form in which the agent acts is immaterial; if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal."); <u>Cuba v. Hudson & Marshall, Inc.</u>, 445 S.E.2d 386, 388 (Ga. Ct. App. 1994) (noting that, "even if there were an enforceable contract for the sale of Property No. 230, plaintiffs' remedy would be against [the principal]; defendants as agents of a disclosed principal would not be liable for the principal's breach of contract").

Plaintiff alleges in his Second Amended Complaint that "OLS's arbitrary and capricious violation of the terms of the Loan and Note, and the resulting attempted foreclosure of the [Property], constituted a breach by [] OLS."  (SAC ¶ 9).  The crux of Plaintiff's breach of contract claim appears to be that OLS misapplied Plaintiff's loan payments.  In his Response to Defendant's Motion for Summary Judgment, Plaintiff also appears to argue that OLS also breached the terms of the Note by making "improper calculation of late payment fees," "improper payment of ad valorem taxes," and "improper payment of insurance premiums."  (Pl's Resp. [109] at 22-23).

The Magistrate Judge found that OLS cannot be held liable for any alleged breach of the Note or Security Deed because the undisputed facts are that OLS was

not a party to, or an assignee of, the Note or Security Deed, and that OLS, as

Plaintiff's loan servicer, was a disclosed agent of the holder of the Note and

Security Deed.  The Magistrate Judge also found that, even if OLS were

considered a party to the Loan Agreement, Plaintiff failed to present any evidence

creating a genuine issue of material fact as to whether OLS breached any of the

terms of the Note or Security Deed.[12]

a.    OLS's relationship to the Note and Security Deed

In his Objections, Plaintiff appears to assert that Upland assigned to OLS a

partial interest in the Note, based on a letter OLS purportedly sent to Plaintiff

stating that the "servicing rights" to Plaintiff's loan had been "assigned" to OLS

and suggesting that Upland had assigned at least a partial interest in the Note and

Security Deed to OLS.  Plaintiff has not provided the Court with a copy of this

letter[13] and his new theory of liability was not raised in any of Plaintiff's

---

[12]    The Magistrate Judge also found that Plaintiff's reliance on a Consent
Judgment entered into by OLS in a separate case does not provide evidentiary
support for Plaintiff's claims in this action, and the Court finds no plain error in
this finding.  That OLS may have entered into a settlement agreement in another
case involving similar alleged servicing errors is not evidence that OLS committed
the errors alleged in the servicing of Plaintiff's loan in this action.

[13]    That Plaintiff does not provide a copy of the document he claims supports
his assertion is characteristic of Plaintiff's behavior throughout this litigation, and
especially at the summary judgment stage, in failing to provide the complete
factual basis for his broad assertions.  Plaintiff directs the Court to
"PHI-SET-IV-00074, referenced in and attached to Doc. 140-32."  (Pl's Obj. at

Complaints, and the Court will not consider it.[14]  See Gilmour, 382 F.3d at 1315.

To the extent Plaintiff relies on Redi-Floors, Inc. v. Sonenberg Co.,

563 S.E.2d 505 (Ga. Ct. App. 2002) and Chambliss v. Hall, 147 S.E.2d 334, 338

---

15).  The Court notes that "Doc. 140-32" is Plaintiff's Objections and Responses to Defendant's First Requests for Production of Documents, which Defendant filed, without copies of any of the documents Plaintiff produced, in support of its Motion for Summary Judgment.  Rather than submit a copy of the document—which he appears to acknowledge is not in the record—Plaintiff states that "[t]his is a filing by [OLS].  The Pacer copy of this pleading does not appear to have all the attachments; the document will be made available to the Court if necessary."  (Id.).

[14]    Even if properly before the Court, there is no evidence to support that Upland assigned to OLS any of its rights under the Note, and under Georgia law, absent an assignment stating otherwise, a loan servicer is not a party to, or an assignee of, the note.  See James v. Litton Loan Servicing, L.P., No. 4:09-cv-147, 2011 WL 59737, at *11 (M.D. Ga. Jan. 4, 2011) ("As a loan servicer, Litton is not a party to or an assignee of the Note itself.  In the absence of evidence of a contract between Plaintiffs and Litton, Plaintiff's breach of contract claim fails."); Ponder v. CACV of Colo., LLC, 658 S.E.2d 469, 470 (where a party assigns a contractual right to collect payment, including the right to sue for payment, the assignment must be in writing); cf. Edwards v. Ocwen Loan Serv., LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) (loan servicer, as lender's agent, has no contractual relationship or privity with borrower and therefore cannot be sued for breach of contract); Perron v. JPMorgan Chase Bank, N.A., No. 12-CV-01853, 2014 WL 931897, at *4 (S.D. Ind. Mar. 10, 2014) ("Homeowners failed to cite to any case law, let alone Indiana case law, in which contractual privity between the borrower and the holder of a note was imputed to the loan servicer."); Kehoe v. Aurora Loan Serv. LLC, No. 10-cv-00256, 2010 WL 4286331, at *8 (D. Nev. Oct. 20, 2010) ("Plaintiffs assert that Aurora, as their loan servicer, assumed the duties of the lender under the deed of trust. . . . [T]he fact that Aurora serviced Plaintiff's loan does not create contractual privity between Aurora and the Plaintiffs."); Pereira v. Ocwen Loan Serv., LLC, No. 11-cv-2672, 2012 WL 1381193, at *3 (E.D. N.Y. Apr. 18, 2012) ("The complaint does not allege that a contractual relationship ever existed between plaintiffs and Ocwen; at most, plaintiffs allege that Ocwen became the servicer of their mortgage loan.").

(Ga. Ct. App. 1996), to support that OLS is liable for its alleged breach of contract because OLS failed to disclose the principal for whom it was servicing Plaintiff's Loan, those cases provide only that "an agent who *makes* a contract without identifying his principal becomes personally liable on the contract," Redi-Floors, 563 S.E.2d at 506 (citing Chambliss, 147 S.E.2d at 339) (emphasis added). Here, there is no evidence to support that OLS "made" a contract with Plaintiff. Rather, the undisputed evidence is that Plaintiff executed the Loan Agreement with Upland in 1998, that OLS began servicing Plaintiff's Loan in May 2005, and that Upland assigned the Note and Security Deed to the Trustee on March 10, 2010. OLS thus became involved with Plaintiff's Loan only *after*—indeed, over five (5) years after—Plaintiff entered into the contract with Upland. Redi-Floors and Chambliss simply do not apply.[15]

---

[15]    To the extent Plaintiff claims that OLS was required to show that it affirmatively disclosed its agency, it is well-settled that, on summary judgment, "[w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim,'" but instead "simply may 'show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  See United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437-38 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986)).  Here, to succeed on his breach of contract claim, Plaintiff must show, among others, that a contract existed between him and OLS.  See Webb, 469 S.E.2d at 713.
       The Court also notes that Plaintiff's Second Amended Complaint consistently refers to and describes OLS as a loan servicer, and does not allege that OLS was anything more than Plaintiff's loan servicer.  See, e.g., SAC at ¶ 5

Plaintiff claims that, because Upland held the Note and Security Deed while Upland was also his loan servicer, he "thought" Upland assigned the Note and Security Deed to OLS when OLS became his loan servicer.  There is no evidence to support that OLS ever represented to Plaintiff that Upland assigned the Note or Security Deed to OLS, and that the Security Deed provides that there may be a change in the servicer of Plaintiff's loan unrelated to a sale of the Note, undermines Plaintiff's assertion.  The Security Deed states:

> **19.  Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security [Deed]) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security [Deed].  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.

(Security Deed ¶ 19).  Plaintiff fails to support his assertion that OLS became, or represented that it had become, the holder of the Note or Security Deed.  The undisputed evidence is that OLS was not a party to, or an assignee of, the Note or Security Deed, and Plaintiff cannot state a claim against OLS for breach of the

---

("Defendant OLS services residential mortgage loans. . . . Mortgage Servicers are the 'middlemen' between homeowners and the investors that often hold the homeowners' mortgages . . . ."); ¶ 10 ("OLS is now the largest servicer of sub-prime mortgages in the United States."); ¶¶ 21-22 (On "April 20, 2005, Plaintiff received a letter from Upland stating that the new servicer of Plaintiff's Loan would be [ ] OLS.  On May 11, 2005, Plaintiff received a letter from [ ] OLS introducing itself as the new servicer for the Loan.").

Loan Agreement.  Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract.

> b.      Whether OLS breached the terms of the Loan Agreement

The Magistrate Judge found that, even if OLS were considered a party to the Loan Agreement, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not presented any evidence to create a genuine issue of material fact as to whether OLS breached any of the alleged provisions of the Loan Agreement.  (R&R at 42-48).

Plaintiff appears to object to the Magistrate Judge's conclusion that OLS did not misapply Plaintiff's loan payments.  The Court conducts a *de novo* review of Plaintiff's claim that OLS misapplied his loan payments.  Because Plaintiff did not object to the Magistrate Judge's recommendation that Defendant be granted summary judgment on Plaintiff's claims for breach of contract based on "improper calculation of late payment fees," "improper payment of ad valorem taxes," and "improper payment of insurance premiums," the Court reviews that portion of the R&R for plain error.

> i.      Misapplication of Payments

In his Objections, Plaintiff claims that he "presented abundant evidence and argument showing that [OLS], and Upland before it, applied 100% of Plaintiff's

payments to interest, a clear breach of the Note."  (Obj. at 19).  The Note expressly states that Plaintiff's "monthly payments will be applied to interest before principal," and the Security Deed further states that payments "shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable [for taxes and insurance]; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note."  (Note ¶ 3(A); Security Deed ¶ 3).  Plaintiff has not identified a provision of the Note or Security Deed that requires his payments to be applied in a different manner.  See Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C., 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because American Casual cannot point to any contractual provision that Moe's breached by failing to act in the manner set forth above, American Casual cannot state a claim for breach of contract based on these allegations.").

To the extent Plaintiff appears to rely on an amortization schedule (the "Amortization Schedule") [109 at 60] to support the amount of each payment required to be allocated toward principal, Plaintiff received the Amortization Schedule from OLS in January 2010, and there is no evidence to support that the Amortization Schedule was incorporated into the terms of Plaintiff's Note.  Even if it did apply, the Amortization Schedule shows the amounts of Plaintiff's payment that would be applied to interest and to principal if that payment was made on the

fifteenth day of each month.[16]  The record is that Plaintiff consistently made his loan payments after the dates they were due, and there is no evidence to support that Plaintiff's payments were required to be allocated to principal and interest, as shown on the Amortization Schedule, regardless of the date on which Plaintiff made the payment.

Plaintiff testified that he "understood signing this [N]ote, there was a grace period.  And if [he] paid in the grace period, then the principal mortgage amortization as [he] understood it, there was a deduction."  Plaintiff stated that he "should get full credit regardless if [he's] paying [his] mortgage in the scope of the month" because, based on his understanding of the grace period, "paying it on the 15th or paying it on the 17th or 18th, didn't make a difference as long as [he] paid it before the 30th."  (Phillips Dep. 62-63).  When asked about the basis for his understanding, Plaintiff was evasive, ultimately stating only:

> - - you know, I'm not the most financial savvy guy in the world, but I also understand this.  I'm not going to sign a note or sign an agreement that if I owe you on the 15th and don't pay you until the 17th and you don't deduct anything because you haven't gotten a payment on . . . the 15th, you know, I don't - - I'm not going to go to

---

[16]    The Amortization Schedule shows, for the first through twentieth monthly payments under Plaintiff's Loan, the date each payment is due (the fifteenth day of each month, starting January 15, 1999); the amount required to be paid ($815.64); the amount of that payment to be applied to principal and the amount to be applied to interest; the "original balance," which appears to be the principal loan amount after deducting that month's principal payment; and the interest rate (10.890%).

work on Wall Street, but I also understood I'm not going to sign an agreement like that.

(Phillips Dep. 63:16-24).

Plaintiff fails to show any *facts* to support his "understanding" that he would not incur additional interest if he made his payment after the due date but within his "grace period," and Plaintiff does not claim that his "understanding" is based on any statement by OLS. That OLS specifically told Plaintiff, "[i]f you elect to take advantage of your grace period, please note that this will cause a greater portion or all of your payment to be applied to interest," significantly undermines Plaintiff's position.[17]

---

[17] Plaintiff fails to offer any evidence to support that OLS "converted" his loan to a simple interest loan, and a review of Plaintiff's account history supports that Upland computed the interest according to the simple interest loan formula. (See generally Payment History, Def's Mot. for Summ. J. at Ex. 6 [104.9]). On May 6, 2005, Plaintiff received his first account statement from OLS, which states:

> Please note that you have a Simple Interest Loan that accrues interest from the last date that interest was paid through the date your next payment is received. When your next payment is received, the interest amount will be calculated from the date listed in the "Interest Paid Through Date" field (listed above) through the date that your payment was received. It is important to ensure that your payments are received timely and consistently so that your accrued interest each period is limited to approximately one month's interest. If you elect to take advantage of your grace period, please note that this will cause a greater portion or all of your payment to be applied to interest.

(05/06/2005 Account Statement [104.6]).

Under the terms of the Note, Plaintiff agreed that "[i]nterest will be charged on unpaid principal until the full amount of principal has been paid," that he "will make [his] monthly payments on the 15th day of each month," and that his "monthly payments will be applied to interest before principal."  (Note ¶¶ 2-3).  The undisputed evidence shows that Defendant calculated the amount of interest accrued based on the unpaid principal of Plaintiff's Loan, that Plaintiff's payments were consistently made after the due date, and that Defendant applied Plaintiff's payment first to interest, then to principal.  Plaintiff fails to show any facts to support that Defendant applied Plaintiff's payments in a manner inconsistent with the terms of the Note, and Plaintiff's conclusory assertions that his "understanding" was that OLS was required to apply Plaintiff's payments in a different manner is not sufficient to defeat a motion for summary judgment. Midwestern Waffles, Inc. v. Waffle House, Inc., 7374 F.2d 705, 714 (11th Cir. 1984) (unsupported, self-serving statements by party opposing summary judgment are insufficient to avoid summary judgment); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment."); Ojeda v. Louisville Ladder, Inc., 410 F. App'x 213, 214 (11th Cir. 2010) (conclusory allegations have no probative value; nonmoving party cannot rely on conclusory allegations to

avoid summary judgment); cf. Auto. Radio Mfg. Co. v. Hazeltine Research,

339 U.S. 827, 831 (1950) (affidavit "made upon information and belief . . . does

not comply with Rule 56").  For this additional reason, Defendant is entitled to

summary judgment on Plaintiff's claim that Defendant breached the Loan

Agreement by misapplying Plaintiff's payments.

ii.    "Improper Calculation of Late Payment Fees"

The Magistrate Judge found that the evidence supports, and Plaintiff does

not dispute, that nearly all of his payments were late, and Plaintiff fails to identify

which provision of the Note or Security Deed OLS allegedly breached in

calculating late payment fees.  (R&R at 43).  Plaintiff did not object to the

Magistrate Judge's conclusion that Plaintiff fails to explain or show how OLS

breached the Loan Agreement by improperly calculating late fees, and the Court

finds no plain error in this conclusion.

iii.    "Improper Payment of Ad Valorem Taxes"

The Magistrate Judge found that the undisputed evidence shows that

Plaintiff failed to pay certain taxes or assessments owed to the City of Atlanta for

the Property, that Plaintiff was required under the terms of the Security Deed to

"pay all taxes, assessments, charges, fines and impositions attributable to the

Property," and that the Security Deed permitted OLS to pay the charges and take

34

action "necessary to protect the value of the Property and Lender's rights in the Property." (R&R at 44-45) (quoting Security Deed at ¶¶ 4, 7). The Magistrate Judge also found that Plaintiff received a refund on his real estate taxes for the Property in 2010 and 2011 because OLS had paid them. (R&R at 45-46). Plaintiff did not object to the Magistrate Judge's conclusion that Plaintiff failed to present any evidence to support that Defendant beached the terms of the Note or Security Deed by improperly paying an assessment or tax required to be paid for the Property, and that Plaintiff had not shown that he was damaged as a result of any alleged breach. The Court finds no plain error in this conclusion.

iv.   "Improper Payment of Insurance Premiums"

The Magistrate Judge found that the undisputed evidence shows that Plaintiff allowed insurance coverage on the Property to lapse, that Plaintiff was required under the Security Deed to maintain proper insurance coverage on the Property, and that, if Plaintiff failed to do so, the Security Deed permitted OLS to obtain insurance coverage on the Property "to protect Lender's rights in the Property." (R&R at 47-48) (quoting Security Deed at ¶ 5). The Magistrate Judge concluded that Plaintiff fails to present sufficient evidence to create a genuine issue

of *material* fact[18] whether OLS breached the terms of the Loan Agreement when it obtained insurance coverage for the Property, and the Court finds no plain error in this conclusion.

The Magistrate Judge concluded that Plaintiff has not presented evidence sufficient to show that a genuine issue of material fact exists whether Defendant breached the terms of the Note or Security Deed.  The Court finds no plain error in the Magistrate Judge's conclusion, and Defendant is entitled to summary judgment on Plaintiff's breach of contract claim for this additional reason.

### 4.    Plaintiff's Remaining Claims

Having granted summary judgment for Defendant on Plaintiff's substantive claims for wrongful attempted foreclosure, false light invasion of privacy and breach of contract, Plaintiff cannot recover punitive damages or litigation expenses, and he cannot obtain injunctive relief.  See Martin v. Martin, 600 S.E.2d 682, 683 (Ga. Ct. App. 2004) ("Punitive damages cannot be awarded in the absence of any finding of compensatory damages.") (citing O.C.G.A. § 51-12-5.1); Lee v. Ga. Power Co., 675 S.E.2d 465, 468 (Ga. Ct. App. 2009) ("An award of attorney fees and expenses of litigation under O.C.G.A. § 13-6-11 is ancillary, and

---

[18]    The Magistrate Judge noted that, although the parties dispute for how long Plaintiff allowed insurance coverage to lapse, Plaintiff admitted that he allowed insurance coverage to lapse and failed to explain why the length of the lapse would be material to Plaintiff's claim for breach of contract.  (R&R at 47).

a party may recover them only if [he recovers] on another claim."); <u>Grizzle</u>

<u>v. Kemp</u>, 634 F.3d 1314, 1320 (11th Cir. 2011) (claim for preliminary injunctive

relief requires a showing of  "a substantial likelihood of success on the merits of

the underlying case"); <u>United States v. Endotec, Inc.</u>, 563 F.3d 1187, 1194

(11th Cir. 2009) (permanent injunction requires actual success on the merits).

Defendant is entitled to summary judgment on Plaintiff's claims for punitive

damages (Count Four), litigation expenses (Count Five), and preliminary and

permanent injunctive relief (Count Six).

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Jeffrey Phillips's Motion for

Hearing [141] on Plaintiff's Objections is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Objections [139] are

**OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Justin S. Anand's

Final Report and Recommendation [135] is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendant Ocwen Loan Servicing,

LLC's Motion for Summary Judgment [104] is **GRANTED.**

**SO ORDERED** this 12th day of March, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE